COLETTE VOGELE (SBN No. 192865)
Email: colette@vogelelaw.com
BENJAMIN COSTA (SBN No. 245953)
Email: ben@vogelelaw.com
**VOGELE & ASSOCIATES**
580 California Street, Suite 1600
San Francisco, CA 94104
Tel: (415) 751-5737
Fax: (415) 358-4975

Attorneys for Plaintiff
VIOLET BLUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VIOLET BLUE, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>ADA MAE JOHNSON a/k/a ADA WOFFINDEN, an individual d/b/a VIOLET BLUE a/k/a VIOLET a/k/a VIOLET LUST; ASSASSIN PICTURES INC., a California Corporation; ASSASSINCASH.COM; BILL T. FOX, an individual, a/k/a BILL FOX; FIVE STAR VIDEO L.C., an Arizona Limited Liability Company a/k/a Five Star Video Distributors LLC d/b/a Five Star Fulfillment; and DOES 1-10,<br><br>Defendants.<br><br>AND RELATED CROSS-CLAIM | Case No. C 07-5370 SI<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Date:     March 18, 2008<br>Time:    9:30 a.m.<br>Place:    Courtroom 11, 19th Floor<br>            450 Golden Gate Avenue<br>            San Francisco, CA 94102<br>Before:  The Honorable Susan Illston |

## I.   INTRODUCTION

A Court may order sanctions against a party and/or an attorney under two grounds: first, under the Court's inherent power, which penalizes bad faith conduct by a party or counsel and, second, under 28 U.S.C. § 1927, which penalizes conduct by counsel that unreasonably and vexatiously multiplies the proceedings. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). Under these rules and based on binding Ninth Circuit authority, against which Defendant cites *no*

contradictory authority, Plaintiff's Motion For Sanctions [Docket No. 23, *filed* Jan. 29, 2008) ("Motion for Sanctions")] should be granted.

Defendant's Woffinden's Response in Opposition to Plaintiff's Motion for Sanctions and Related Motions [*see* Docket No. 32, *filed* Feb. 12, 2008 ("Def. Opp." Or "Opposition")], cites neither a single case nor a statute to support her argument. Instead, Defendant's Opposition and the supporting Declaration of Robert S. Apgood [*see* Docket No. 33, *filed* Feb. 12, 2008 ("Apgood Decl.")] flatly misstate the facts related to Defendant's conduct that justifies sanctions. Specifically, Defense Counsel's contemporaneous correspondence to Plaintiff's Counsel belies his assertions as to when his representation began in this matter and contradicts his purported lack of opportunity to familiarize himself with the facts and law surrounding jurisdiction, venue and waiver in the Federal Courts.

As discussed in greater detail below, Defendant's conduct and assertions in the Opposition, and especially those of her Counsel in his declaration, must be construed as further bad faith conduct warranting sanctions in this case. Accordingly, Plaintiff respectfully requests an Order that Defendant and her Counsel pay Plaintiff's reasonable costs associated with the filing of Plaintiff's Motion For Leave To Amend Complaint (totaling $4,123) and Motion for Sanctions (totaling $4,070) for a combined total of $9,030, including reasonable costs and associated with attending the hearing on this motion.

## II. ARGUMENT[1]

Defendant's Opposition makes three arguments, each of which is addressed below and each of which should be rejected.[2]

---

[1] Defendant's motion to strike is procedurally improper under Local Rule 7-2, which requires this motion to be a separate document that is duly noticed 35 days before the hearing and submitted in the proper form, including citation to authorities and a supporting affidavit or declaration. Local Rule 7-2. For this reason alone, the Court should deny Defendant's motion. The motion to strike is substantively improper because it fails to identify with specificity the language Defendant seeks to have stricken from Plaintiff's Motion, fails to identify grounds for the bold and sweeping assertion that Plaintiff's Motion is "frivolous", and, most importantly, fails to cite any legal authority. Local Rule 7-4(a)(3)-(5). Plaintiff requests that Defendant's motion to strike be denied on account of its improper form and substance.

[2] One issue should be made clear at the outset: Plaintiff does *not* seek sanctions against Defendant and/or Defense Counsel for the late filing of the statement of non-opposition. [Def. Opp. at 4:3-8]. Plaintiff refers to the statement of non-opposition as plain evidence that Defendant's Counsel refused consent in bad faith because he knew or should have known on December 5 (or at least before the motion was filed on December 21) that there was no reasonable grounds to oppose the motion. [Def. Opp. at 4:1-2; Plaintiff's Motion for Sanctions at 3:15-27, 4:1-2].

A.   The Factual Misstatements In The Opposition And The Declaration Of Mr. Apgood Undermine Defendant's Argument And Further Warrant Sanctions.

Defendant's Opposition is riddled with factual inaccuracies and cites not a single case to support her or her Counsel's conclusory and self-serving arguments intended to overcome a finding of bad faith. [*See, e.g.,* Def's. Opp. at 4:16-25 (articulating conclusory statements regarding lack of bad faith or vindictiveness); Apgood Decl., at ¶¶15-18 (same).] This fact alone is sufficient to grant Plaintiff's Motion in total. Where a party fails to present any case support or argument beyond conclusory statements in support of its claim of error, that party's argument is deemed waived. *FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997); *Seattle School Dist., No. 1 v. B.S.*, 82 F.3d 1293, 1502 (9th Cir. 1996).

   1.   Defendant's Contradictions Regarding Knowledge Of The Case And Law Belie The Arguments In Opposition To Sanctions.

A key factual contradiction regarding Defendant and her Counsel's conduct relates to whether Defendant's counsel knew the case at the time Plaintiff's counsel contacted him on December 5, 2007,[3] to seek consent to file the First Amended Complaint ("FAC"). Defendant, on the one hand, argues that her Counsel *did not know* or understand the case at the time Plaintiff's Counsel sought consent to file the FAC and therefore could not have been expected to provide such consent. [Def.'s Opp. at 2:19-13; Apgood Decl. at ¶8-9.] Supporting this point, Defense Counsel swears that he began to "represent" Defendant Johnson only when his *pro hac vice* application was granted on December 5, 2007, the same day Plaintiff's Counsel contacted

---

[3] To the extent Defense Counsel attempts to ascribe some nefarious intent to the coincidence that Plaintiff's Counsel contacted him on the day on which his *pro hac vice* application was granted, that point is irrelevant and also inaccurate. Although Defense Counsel evidently submitted his *pro hac vice* application to the Court by mail, Defense Counsel never provided Plaintiff with a copy (service or otherwise) of his application until sending it by email after the December 5, 2007, phone conversation. [Vogele Reply Decl, ¶ 6; Exhibit D (Email from R. Apgood to C. Vogele dated 12/05/07 attaching the motion for admission *pro hac vice* which was not served on Plaintiff)]. Accordingly, Plaintiff's counsel did not know Defendant's Counsel had even applied for admission, nor whether the admission was granted at the time of her call on December 5. Moreover, any implication by Defendant that Plaintiff is attempting to increase litigation expenses is wholly unfounded. Plaintiff's Counsel has made every effort to reduce litigation expenses in this matter: first, by requesting Defendant's consent to amend to avoid the expense associated with filing the motion, and then, by scheduling the hearing date for the motion to amend on the same date as the Joint Case Management Conference so that Defense Counsel need only make one trip from Washington to California. [Vogele Reply Decl., ¶¶ 5 and 7; Exhibit E (Email from C. Vogele to R. Apgood dated 12/21/07)].

Defendant's Counsel to request consent to amend the complaint. [Def. Opp. at 1:4-6; Apgood Decl., ¶¶ 4-7]. That assertion is inaccurate, and the inaccuracy is material to the remainder of Defendant's argument because it is the sole basis upon which Defendant and her Counsel purport that they should not be sanctioned.

Defendant's Counsel first contacted Plaintiff's Counsel on the morning of November 9, 2007. [Decl. of C. Vogele In Support Of Plf's Reply Brief Re Motion For Sanctions ("Vogele Reply Decl.") ¶¶ 2-3; Exh. A.] In that conversation, Defendant's Counsel stated that he represented Defendant and sought Plaintiff's agreement to "sever" and "remove" the case to the Western District of Washington. [*Id.*, ¶ 2] Plaintiff's Counsel explained that she needed to speak with her client regarding the unusual request, and would get back to Defense Counsel promptly. [*Id.*] Later that same afternoon, Plaintiff's Counsel left a voice message for Defendant's Counsel asking him to contact her to discuss the proposed motion regarding severance and removal of the case. [*Id.*] Plaintiff's Counsel never heard back from Defendant's Counsel, and thereafter faxed and emailed a short letter dated November 20 to confirm whether Defense Counsel in fact represented Defendant and, if so, to schedule dates for the initial disclosures and discovery conference ordered by this Court.[4] [*Id.*, ¶ 3 & Exh. A.]

Seven days later, Defendant's Counsel fired off a terse response by email to Plaintiff's Counsel in which he asserted: "During the course of that [November 9] conversation, I was unequivocally clear that Ms. Woofinden is a represented party and that this firm represents her." [Id., ¶ 4 & Ex. B] (Confirming email from R. Apgood to C. Vogele dated 11/27/07)]. In that email, Defendant's Counsel also reiterated his November 9 request that: "Your client may save herself the potential costs and fees incurred by Ms. Woofinden in her motion to sever and remove by stipulating to the severance and removal. Otherwise we shall be seeking those costs and fees as part of Ms. Woofinden's relief." [Id.]

---

[4] Plaintiff's Counsel "carbon copied" her November 20 email to Defendant (also by email) because Defendant had been in communication directly with Plaintiff's counsel prior to November 9 and Plaintiff had not in the intervening 12 days received a *pro hac vice* motion or any other confirmation either orally or in writing that that Mr. Apgood represented Defendant. [Vogele Reply Decl., ¶3.]

As Defense Counsel's correspondence makes clear, and contrary to the sworn statements in his declaration, Counsel "unequivocally" represented Defendant at least as early as November 9, not December 5. Moreover, Defendant and her Counsel had by no later than November 27 certainly considered the case well enough to be threatening sanctions against Plaintiff if she did not consent to the planned "severance" and "removal" of the case to the Western District of Washington. Clearly, one must assume that before requesting consent from Plaintiff for the "severance" and "removal" and certainly before threatening sanctions against Plaintiff if she did not agree to the unusual request, Defense Counsel must have given the alleged "venue," "jurisdiction," and "waiver" arguments serious consideration. Surprisingly, thereafter, no such motion was ever brought by Defendant nor has Defendant's Counsel ever raised the issue again. Accordingly, because Defense Counsel clearly understood the case, any attempt to excuse the bad faith conduct on grounds that Defense Counsel had no opportunity to study the pleadings is meritless.

 2. Defense Counsel's Contradictions Regarding Rules 12 and 15.

On the other hand, Defendant argues (in direct contradiction to her prior argument) that her Counsel actually knew the case quite well and had even formed "serious questions" about jurisdiction, venue and waiver such that the refusal to provide consent would be justified. [Def. Opp. at 1:15-17; Apgood Decl., ¶ 10] Specifically, Defendant's Counsel argues in the Opposition to this Motion for Sanctions that he feared waiver of venue and/or personal jurisdiction if Defendant consented to the filing of a FAC. This fear, however, is entirely unjustified under a plain reading of the Federal Rules of Civil Procedure. It certainly does not serve to justify Defendant or her Counsel's bad faith in failing to consent to the filing of Plaintiff's FAC.

It is black letter law that the proper avenue for preserving objections to venue or personal jurisdiction is by including them in the first pleading filed with the Court pursuant to Rule 12 or Rule 15. Fed. R. Civ. P. 12, 15. Even if such objections are left out of the initial pleading, Rule 15 makes clear that these objections may be preserved by amending the pleading within 20 days after its initial filing. Fed. R. Civ. P. 15(a). Rule 12 provides reassurance that a defense of lack of personal jurisdiction or improper venue is preserved if it is made in a Rule 12 motion, in the

answer, or in an amended answer filed within 20 days after the initial answer was filed. Fed. R. Civ. P. 12(h)(1)(B).

As Defense Counsel asserts in his November 27 correspondence, it was "unequivocally clear" that, as of November 9, 2007, he represented Defendant Johnson. On November 13, 2007 Defendant's *pro se* Answer was entered in to the Court's record.[5] Thereafter, Defense Counsel had until December 3, 2007, to file an amended answer to preserve the jurisdiction and venue objections if he sincerely believed these objections had merit and were not properly preserved in Defendant's initial Answer. Because Defense Counsel's November 27 letter leaves no question that Defendant had given ample consideration to the jurisdiction and venue issues in this case, and Defendant was planning to do something regarding them (e.g., filing a motion to "sever" and/or "remove" or perhaps file an amended answer), Defendant's belated attempt to now assert that the jurisdiction and venue issues provide the good faith bases for Defense Counsel's refusal to consent to the amended complaint on December 5 (two days *after* the deadline for Defendant to have filed an amended Answer) undermines Defendant's entire argument. Finally, even if Defendant or her Counsel remained sincerely concerned about waiving the objections to jurisdiction and venue on December 5, 2007, Defense Counsel should have explained that he would like a few days to consider that question further before rejecting Plaintiff's request for consent. Simply refusing to provide consent out of hand does not overcome the bad faith conduct of Defendant and her Counsel regarding Plaintiff's request for consent to file the FAC.

Accordingly, Defendant's arguments can be easily rejected based on Defendant's Counsel's contemporaneous correspondence in this matter.

B. Defense Counsel's Request For An *In Camera* Examination Of The Merits Of Reasons For Not Opposing Plaintiff's Motion To Amend Is Unnecessary As It Will Not Justify The Refusal To Consent Or The Delay In Researching The Merits Of An Opposition.

Defendant argues that her failure to consent to the filing of the FAC and her Counsel's assertion that Defendant would oppose Plaintiff's motion to for leave to amend is somehow excused because of privileged and unstated understandings only in her Counsel's mind at the

---

[5] It appears that Defendant mailed her Answer to the Court on or about November 7, prior to her retaining Mr. Apgood as counsel on November 9. The Answer was thereafter entered into the Court's record on November 13.

time of Plaintiff's request for consent. [Def's Opp. at 2:21-26, 3:1; Apgood Decl., ¶12.] This argument is meritless because Plaintiff's request for consent did not seek Defendant's theories of the case or any privileged information. It merely sought Defendant's consent that the FAC may be filed without the need for a formal motion. Defense Counsel provides no argument for why the merits of these reasons are even relevant to help the Court's determination in this Motion, and cites no legal authority in support of his request for an *in camera* examination in these circumstances and thus, any claim that a privileged good faith basis for refusing consent should be deemed waived. *FDIC*, 126 F.3d at 1145 (9th Cir. 1997); *Seattle School Dist.,* 82 F.3d at 1502 (9th Cir. 1996).[6]

The issue central to this Motion for Sanctions is whether Defendant or her Counsel acted in bad faith by refusing to consent to the amended complaint on December 5, 2007, *not* whether Defendant's ultimate reasons for non-opposition to the Motion are meritorious. Defendant's filing of a statement of non-opposition makes clear, in and of itself, that the recognized bases for opposing a motion to amend (e.g., undue delay, bad faith, failure to earlier cure deficiencies, prejudice, and futility) did not exist in this case. Indeed, Defendant's Opposition reveals that she or her Counsel decided not to oppose Plaintiff's motion to amend *after* this Court issued an Order to Show Cause ("OSC"). [Def. Opp. at 8:8-10 ("At that time [referring to the Court's issuance of the OSC], the Defendant determined that her interests would not be prejudiced by not opposing . . ."); *see* Order To Show Cause (Docket No. 17), *filed* Jan. 17, 2008 ("OSC")]. This assertion in the Opposition (that the reasons for non-opposition were determined *after* the OSC was issued) stands in direct contradiction to Defense Counsel's Response to the OSC, where Counsel swore to the Court that he reviewed Plaintiff's motion to amend and decided not to oppose *before* the deadline to respond had passed, on the assumption the motion would be

---

[6] Defendant also requests an *in camera* examination to preserve the attorney-client privilege so that she can reveal to the Court through her counsel, without divulging the defense's theories of its case, the reasons why on December 5, 2007 her Counsel thought he would oppose an amended complaint. [Def. Opp., 2:21-24]. As discussed above, it is contradictory that on December 5, 2007, Defense Counsel "had not yet had the opportunity to fully review the file and pleadings in the case", but that he had also determined all the theories of case. [Def. Opp. at 2:10; 2:21-24]. Plaintiff requests that the Court deny Defendant's request for an *in camera* hearing on the grounds that these justifications for Defense Counsel's refusal to consent are contradictory, unsupported by case law, and therefore, ineffectual attempts to avoid the appearance of bad faith.

1  automatically granted. [*See* Defendant Woofinden's Response to the Court's Order To Show

2  Cause (Docket No. 19), *filed* January 21, 2008, at 2:20-26, 3:1 ("Defs. Resp. OSC"); Declaration

3  of R. S. Apgood In Support Of Defendant Woofinden's Response To The Court's OSC (Docket

4  No. 20) at ¶11-13].

5      Finally, if Defendant's argument were taken to its logical end, parties and their counsel

6  would *never* be able to meet and confer over any matter related to any case. Everything related to

7  a case could be characterized as privileged "work product" or "thoughts and impressions" of an

8  attorney. Such a result would of course be absurd and contrary to the basic Federal Rules of Civil

9  Procedure, and in particular Rule 1. Accordingly, Defendant's argument seeking *in camera*

10  review should be rejected.

11  C.    The Option To Proceed Under Rule 15(a) By Consent Or Leave Does Not Relieve Defense Counsel Of The Ongoing, Duty To Act In Good Faith And Attempt To Forego

12      Multiplication Of The Proceedings.

13      While the parties agree that Rule 15(a) gives the moving party the option to request

14  consent or seek leave of Court to amend,[7] Defendant creatively argues that neither she nor her

15  Counsel has a duty to consent even when there is *no* good faith basis for refusing consent. Fed.

16  R. Civ. P. 15(a). [*See* Def. Opp. at 6:14-15]. Defendant's erroneous reading of Rule 15 is easily

17  cleared up upon a reading of Rule 1 of the Federal Rules of Civil Procedure and the Local Civil

18  Rules of this Court.

19      Rule 1 requires that the Federal Rules "be construed and administered to secure the just,

20  speedy, and inexpensive determination of every action and proceeding" and Local Civil Rules

21  provide that every attorney admitted to practice in this Court must "practice with the honesty,

22  care, and decorum required for the fair and efficient administration of justice." Fed. R. Civ. P. 1;

23  L.R. 11-4 (a)(4). Here, Defendant would read 15(a) in a vacuum. If Defendant's argument were

24  to prevail, it would mean that any non-movant may refuse consent to an amended complaint

25  without any reasonable justification, knowing such refusal will multiply the proceedings and

---

26  [7] The California's Practice Guide ("the Rutter Guide") provides guidance on amending complaints by advising moving parties to seek stipulation from opposing counsel to avoid the
27  need for a formal motion. *California Practice Guide: Federal Civil Procedure Before Trial* ("Rutter Guide"), Ch: 8(G)(4)(c). Conversely, the Rutter Guide advises opposing counsel to stipulate if there is no statute of limitations problem or real prejudice to their client because the
28  Court is almost certain to grant leave. *Id.*

1  increase litigation expense. [Def. Opp. at 6:14-15]. Under Rule 1 and Local Rule 11-4, this Court should reject this reading of the Federal and Local Rules.

In his *pro hac vice* application, and again in his response to the Court's OSC, Defense Counsel swears that he has familiarized himself with the Local Rules. [Def. Resp. OSC at 6:1-3]. Moreover, each of the five districts in which Defense Counsel is admitted to practice has a statutory provision similar to Local Rule 11-4.[8] Defense Counsel's failure in this case to consent in good faith in order to avoid excess costs, delay, and multiplicity of the proceedings would likely suffice to violate each and every one of the applicable statutes in place in the Courts in which he routinely practices law. Considering the rules under which Defense Counsel is accustomed to practicing, his refusal to provide consent where no good faith basis existed for refusing consent further underscores the bad faith conduct present here.

## II.    CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's Motion for Sanctions and assess the reasonable costs totaling $4,123 for preparing and filing the motion to amend and accompanying papers, and the reasonable costs totaling $4,907 for preparing and filing and replying to, and attending the hearing for this motion for sanctions. [*See* Vogele Decl. at ¶¶ 5-6; Vogele Reply Decl., at ¶ 9.] This result serves the interests of justice so as to deter such conduct in the future, and to compensate Plaintiff for her unnecessary expenditure of costs.

Dated:  February 19, 2008                    VOGELE & ASSOCIATES

By: ___/S/___
Colette Vogele

Attorneys for Plaintiff VIOLET BLUE

---

[8] Western District of Washington, General Rule 3(d) (imposes sanctions on any attorney who "multiplies or obstructs the proceedings in a case so as to increase the cost thereof unreasonably and vexatiously"); Eastern District of Washington, Local Rule 83.1(k)(c) (requires attorneys to "stipulate to undisputed facts to avoid needless costs or inconvenience, and waive procedural formalities when the interests of [the] client will not be adversely affected"); District of Colorado, Local Civil Rule 7.1(A) (requires attorneys to make reasonable, good-faith efforts to confer with opposing counsel to resolve a matter before filing a motion); Southern District of Indiana, Standards for Professional Conduct 17(requires attorneys to "agree to reasonable requests for . . . waiver of procedural formalities, provided [the] clients' legitimate rights will not be materially or adversely affected"); Middle District of Florida, Local Rule 3.01(g) (requires attorneys to confer in a good faith effort to resolve issues raised by a motion before it is filed).

PLAINTIFF'S REPLY BRIEF IN SUPPORT                                    Case No. C 07-5370 SI
OF MOTION FOR SANCTIONS                         9