1  COLETTE VOGELE (SBN No. 192865)
   Email: colette@vogelelaw.com
2  BENJAMIN COSTA (SBN No. 245953)
   Email: ben@vogelelaw.com
3  **VOGELE & ASSOCIATES**
   12 Geary Street, Suite 701
4  San Francisco, CA 94108
   Tel: (415) 391-3311
5  Fax: (415) 358-4975

6  Attorneys for Plaintiff and Counter-defendant
   VIOLET BLUE
7

8              UNITED STATES DISTRICT COURT FOR THE

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  VIOLET BLUE, an Individual,              Case No. C 07-5370 SI

13        Plaintiff and Counter-defendant,   **PLAINTIFF VIOLET BLUE'S
                                             NOTICE OF MOTION AND (1)
14     v.                                    SPECIAL MOTION TO STRIKE
                                             FIFTH COUNTERCLAIM AS A
15  ADA MAE JOHNSON a/k/a ADA                MERITLESS S.L.A.P.P. PURSUANT
    WOFFINDEN, an individual d/b/a           TO CAL. CODE OF CIV. P. § 425.16;
16  VIOLET BLUE a/k/a VIOLET a/k/a           AND (2) MOTION TO DISMISS THE
    VIOLET LUST; ASSASSIN PICTURES           THIRD AND FOURTH
17  INC., a California Corporation;          COUNTERCLAIMS**
    ASSASSINCASH.COM; BILL T. FOX,
18  an individual, a/k/a BILL FOX; FIVE      The Honorable Susan Illston
    STAR VIDEO L.C., an Arizona Limited      Courtroom 10, 19th Floor
19  Liability Company a/k/a Five Star Video  450 Golden Gate Avenue
    Distributors LLC d/b/a Five Star         San Francisco, CA 94102
20  Fulfillment; and DOES 1-10
                                             Hearing Date: April 4, 2008
21        Defendants and Counter-claimants.  Hearing Time: 9:00 a.m.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

**I.**   INTRODUCTION. ......................................................................................................... 2

**II.**   RELEVANT FACTS AND PROCEDURAL HISTORY ................................................. 3

    1.   Facts Relevant To Motion To Dismiss And Anti-SLAPP Motion. ............. 3

    2.   Procedural History. ..................................................................................... 7

**III.**   ARGUMENT ................................................................................................................. 8

    A.   The Fifth Counterclaim Should Be Stricken As A Meritless SLAPP And
Attorneys Fees Should Be Awarded Because The Counterclaim Arises
From Blue's Exercise Of Free Speech And Woffinden Cannot Establish A
Probability Of Prevailing On Her Claim. ................................................................ 8

        1.   Anti-SLAPP Law Is To Be Construed Broadly To Protect The
Fundamental Constitutional Rights Of Petition And Speech. .................... 9

        2.   Blue's Conduct Is Protected Under §425.16(e)(3). ................................. 10

        3.   This SLAPP Should Be Stricken Because Counterclaim Plaintiff
Cannot Establish A Probability Of Prevailing On Her Claim. ................. 13

        4.   The Court Should Grant Blue Her Attorneys' Fees And Costs
Under California Code of Civil Procedure 425.16(c). ............................. 17

    B.   The Third And Fourth Counterclaims Should Be Dismissed For Failure To
State A Claim Upon Which Relief Can Be Granted. ............................................. 18

        1.   The Third Counterclaim For Cancellation Of U.S. Trademark
Application No. 77/121,570 Must Be Dismissed Without Leave To
Amend Because Such Cause Of Action Does Not Exist. .......................... 19

        2.   The Fourth Counterclaim Fails Because Woffinden Does Not
Allege Critical Elements Of An Unfair Competition Claim. .................... 21

**IV.**   CONCLUSION ............................................................................................................. 22

1

# TABLE OF AUTHORITIES

2

## CASES

3

Two Pesos, Inc. v. Taco Cabana, Inc.
    505 U.S. 763 (1992)..................................................................................................... 21

4

Abbott Laboratories v. Gardner
    387 U.S. 136, (1967)................................................................................................... 20

5

6

Albright v. Oliver,
    510 U.S. 266, 268 (1994)............................................................................................ 19

7

Barrett v. Rosenthal,
    40 Cal.4th 33, 41, fn. 4 (2006))................................................................................... 11

8

9

Bell Atlantic Corp. v. Twombly
    127 S. Ct. 1955 (2007)................................................................................................ 19

10

Briggs v. ECHO,
    19 Cal.4th 1106 (1999) ................................................................................................. 9

11

12

Brower v. Ackerley
    88 Wn. App. 87 (Wash. Ct. App. 1997) .................................................................... 18

13

Commodore v. University Mechanical Contractors, Inc.
    120 Wn.2d 120 (Wash. 1992) .................................................................................... 18

14

ComputerXpress, Inc. v. Jackson,
    93 Cal.App.4th 993, 113 Cal.Rptr.2d 625 (2001)...................................................... 11

15

16

Damon v. Ocean Hills Journalism Club,
    85 Cal.App.4th 468 (2002) ........................................................................................ 11

17

Dicomes v. State
    113 Wn.2d 612, 782 P.2d 1002 (Wash. 1989)........................................................... 18

18

19

Ferlaut v. Hamsher
    74 Cal.App.4th 1394 (1999) ...................................................................................... 14

20

Foley v. Marques
    2003 U.S. Dist. LEXIS 17554 (N.D. Cal., Sept., 30, 2003) ...................................... 19

21

22

GMA Accessories, Inc. v. Idea Nuova, Inc.
    157 F. Supp. 2d 234 (S.D. N.Y. 2000)....................................................................... 20

23

Good Government Group of Seal Beach v. Superior Court,
    22 Cal.3d 672 (1978) ................................................................................................. 13

24

25

Grimsby v. Samson
    85 Wn.2d 52 (Wash. 1975)........................................................................................ 18

26

Hustler Magazine, Inc. et al. v. Falwell
    485 U.S. 46 (1998)..................................................................................................... 14

27

28

1

**CASES CONTINUED**

2
Kendall-Jackson Winery v. E. & J. Gallo Winery
      150 F.3d 1042 (9th Cir. 1998) ................................................................ 21

3

Kronemyer v. Internet Movie Data Base, Inc.,
4
      150 Cal.App.4th 941 (Cal. App. 2007) .................................................. 11

5
Kyle v. Carmon,
      71 Cal.App.4th 901 (1999) .................................................................... 13

6

Leidholdt v. L.F.P., Inc.
7
      860 F.2d 890 (9th Cir. 1988) ........................................................... 14, 18

8
Liu v. Moore
      69 Cal.App.4th 745 (1999) ...................................................................... 9

9

Lopez v. Smith
10
      203 F.3d 1122 (9th Cir. 2000) .......................................................... 19, 22

11
Macias v. Hartwell
      55 Cal.App.4th 669 (1997) ...................................................................... 9

12

Milkovich v. Lorain Journal Co.,
13
      497 U.S. 1 (1990).............................................................................. 14, 15

14
Navarro v. Block
      250 F.3d 729 (9th Cir. 2001) .................................................................. 18

15

Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n
16
      461 U.S. 190 (U.S. 1983)........................................................................ 20

17
Partington v. Bugliosi
      56 F.3d 1147 (9th Cir. 1995) ............................................................ 14, 15

18

Robertson v. Dean Witter Reynolds, Inc.
19
      749 F.2d 530 (9th Cir. 1984) .................................................................. 18

20
Seelig v. Infinity Broadcasting Corp.,
      97 Cal.App.4th 798, 806 (Cal. App. 2002)..................................... passim

21

Shwarz v. United States
22
      234 F.3d 428 (9th Cir. 2000) .................................................................. 19

23
Taing v. Boeing Co.
      50 Fed. Appx. 807 (9th Cir. 2002)......................................................... 18

24

U.S. v. Real Prop. Located at 9832 Riceon Ave.
25
      234 F. Supp. 2d 1136 (C.D. Cal. 2002) ................................................. 19

26
Unelko Corp. v. Rooney
      912 F.2d 1049 (9th Cir. 1990) ....................................... 14, 15, 16, 17

27

Universal Tube & Rollform Equip. Corp. v. YouTube, Inc., et al.
28
      504 F. Supp. 2d 260 (N.D. Oh. 2007).................................................... 20

Whitney Information Network, Inc. v. Gagnon
    353 F. Supp. 2d 1208 (M.D. Fla. 2005) ................................................................... 20

Wilcox v. Superior Court,
    27 Cal.App.4th 809 (Cal. App. 1994) ..................................................................... 13

**CALIFORNIA STATUTES**

Cal. Code of Civ. Proc. § 425.16 ............................................................................... passim

Cal. Code of Civ. Proc. § 425.16(a) ............................................................................... 9

Cal. Code of Civ. Proc. § 425.16 (b)(1) .......................................................................... 9

Cal. Code of Civ. Proc. § 425.16(c) .......................................................................... 8, 17

Cal. Code of Civ. Proc. § 425.16(e)(3) .......................................................... 9, 10, 11, 13

Cal. Code of Civ. Proc.  §425.16(e)(4) ...................................................................... 9, 13

**FEDERAL STATUTES**

15 U.S.C. § 1051 ................................................................................................... 19, 20

15 U.S.C. § 1052 ......................................................................................................... 20

15 U.S.C. § 1057 ......................................................................................................... 20

15 U.S.C. § 1062 ......................................................................................................... 20

15 U.S.C. § 1063 ......................................................................................................... 20

15 U.S.C. § 1064 ......................................................................................................... 19

15 U.S.C. § 1119 ................................................................................................... 19, 20

15 U.S.C. § 1125 ................................................................................................... 19, 20

15 U.S.C. § 1125(a) ..................................................................................................... 21

15 U.S.C. § 1127 ......................................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2, 8, 18, 19

**OTHER AUTHORITIES**

http://ainews.com/AdRates/ ........................................................................................ 12

http://en.wikipedia.org/wiki/Wikipedia:About ............................................................ 12

http://www.alexa.com/data/details/main/ainews.com ................................................... 12

http://www.merriam-webster.com/dictionary/hyperbole ............................................... 17

http://www.merriam-webster.com/dictionary/twat ....................................................... 17

McCarthy on Trademarks and Unfair Competition
§§ 27:14, 27:18 (4th ed. Supp. 2006)....................................................................................... 21

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .................................................................................................................. 14

1    **NOTICE OF MOTION**

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on April 4, 2008, at 9:00 a.m., or as soon thereafter as this

4    matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San

5    Francisco, California, in Courtroom 10 (19th Floor) of The Honorable Susan Illston, Plaintiff

6    Violet Blue ("Blue") will and hereby does move the Court for (1) an Order pursuant to California

7    Code of Civil Procedure section 425.16 striking the "Fifth Counterclaim For Damages From

8    Outrage" against Blue as a Strategic Lawsuit Against Public Participation ("S.L.A.P.P."), and

9    awarding Blue's attorneys fees, on grounds that the fifth counterclaim arises from Blue's acts in

10    furtherance of her constitutional rights of free speech and that Defendant and Counterclaim

11    Plaintiff Ada Woffinden's ("Woffinden") cannot establish a probability of prevailing on her fifth

12    counterclaim, (2) an Order pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the "Third

13    Counterclaim For Cancellation of U.S. Trademark and Service Mark Registration Application

14    Serial No. 77121570," and the "Fourth Counterclaim For Injunctive Relief Proscribing

15    Counterclaim Defendant's Use Of Counterclaim Plaintiff's Trademark" on grounds that these

16    counterclaims fail to state a claim upon which relief can be granted, and for other appropriate

17    relief.

18    This motion is based upon this Notice of Motion, the accompanying Memorandum of

19    Points and Authorities, the Declaration of Colette E. Vogele in support of this Motion, the

20    concurrently-filed Request for Judicial Notice,[1] the pleadings and papers on file, and such other

21    arguments as may be presented in the Reply and at the hearing.

22    **MEMORANDUM OF POINTS AND AUTHORITIES**

23    **I.    INTRODUCTION.**

24    Plaintiff and Counterclaim Defendant Violet Blue ("Blue") is a well-known and

25    respected sex-positive blogger, journalist, reporter, accomplished writer, and speaker. Defendant

26

27    _____
     [1] The Request for Judicial Notice seeks judicial notice of documents which are also attached to the Declaration of Colette E. Vogele. See Request for Judicial Notice Exhibits A-S; Declaration of Colette E. Vogele ("Vogele Decl."), Exhibits A-H, K, M-V. For simplicity of citations, we cite only to the Vogele Declaration when referencing these documents for the remainder of this Motion.

28

1    and Counterclaim Plaintiff Ada Mae Woffinden ("Woffinden") is a porn star who has chosen to

2    use Blue's personal name and likeness, as well as Ms. Blue's trademark, VIOLET BLUE, as her

3    "stage name" for her pornographic productions, appearances, and work as an adult film actress in

4    California and throughout the world. This action is a result of serious and continuing confusion

5    caused by Woffinden's insistence in trading off of the goodwill of Blue's trademark, as well as

6    her assuming Blue's personal name and mimicking Blue's likeness and persona on her website,

7    in numerous pornographic films, on the internet, and in live and recorded performances.

8        On February 4, 2008, after being served with Plaintiff Blue's First Amended Complaint

9    ("FAC"),[2] Woffinden filed an Answer to the First Amended Complaint ("Answer to FAC")[3]

10   asserting five counterclaims. As discussed below, the fifth counterclaim is a Strategic Lawsuit

11   Against Public Participation ("SLAPP") aimed at interfering with Blue's legitimate exercise of

12   her First Amendment rights. SLAPPs frequently appear at first blush as ordinary lawsuits, but

13   they are not. The California Legislature recognized the chilling effect of SLAPP's on First

14   Amendment rights when it enacted section 425.16 in 1992, and reaffirmed the breadth with

15   which the SLAPP statue should be applied in amending it in 1997. Because Woffinden cannot

16   establish that there is a probability that she will prevail on her fifth counterclaim as required by

17   section 425.16, this Court should grant Blue's special motion to strike and award her attorneys'

18   fees. Moreover, Woffinden's third and fourth counterclaims should be dismissed without leave to

19   amend for failure to state a claim under which relief can be sought.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

20

21       1.    Facts Relevant To Motion To Dismiss And Anti-SLAPP Motion.

22       Violet Blue[4] is a well-known and respected personality in the field of technology,

23   robotics, human sexuality, sexual health, and education. Since at least as early as 1999, she has

24   developed her reputation as a writer, lecturer, prolific blogger, podcaster, editor, newspaper

25   columnist, and reporter among other forms of media and education. Blue has become widely

26

27   _____

[2] [First Amended Complaint (Dkt. No. 28), *filed* 2/4/08 ("FAC").]
[3] [Def. Woffinden's … Ans. To Plf's First Am. Compl., Aff. Defenses, Countercls., Prayer For Relief, and Jury Demand (Dkt. No. 29), *filed* 2/4/08  ("Answer to FAC").]

28   [4] Violet Blue is Blue's personal name and, contrary to Defendant Woffinden's unsubstantiated assertions, Blue has never changed her name.

1    recognized as a premier sexual health commentator in California, throughout the country, and

2    throughout the world. [FAC at 4:20-27.] She is the author of the column "Open Source Sex,"

3    which appears weekly at SFGate.com, the website of the *San Francisco Chronicle* newspaper,

4    the well-respected and long-running daily newspaper having a significant daily regional,

5    national, and international distribution. [FAC at 5:21-25.] Ms. Blue's podcast is entitled Open

6    Source Sex and has been featured in The Wall Street Journal. [Vogele Decl., Exh. A] She is a

7    reporter at Metblogs SF, Geek Entertainment TV, Gawker Media's Fleshbot, and is frequently

8    quoted or discussed by mass media around the world.

9        Blue has authored no less than seventeen books on the topic of human sexuality and safer

10    sex practices and offered in four languages with more translations forthcoming. [FAC at 5:26–

11    6:3.] She also publishes her writings online through an internet website entitled "Violet Blue™:

12    Open Source Sex" (located at http://www.tinynibbles.com/), which focuses on human sexuality

13    and safe sex practices. Her website includes an internet diary -- also known as a weblog or

14    "blog" -- and regularly attracts over 4.3 million visitors each year. [FAC at 5:3-7.] She has

15    written columns for magazines with international distribution such as *Forbes* and *O: the Oprah*

16    *Magazine*. [FAC at 4:25-52; Vogele Decl., Exhs. B, C]. A routine lecturer at the University of

17    California's Boalt Hall School of Law (Berkeley), the University of California at San Francisco,

18    Google, Inc., and at numerous conventions, Blue's passion and hard work have won her high

19    esteem and reputation in many industries including tech, media, adult entertainment, health and

20    sexuality, and education. [FAC at 5:8-11.] For her entire career, her writings, publications,

21    programs, speaking engagements, and educational initiatives have all been associated exclusively

22    with her name and trademark, VIOLET BLUE. [FAC at 4:19-22; 6:7-11.]

23        Woffinden is an American pornographic actress, who has filmed hundreds of

24    pornographic films. Early in her career she used the names "Violet" and "Violet Lust," and later

25    adopted the "stage name, 'Violet Blue'" for use in her acting and pornography-related

26    appearances. [Defendant Woffinden's "Response," *filed* 11/13/08 (Dkt. No. 6) ("Initial Answer")

27    at 3:16; Answer to FAC at 4:20-21; Vogele Decl., Exh. D (Internet Movie Database referencing

28    "alternate names" for "Violet Blue": "Ada Mae Johnson / Violet Lust / Violet").]

1    The events which culminated in the present lawsuit began on October 27, 2006. That day,

2    Blue was taken aback to receive communications from several journalists and acquaintances who

3    were surprised to learn that she would be appearing at the "Exotic Erotic Ball," a self-styled

4    "celebration of flesh, fetish, and fantasy," over the coming weekend taking place in San

5    Francisco. Having no appearances scheduled for that event, Blue was at first confused. [FAC at

6    10:17-26.] Her confusion turned to serious concern when she learned that she had in fact been

7    mistaken for a porn actor, Woffinden, who was scheduled to appear at the event and whose

8    appearance was heavily advertised and promoted as an appearance by "Violet Blue." [FAC at

9    10:21-24; Vogele Decl., Exh. E (Internet Archive entry reflecting the Exotic Erotic Ball website

10   where Woffinden's appearance under the name "Violet Blue" is advertised as a "host" of the

11   2006 Ball).] Blue wrote an entry on her blog dated October 27, 2006, that described her

12   experiences of being confused with a porn star. [Vogele Decl., Exh. F.] [5] Defendant Woffinden,

13   aware of the mounting confusion she had caused, admits to requesting that the moniker "Porn

14   Star" precede her use of the name "Violet Blue" in promotional material. [Initial Answer at 6:11-

15   13.]

16   Concerned by the confusion that she herself was witnessing, Blue contacted Woffinden to

17   request that stop the use of the name "Violet Blue." Woffinden acquiesced and apologized for

18   the misuse of Blue's name, and, as recently as December 2006, assured Blue that she had

19   "finished" her career in traditional pornography and that Blue's "name [would] no longer be on

20   the front of porn boxcovers [sic] that say 'Shut up and blow me' and the like." [Initial Answer,

21   Exh. G at 2 (first sentence of 12/5/06 email message from Woffinden to Blue).] Despite these

22   assurances, and unbeknownst to Blue, Woffinden continued her unauthorized use of Blue's

23   valuable identity and trademark.

24   Somewhat relieved by the assurances of Woffinden, Blue continued to build her

25   illustrious career. In January, 2007 Blue was honored as one of the internet's most influential

26   figures in an article entitled "*Forbes* Web Celeb 25," featured in the online issue of *Forbes*

27   magazine. [FAC at 5:17-20; Vogele Decl., Exh. B.] Confusion, however, continued to grow and

28   _____

[5] The details of this blog entry are discussed more fully *infra* at Section II.A.3. with respect to
Blue's anti-SLAPP motion to strike the fifth counterclaim.

1  had spread to the technology community in which Blue also writes, reports, and speaks. For

2  example, in a popular on-line audio program discussing the "Forbes Web Celeb 25" awards, the

3  hosts of "This Week In Tech" mocked several of the "Web Celebs" honored by Forbes.com.

4  [Vogele Decl., Exh. G (Webpage Reflecting "This Week In Tech" (Episode 86)).] When Blue

5  drew attention to their mockery in the column she authors for the *San Francisco Chronicle*, co-

6  host Leo LaPorte responded apologetically. [Id., Exh. H.] These well-known media and

7  technology hosts believed that *Forbes* had chosen to honor Woffinden, when it was Blue who

8  had in fact been honored. [Id., Exhs. G, H.]

9         As 2007 continued, evidence that Woffinden would continue performing under Blue's

10 name mounted and it became unmistakable that confusion would not dissipate. On October 6,

11 2007, Blue received an email from a stranger to her named "Dave Pounder" at her SF Chronicle

12 email address. A purported acquaintance of Woffinden, who had performed in adult films with

13 her, the email bears the subject line: "Hey Ada" and goes on to state: "What's up, girl! I see you

14 are writing for SFgate.com now…. Very interesting." It continues with the plainly mistaken

15 belief that Blue is in fact Woffinden: "I'll never forget you because *you were my first scene ever*

16 …" [FAC at 11:9-17; Vogele Decl., Exh. I (Reproduction of email from D. Pounder to Blue

17 included with documents produced to Woffinden on Jan. 17, 2008, in Blue's Fed. R. Civ. P.

18 26(a)(1) disclosure bearing production number VB 000096) (emphasis added).] Blue, of course,

19 has never met nor appeared in any film with "Dave Pounder." Woffinden affirms the confusion

20 experienced by Pounder, and admits that this personal and intimate acquaintance was himself

21 plainly confused by Woffinden's use of Blue's name. [Initial Answer at 6:16-17 (admitting to the

22 confusion of Pounder).] October also brought with it the 2007 Exotic Erotic Ball where, once

23 again, Woffinden widely promoted her scheduled appearances as "Violet Blue" in San Francisco.

24 [Vogele Decl., Exh. J (reproductions of advertisements included in documents produced to

25 Woffinden on Jan. 17, 2008, with Blue's Fed. R. Civ. P. 26(a)(1) initial disclosures bearing

26 production numbers VB 000213-220).][6] Fearing nothing would stop the continued confusion and

27

28
_____
[6] Even more disturbing is that the 2008 Exotic Erotic Ball advertisements for the event *next October*, are already promoting Woffinden's forthcoming appearance as "Violet Blue." [Vogele Decl., Exh. K].

1    Woffinden's use of her name, and aware that Woffinden's word was not sufficient, Plaintiff Blue

2    filed suit.

3        2.    Procedural History.

4        Blue initiated this litigation on October 22, 2007, against Woffinden alleging claims of

5    infringement and dilution of her trademark VIOLET BLUE, and violation of her right of

6    publicity and unfair competition for impermissibly assuming Blue's name and persona.

7    Woffinden answered the complaint on November 13, 2008 ("Initial Answer"), admitting

8    numerous allegations and conceding confusion between Blue and Woffinden's use of Blue's

9    trademark VIOLET BLUE. [*See e.g.*, Initial Answer at 6:11-13 (admitting that she "requested

10    that the word 'Pornstar' [be added to her name at] the Exotic Erotic Ball so the public would not

11    confuse her with [Ms. Blue]"); id. at 6:16-17 (admitting to the actual confusion of one "Dave

12    Pounder," an intimate acquaintance of Counterclaim Plaintiff); id. at 9:1-3 (admitting she

13    received emails evidencing confusion from members of the public who believed they were

14    writing to Ms. Blue); id. at 9:12-13 (admitting she had "changed her to 'Violetta Blue' to avoid

15    confusion to the public"); id. 10:16-17 (admitting to "[making] contact with her webmaster and

16    [asking] that the name Violet Blue be changed to Violetta Blue, as to avoid confusion"); id. at

17    12:1-2 (admitting confusion).]

18        Because of many new facts raised in Woffinden's Initial Answer, Blue sought and was

19    granted leave to file a First Amended Complaint. Woffinden answered the FAC and alleged five

20    counterclaims against Plaintiff. These counterclaims include two pleas for declaratory relief, a

21    request that the Court "cancel" Blue's pending federal trademark application, what appears to be

22    / / /

23    / / /

24    / / /

25    / / /

26

27

28

1    a federal unfair competition claim, and a claim of "Outrage". [Answer to FAC at 24:8-27:24.][7]

2    As discussed further below, the fifth counterclaim for "Outrage" is a SLAPP and this Court

3    should strike the claim under California Code of Civil Procedure section 425.16 and award Blue

4    her attorneys; fees and costs (§ 425.16(c)). Moreover, the third and fourth counterclaims are

5    wholly spurious and should be dismissed under Federal Rule of Civil Procedure 12(b)(6) without

6    leave to amend.

7                                    **III.   ARGUMENT**

8    A.    The Fifth Counterclaim Should Be Stricken As A Meritless SLAPP And Attorneys Fees
            Should Be Awarded Because The Counterclaim Arises From Blue's Exercise Of Free
9            Speech And Woffinden Cannot Establish A Probability Of Prevailing On Her Claim.

10

11            Woffinden's fifth counterclaim hinges on the single allegation that Blue described

12    Woffinden as a "twat" in an entry on Blue's blog. Woffinden alleges, in conclusory fashion, that

13    Blue made "numerous postings on the internet regarding Counterclaim Plaintiff." [Answer to

14    FAC at 27:4-5.] The counterclaim, pleads only one specific incident alleging that a blog entry

15    authored by Blue states: "[Woffinden] "is a 'twat'" [Answer to FAC at 27:7-8.][8]

16    / / /

17    / / /

18

19

20    [7] Many allegations and responses found in Woffinden's Answer to the FAC directly contradict
        several of the admissions found in her Initial Answer. For example, in her Initial Answer,
21    Woffinden admits to actual confusion between herself and Blue [Initial Answer at 6:11-14
        (requesting the addition of the word "pornstar" to her name to avoid confusion, 11:16-21
        (admitting to the confusion of Pounder); 9:1-3 (admits receiving emails evidencing confusion by
22    the general public)], while her Answer to the FAC adopts the opposite stance, [Answer to FAC at
        17:6-7 (denying any confusion between Blue and the Woffinden); 18:11-13 (denying confusion
23    between Blue and Woffinden); 23:23-25 (alleging that the "parties have co-existed with their
        respective uses of the name "Violet Blue" for many years without confusion)]. Even within her
24    Answer to the FAC, Woffinden oscillates between asserting that there is no confusion between
        the parties [id.] and asserting that sufficient confusion exists to justify her third counterclaim,
25    which appears to be a claim of federal unfair competition [id. at 29:18-25] based on the very sort
        of confusion she earlier denies exists [id. at 17:6-7; 18:11-13; 23:23-25)].
26    [8] A careful reading of the blog entry makes clear that it does *not* state that Woffinden "is a
        'twat'" as alleged in paragraph 17 of Woffinden's counterclaims. [Answer to FAC, 27:8.] The
27    blog entry actually says that Woffinden's "tools" include a "twat." [Vogele Decl., Exh. F]. The
        meaning in context is quite different from that alleged, however, in bringing this motion, the
28    Court must takes the allegations in the pleading as if they were true. Even under Woffinden's
        erroneous reading of the blog entry, Woffinden has no probability of prevailing at trial because
        Blue's conduct is protected by the First Amendment.

1.     Anti-SLAPP Law Is To Be Construed Broadly To Protect The Fundamental
Constitutional Rights Of Petition And Speech.

The California Legislature enacted section 425.16 in 1992 "in an effort to curtail lawsuits

brought primarily 'to chill the valid exercise of . . . freedom of speech and petition for redress of

grievances' and 'to encourage continued participation in matters of public significance.'" <u>Seelig</u>

<u>v. Infinity Broadcasting Corp.</u>, 97 Cal.App.4th 798, 806 (Cal. App. 2002) (citing § 425.16(a).)

Five years later, the Legislature unanimously amended the section "effecting no substantive

changes to the anti-SLAPP scheme, but providing that the statute 'shall be construed broadly.'"

<u>Briggs v. ECHO</u>, 19 Cal.4th 1106, 1119 (1999) (Cal. Code Civ. P. § 425.16(a)). As one

California Court further explains:

> The section authorizes a special motion to strike "[a] cause of action against a
> person arising from any act of that person in furtherance of the person's right of
> petition or free speech under the United States or California Constitution in
> connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) The goal is to
> eliminate meritless or retaliatory litigation at an early stage of the proceedings.
> (<u>Liu v. Moore</u> (1999) 69 Cal.App.4th 745, 750; <u>Macias v. Hartwell</u> (1997) 55
> Cal.App.4th 669, 672.) The statute directs the trial court to grant the special
> motion to strike "unless the court determines that the plaintiff has established that
> there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd.
> (b)(1).)

<u>Seelig</u>, 97 Cal.App.4th at 806.

The statute generally sets forth a two-part examination: First, the moving defendant must

meet the threshold requirement of showing that the actions complained of are protected under the

statute, and, second, once that threshold requirement is shown, the burden shifts to the plaintiff

who most prove that she has a reasonable probability of prevailing on her claims at trial. *See*

<u>Seelig</u>, 97 Cal.App.4th at 806-07. Here, the meritless and retaliatory fifth counterclaim of

"Outrage" asserted by Woffinden is precisely the kind of SLAPP that section 425.16 was

intended to stop. It should be struck because Blue's writing is broadly protected under subsection

425.16(e)(3).[9]

---

[9] The conduct is likewise protected under 425.16(e)(4) as the claim arises from Blue's conduct
(writing) in furtherance of the exercise of her "constitutional right of free speech in connection
with a public issue or an issue of public interest."

2.      Blue's Conduct Is Protected Under §425.16(e)(3).

Sub-section 425.16(e)(3) protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. P. § 425.16(e)(3). Here, Blue easily meets the requirements of this sub-section because she meets all three requirements: (1) a written statement or writing, (2) in a public forum, and (3) in connection with an issue of public interest.

Addressing the first two requirements, and taking the allegations as plead, paragraph 17 of the counterclaims make abundantly clear that the claim arises solely from a written statement made by Blue in a public forum:

> 17.      [Blue] *has made numerous postings on the internet* regarding [Woffinden] and has, at times, slandered and libeled [Woffinden] in such a manner *on [Blue's] Web site* that [Woffinden] cannot respond in a meaningful manner. This outrage includes the *specific allegation by [Blue] SULLIVAN-BLUE that [Woffinden] is a "twat."*

[Answer to FAC at 27:4-8 (emphasis added).]

Woffinden further alleges that "[Blue] *is able to reach the ears of some 3.2 million people on the internet*, … and *several millions of people* in the greater San Francisco, California area as a result of her weekly column in the SFGate publication." [Answer to FAC at 27:13-16 (emphasis added).] Thus, there is no doubt that these allegations relate to a "written statement" -- the "twat" statement -- made in the "public forum" of the internet, at a website that is accessed and read by millions of readers in the public.

Indeed, using the name "Violet Blue," Woffinden has repeatedly inserted herself in the same public forum of the internet: (a) at her own websites www.violetblue.org and xxx.violetblue.org and on-line sales of her videos and images, (b) through her public appearances at numerous porn industry public events, including the Exotic Erotic Ball in San Francisco, which are reported at industry websites; E (Exotic Erotic Ball advertisement 2006); J (Exotic Erotic Ball advertisement 2007); K (forthcoming Exotic Erotic Ball advertisement 2008); M (July 2007 Adult Industry News article written by Woffinden as "Violet Blue" offering photos of herself for sale; FAC at 7:36-8:3 & Exh. D (www.violetbule.org website).] Courts agree that statements made on the internet meet the requirement of a public forum. *See* <u>Damon v. Ocean</u>

1  Hills Journalism Club, 85 Cal.App.4th 468, 475 (2002) (public forum defined as "a place that is

2  open to the public where information is freely exchanged"); Kronemyer v. Internet Movie Data

3  Base, Inc., 150 Cal.App.4th 941 (Cal. App. 2007) ("The California Supreme Court held that Web

4  sites accessible to the public are 'public forums' for the purposes of the anti-SLAPP statute.")

5  (citing Barrett v. Rosenthal, 40 Cal.4th 33, 41, fn. 4 (2006)); see also ComputerXpress, Inc. v.

6  Jackson, 93 Cal.App.4th 993, 1006, 113 Cal.Rptr.2d 625(2001) (statements made on an internet

7  website made in a public forum). Accordingly, the first and second requirements of 425.16(e)(3)

8  are met because the written statements on Blue's internet website are undoubtedly in a public

9  forum as the internet allows for the free exchange of ideas, and the website is visited by millions

10  of readers each year.

11       The "twat" statement is also made "in connection with an issue of public interest"

12  satisfying the last requirement of subsection 425.16(e)(3). This case is analogous to Seelig, 97

13  Cal.App.4th 798. In Seelig, radio morning show hosts and producers commented on air that the

14  Plaintiff, who had recently been a contestant on a reality TV show, was a "skank" and "chicken

15  butt." Id. at 801-06. In reviewing a lower court's denial of an anti-SLAPP motion, a California

16  appellate court found that the statements made on the program were "in connection with an issue

17  of public interest" because the reality show was of significant interest to the public and the

18  media. Id. at 807-08. The court noted that "[b]y having chosen to participate as a contestant in

19  the Show, plaintiff voluntarily subjected herself to inevitable scrutiny and potential ridicule by

20  the public and the media." Id at 808.

21       Similarly, here, the public issue is the public dispute between Blue and Woffinden

22  regarding Woffinden's unauthorized use of Blue's name, persona, and trademark, and the

23  ongoing confusion of the two public figures. Numerous articles have been written about the

24  dispute, including several articles reported in the adult industry media, [see, e.g., Vogele Decl.,

25  Exhs. N (AVN Media Network[10] Article by Peter Warren entitled "Legal Battle Ensues Between

26

27  _____

[10] The Adult Industry News website is located at http://ainews.com/. It boasts having "tens of thousands of readers per day from around the world". See http://ainews.com/AdRates/ (last visited Feb. 25, 2008). Alexa, a company that provides information on web traffic to other websites, reports that Adult Industry News has a traffic rank (weekly average pageviews) of 165,470.  See http://www.alexa.com/data/details/main/ainews.com (last visited Feb. 25, 2008).

28

the Two Violet Blues: The Writer Sues the Porn Star"), O (AVN Media Network article by Mark

Kernes "Analysis: Violet Blue Vs. Violet Blue), P (ErosZine London News Brief entitled

"Writer Violet Blue Sues Porn Star Violet Blue")], in the technology sector, [*see, e.g.,* id., Exhs.

Q (Wired Blog Network article entitled "Sex Writer Violet Blue Sues Porn Star Violet Blue Over

Name – Updated"), R (Gizmodo tech blog entry: "Sex Ed Blogger Violet Blue to Start TWaT,[11]

the All-Girl Tech Podcast?"); S (South By Southwest Interactive blog article entitled "Violet

Blue Sues Violet Blue"), in the sex education and health sector, [*see, e.g.,* id., Exh. T (Sexerati:

Smart Sex blog: "Blue Monday: If Sex Educators Could Make a Living Wage, Would We Sue to

Protect Our Brand?")], and by other members of the internet public [*see, e.g.*, id. Exh. U

(Blogonaut article entitled "Will the Real Violet Blue Please Stand Up: Writer-Blogger Sues

Porn Star Over Name Use"). In a November 3, 2007 column at Adult Industry News website,

Woffinden responded to the public interest in this dispute by announcing that she had changed

her name to "Violetta Blue" as a result of this lawsuit. [Vogele Decl., Exh. V (Nov. 3, 2007

Adult Industry news article by Woffinden).] The public has taken such interest in the dispute that

members of the public have taken it upon themselves to make repeated changes to both Blue's

and Woffinden's pages at the Wikipedia on-line, user-generated, encyclopedia regarding the

dispute.[12] These changes have continued over many months, even as recently as January 30,

3008. [Vogele Decl., Exh. W (reflecting change history of the websites for Blue and

Woffinden).] Much like the plaintiff in Seelig, Woffinden has voluntarily subjected herself to

inevitable scrutiny and potential ridicule "by the public and the media" by her on-line activities,

writings, appearances, and the choice to do so under the name of "Violet Blue." Seelig, 97

Cal.App.4th at 808.

Accordingly, because the fifth counterclaim relates to a written statement in a public

forum about an issue of public interest, Blue has established the threshold requirements of this

---

[11] The use of "TWaT" is a take off on the popular "TWiT" (This Week In Tech) podcast where the Forbes Web Celeb confusion came about.
[12] Wikipedia.org describes the site as "a multilingual, web-based, free content encyclopedia project" which is "written collaboratively by volunteers from all around the world." *See* http://en.wikipedia.org/wiki/Wikipedia:About (last visited Feb. 24, 2008).

1    Motion to Strike under subsection 425.16(e)(3).[13]

2              3.      This SLAPP Should Be Stricken Because Counterclaim Plaintiff Cannot Establish
3                      A Probability Of Prevailing On Her Claim.

4              Since Blue has established a prima facie case that she has been sued after (a) making a

5    statement in a public forum in connection with an issue of public interest and/or (b) exercising

6    her First Amendment right to free speech in a public forum in connection with an issue of public

7    interest, the burden shifts to Woffinden who must prove that she has a reasonable probability of

8    prevailing on her fifth counterclaim at trial. *See* Seelig, 97 Cal.App.4th at 808-809. To meet this

9    burden, Woffinden must "demonstrate the complaint is legally sufficient and supported by a

10   sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted

11   by the plaintiff is credited." Id. at 809 (citing Wilcox v. Superior Court, 27 Cal.App.4th 809, 823

12   (Cal. App. 1994)). "The burden on the plaintiff is similar to the standard used in determining

13   motions for nonsuit, directed verdict, or summary judgment. [Citations.]" Id. (citing Kyle v.

14   Carmon, 71 Cal.App.4th 901, 907 (1999)).

15             The California Supreme Court has also opined that "because unnecessarily protracted

16   litigation would have a chilling effect upon the exercise of First Amendment rights, speedy

17   resolution of cases involving free speech is desirable." Good Government Group of Seal Beach

18   v. Superior Court, 22 Cal.3d 672, 685 (1978). To this end, the anti-SLAPP law was enacted to

19   provide "a fast and inexpensive dismissal of SLAPP's." Wilcox at 823. Such speedy dismissal

20   also serves the ends of judicial economy, by reducing the time and resources that courts and

21

22

23

24   _____

     [13] Subsection 425.16(e)(4) likewise protects "any other conduct in furtherance of the exercise of
     the constitutional right … of free speech in connection with a public issue or an issue of public
25   interest." Here, it is difficult to think of an example that is more directly on point with furthering
     ones First Amendment right to free speech than writing about one's personal experiences on an
26   on-line diary or blog. Blue, reported on the events she experienced, and in so doing she
     expressed her ideas or opinions about Woffinden's use of Blue's name, and did so in a public
27   forum. This conduct is classically protected "free speech" under the First Amendment.
     Furthermore, for the same reasons discussed in this Anti-SLAPP motion, the comments were
28   made "in connection with a public issue or an issue of public interest." Accordingly, Blue has
     met the threshold requirements of section 425.16(e)(4) in addition to those of 425.16(e)(3).

1   litigants must spend on meritless SLAPPs. This policy favoring early disposition applies directly

2   to the fifth counterclaim against Blue. Here, Woffinden cannot meet this burden.

3       Blue's expression of opinion regarding Woffinden is protected by the First Amendment.

4   U.S. Const. Am. I.[14] The Supreme Court distinguishes between statements that are "pure"

5   opinion and those that "imply a false assertion of fact," holding that "pure" opinions are

6   absolutely protected by the First Amendment and cannot serve as the basis for a defamation

7   claim, whereas the latter are actionable for a claim of defamation. Milkovich v. Lorain Journal

8   Co., 497 U.S. 1, 19 (1990). The First Amendment defense also applies equally to claims of

9   intentional infliction of emotional distress and outrage claims based on protected speech or

10  expression. See Hustler Magazine, Inc. et al. v. Falwell, 485 U.S. 46 (1998) (holding First

11  Amendment protection applies against intentional infliction of emotional distress and outrage

12  claims).

13          Statements do not imply a provably false factual assertion and thus cannot form
            the basis of a defamation action if they cannot 'reasonably [be] interpreted as
14          stating actual facts about an individual.' [citations omitted.] Thus, 'rhetorical
            hyperbole,' 'vigorous epithets,' 'lusty and imaginative expressions of . . .
15          contempt' and language used 'in a loose, figurative sense' have all been accorded
            constitutional protection. [citations omitted].
16

17  Seelig v. Infinity Broadcasting Corp., 97 Cal.App.4th 798, 119 Cal.Rptr.2d 108 (2002) (citing

18  Ferlaut v. Hamsher (1999) 74 Cal.App.4th 1394, 1401.). See also Unelko Corp. v. Rooney, 912

19  F.2d 1049, 1053 (9th Cir. 1990). The Ninth Circuit further holds that it will decide whether any

20  of the allegedly false statements are per se defamatory or otherwise actionable, "*[o]nly if* the

21  statement is *not an expression of opinion*." Leidholdt v. L.F.P., Inc., 860 F.2d 890, 893 (9th Cir.

22  1988) (emphasis added). Thus, the threshold matter for this Court to decide is "whether a

23  reasonable fact finder could conclude that the contested statement" – that Woofinden "is a

24  'twat'" – "'implies an assertion of objective fact.'" Partington v. Bugliosi, 56 F.3d 1147 (9th Cir.

25  1995) (citing Unelko, 912 F.2d at 1053). Because the statement in question is plainly an

26  expression of Blue's opinion, the Court need not proceed in a determination of whether the

---

[14] To the extent Woffinden sought to allege a claim for defamation (rather than "outrage" or "intentional infliction of emotional distress"), the counterclaim must likewise fail and should be stricken because the statement that Woffinden is a "twat" is pure opinion equally protected by the First Amendment.

1    statements are per se defamatory or otherwise actionable. The claim should be struck as a matter

2    of law.

3          Even if the Court were to proceed in a determination of whether a statement is

4    defamatory, Woffinden nevertheless must fail this analysis. The Ninth Circuit adopted a three-

5    part test to analyze the threshold question of whether the alleged statement "implies an assertion

6    of objective fact": (1) whether the general tenor of the entire work negates the impression that

7    the defendant was asserting an objective fact, (2) whether the defendant used figurative or

8    hyperbolic language that negates that impression, and (3) whether the statement in question is

9    susceptible of being proved true or false. Unelko, 912 F.2d at 1053; *see also* Seelig v. Infinity

10   Broadcasting Corp., 97 Cal.App.4th 798, 119 Cal.Rptr.2d 108 (2002) ("There can be no recovery

11   for defamation without a falsehood. [citation omitted] Thus, to state a defamation claim that

12   survives a First Amendment challenge, plaintiff must present evidence of a statement of fact that

13   is provably false."). Under this basic framework, a court will examine the statement in its

14   broader context, analyzing "the work as a whole, the specific context in which the statements

15   were made, and the statements themselves to determine whether a reasonable factfinder could

16   conclude that the statements imply a false assertion of objective fact and therefore fall outside

17   the protection of the First Amendment." Masson v. New Yorker Magazine, 501 U.S. 496, 520

18   (1991); Milkovich, 497 U.S. at 19; Partington, 56 F.3d at 1153.

19         Here, as to the first Unelko element, Woffinden wholly fails to allege that the general

20   tenor of the entire work somehow suggested that the statement that Woffinden "is a 'twat'" was

21   meant to be an implied assertion of fact. 912 F.2d at 1053. The three-page (when printed) blog

22   entry in question is plainly a tale from Blue's perspective of her experience of being confused

23   with a porn star. [Vogele Decl., Ex. F.] It is written in Blue's banter-like style evident throughout

24   her blog and website. The entry accounts for some background events, and reproduces portions

25   of interview transcripts available on-line wherein Woffinden makes statements that are attributed

26   to "Violet Blue" and are absolutely offensive and repugnant to Blue and which Blue would never

27

28

1    herself assert. [Id.][15] The blog entry goes on to explain Blue's horror to have spent "eight years

2    of [her] life writing 22 books on sex and sexuality, educating and lecturing on sex-positive

3    sexual pleasure and health," all the while working "[her] ass off to inject all-gender and all-

4    orientation and non-judgmental attitudes about sex into print and web" and earning very little

5    money, and then discovering that "someone else [is] us[ing her] name, writ big, in [her]

6    hometown." [Id.] Finally, after all of this, the statement that Woffinden is a "twat" comes on one

7    of the last line of this lengthy entry. The word appears in a section where Blue provides a handy,

8    humorous "guide" for her readership, which describes in witty and amusing expressions the

9    "locations," "habitat," "plumage" and "tools" that will distinguish Blue ("the Real Violet Blue

10   (TM)") from Woffinden ("the fake Violet Blue") "in the wild." Under the "tools," the entry

11   states:

12   > **Tools:**

13   > *The Real Violet Blue (me):* Apple products, camera, industrial machine
     > equipment, strap-on, lip gloss, glasses, rapier wit.

14

15   > *The fake Violet Blue:* Ability to perform dance steps, twat.

16   > Oh, snap! I'm your real Violet Blue. Now onward, into the weekend… I'll be
     > going to fun Halloween parties, so stay tuned.

17

18   [Vogele Decl., Exh. F (ellipses in original).]

19           With this context, it is obvious that the general tenor of the blog entry negates any

20   impression that Blue was asserting an objective fact that Woffinden "is a twat." <u>Unelko</u>, 912

     F.2d at 1053. [Answer to FAC at 27:8.]

21           As to the second element of the <u>Unelko</u> inquiry, the very suggestion that Woffinden is a

22   "twat" employs obvious hyperbole and figurative language. 912 F.2d at 1053; *according to*

23   <u>Seelig</u>, 97 Cal.App.4th at 810 (statements of a speaker's subjective judgment not actionable). In

24   accord with the dictionary definition, the word "twat" as allegedly used to describe Woffinden is

25

26   ---
     [15] For example, Woffinden reportedly says in response to a question about the war to free Iraq: "I

27   think it was kinda silly but I think we should just kill the entire Middle East. That way we
     wouldn't have terrorism any more." She also reportedly responds to the question "Are you
     bothered that California is being overrun by illegal immigration?" by stating: "Yeah, I think they
     should all go back to where they belong or learn how to speak English. … There are a lot of

28   Mexican scum who tend to live off the government and have a bunch of babies. I don't think we
     should be that open to immigration from Mexico." [Vogele Decl., Exh. F.]

1    an "extravagant exaggeration" intended to create a strong impression; it was not intended to be

2    taken seriously or literally as fact. Merriam-Webster's Online Dictionary, definition: hyperbole,

3    http://www.merriam-webster.com/dictionary/hyperbole (last visited Feb. 24, 2008) ("extravagant

4    exaggeration"). Of course it would have been impossible for readers to take the reference to

5    Woffinden actually being a "twat" literally because its literal interpretation is nonsensical when

6    applied to human being as a whole. *See* <u>Seelig</u>, 97 Cal.App.4th at 810. Especially when taken

7    into context of the entire blog entry where the statement was made [Vogele Decl., Exh. F], the

8    hyperbole and figurative nature of the comment is obvious; no reader could reasonably have

9    interpreted the statement to be one of actual fact. <u>Seelig</u>, 97 Cal.App.4th at 811.

10          Finally, the statement in question cannot be susceptible of being proved true or false

11   because "twat" is merely a slang term of opinion in reference to female genitalia. *See, e.g.*,

12   Merriam-Webster's Online Dictionary, definition: twat, http://www.merriam-

13   webster.com/dictionary/twat (last visited Feb. 24, 2008). Notwithstanding Woffinden's

14   allegations that the statements "were and are false," or that Blue "intended for other persons to

15   believe her allegations to be true," [Answer to FAC at 27:9, 17-18], the truth or falsity of the

16   statement is not at issue because, as alleged in the fifth counterclaim, it contains no assertions of

17   fact that can be proved either truthful or false. <u>Unelko</u>, 912 F.2d at 1053.[16]

18          Accordingly, Woffinden is not only unlikely to prevail on her claim at trial. Thus,

19   Woffinden cannot establish that she has any probability – let alone a reasonable probability – of

20   prevailing at trial.

21          4.    The Court Should Grant Blue Her Attorneys' Fees And Costs Under California
                  Code of Civil Procedure 425.16(c).
22

23          Finally, sub-section (c) requires an award of attorney's fees and costs to a prevailing

24   defendant in any anti-SLAPP motion. Here, because Blue has established protection by section

25   425.16, and Woffinden cannot prove that she has a reasonable probability of prevailing on her

26   fifth counterclaim of "Outrage" at trial, this Court should order that Woffinden pay Blue's fees

---

27   [16] Woffinden's allegation that Blue's website "indicates that other persons did believe [Blue's]
     allegations to be true" [Answer to FAC at 27:19-20] is a conclusory statement that has not been –
28   and can not be -- established because the remark is opinion, and could not thus be believed to be
     objectively true.

1    and costs associated with this Motion.[17]

2    B.    The Third And Fourth Counterclaims Should Be Dismissed For Failure To State A Claim
           Upon Which Relief Can Be Granted.

3

4         A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) requires a District Court

5    to dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P.

6    12(b)(6). Dismissal under Rule 12(b)(6) is further warranted where the complaint lacks a

7    cognizable legal theory or where the complaint presents a cognizable legal theory, but fails to

8    plead essential facts under that legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d

9    530, 534 (9th Cir. 1984). This inquiry tests the legal sufficiency of a claim, that is, whether the

10   plaintiff is entitled to offer evidence in support of the claim, and not whether the plaintiff will

11   prevail in the action. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

12

13

14   [17] Furthermore, Woffinden's fifth counterclaim cannot survive this anti-SLAPP motion because
     it plainly fails to allege the required elements of a claim of "outrage." Washington State's tort
15   law recognizes a distinct "tort of outrage," while under California law "the tort of outrage is not
     separable from intentional infliction of emotional distress." Taing v. Boeing Co., 50 Fed. Appx.
16   807 (9th Cir. 2002); Leidholdt v. L.F.P., Inc., 860 F.2d 890, 892 n. 2 (9th Cir. 1988). Under
     Washington State law, the tort of outrage requires: "(1) [E]xtreme and outrageous conduct; (2)
17   intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of
     severe emotional distress.". Commodore v. University Mechanical Contractors, Inc., 120 Wn.2d
18   120, 135-136 (Wash. 1992) (Citations omitted.) (quoting Dicomes v. State, 113 Wn.2d 612, 630,
     782 P.2d 1002 (Wash. 1989)). Further, "[t]he conduct in question must be 'so outrageous in
19   character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be
     regarded as atrocious, and utterly intolerable in a civilized community.'" Id. Here, as noted
20   above, the counterclaim, pleads only a single incident in which Woffinden was called a "twat."
     [Answer to FAC at 27:7-8.] This allegation, as a matter of law, is wholly insufficient to meet the
21   high bar of "extreme and outrageous conduct" or the "intentional or reckless infliction of
     emotional distress" causing actually distress required under the Washington State claim for
22   outrage. See Restatement (Second) of Torts, section 46(1); Brower v. Ackerley, 88 Wn. App. 87,
     98 n. 28 (Wash. Ct. App. 1997); Grimsby v. Samson, 85 Wn.2d 52, 59 (Wash. 1975) (outrage
     liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or
23   other trivialities. In this area plaintiffs must necessarily be hardened to a certain degree of rough
     language, unkindness and lack of consideration."). Here, using the term "twat" may be
24   considered an insult of opinion, but it does not reach the necessary threshold of "extreme and
     outrageous" speech going beyond all possible bounds of decency" and "regarded as atrocious,
     and utterly intolerable in a civilized community." Commodore, 120 Wn.2d at 135-136. Instead, it
25   is essentially the equivalent of the trivial conduct complained of in the Seelig case where the
     plaintiff unsuccessfully complained that being called a "skank" on the radio was defamatory.
26   Seelig v. Infinity Broad. Corp., 97 Cal. App. 4th 798 (Cal. Ct. App. 2002). Woffinden's
     counterclaim for "Outrage" also fails to allege (i) intentional or reckless infliction of emotional
27   distress, (ii) any facts regarding intent or recklessness, and (iii) any allegation of actual severe
     emotional distress resulting from being called a "twat." Because Woffinden has failed to plead
28   any stress whatsoever, let alone severe emotional stress, her claim must fail as a matter of law
     and should be dismissed.

1    In considering a Rule 12(b)(6) motion, the Court accepts the Plaintiff's material

2    allegations in the complaint as true and construes all reasonable inferences in the light most

3    favorable to the non-moving party. *See* <u>Shwarz v. United States</u>, 234 F.3d 428, 435 (9th Cir.

4    2000). However, the Court "need not automatically accept as true unreasonable inferences,

5    unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual

6    allegations." *See* <u>Foley v. Marques</u>, 2003 U.S. Dist. LEXIS 17554 (N.D. Cal., Sept., 30, 2003)

7    (Illston, J.) (citing <u>U.S. v. Real Prop. Located at 9832 Riceon Ave.</u>, 234 F. Supp. 2d 1136 (C.D.

8    Cal. 2002)). A Court "must accept all *well-pleaded* allegations as true." <u>Albright v. Oliver</u>, 510

9    U.S. 266, 268 (1994) (emphasis added). Thus, in pleading sufficient facts, a plaintiff must

10   suggest that his or her right to relief is *more than merely conceivable*, but plausible on its face.

11   *See* <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007) (emphasis added). A District

12   Court is not entitled to grant leave to amend if it determines that the pleading could not be cured

13   by the allegation of other facts.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

14    1.    The Third Counterclaim For Cancellation Of U.S. Trademark Application No.
             77/121,570 Must Be Dismissed Without Leave To Amend Because Such Cause
15           Of Action Does Not Exist.

16

17   Though no statutory or common-law cause of action is specified in either paragraph of

18   the third counterclaim, Woffinden presumably relies upon Section 37 of The Lanham Trademark

19   Act ("Lanham Act"), 15 U.S.C. § 1119, when she "requests that the Court cancel [Blue's] U.S.

20   Trademark and Service Mark Registration Application Serial No. 77121570." [Answer to FAC at

21   26:8-17.] The claim must be dismissed because Section 37 of the Lanham Act requires the

22   existence of a registered trademark and no such registration exists here.

23   The Lanham Act, 15 U.S.C. 1051, *et seq.*, provides for cancellation of a federal

24   trademark registration by petition to the United States Patent & Trademark Office ("USPTO").

25   *See* 15 U.S.C. § 1064. It also gives courts the power to order the cancellation of a registered

26   trademark. *See* <u>id.</u> § 1119. The Lanham Act defines a "registered mark" as a "mark registered in

27   the United States Patent and Trademark Office." <u>Id.</u> § 1127. By its plain language, the Lanham

28   Act does not grant the federal courts the power to cancel trademark applications because

1  applications are simply *not* "registered marks," and do not become "registered marks" until after

2  the numerous requirements of the trademark application process are met. *See, e.g.,* id. §§ 1051-

3  52 (application for registration), 1062-63 (publication and opposition), 1057 (certificate of

4  registration). Here, Blue's trademark application in question is not a registered trademark but

5  rather a *pending trademark application*. Woffinden does not dispute this fact and correctly refers

6  to it throughout her Answer as an "application." [Answer to FAC at 3:5-9; 23:13-14; 24:1-3, 16-

7  21; 26:4-5, 8-17; 28:10-11.] Nowhere in the third counterclaim does Woffinden allege a

8  registered mark for this Court to cancel.

9  Furthermore, Woffinden cannot pre-empt the USPTO ruling on Blue's application by

10 asserting a cancellation proceeding at this time in this Court or in any federal court. Universal

11 Tube & Rollform Equip. Corp. v. YouTube, Inc., et al., 504 F. Supp. 2d 260, 266 (N.D. Oh.

12 2007) ("[C]ourts have rejected similar arguments about the power to preempt the PTO by

13 canceling applications"); Whitney Information Network, Inc. v. Gagnon, 353 F. Supp. 2d 1208

14 (M.D. Fla. 2005) (15 U.S.C. § 1119 only allows a court to cancel a registered trademark, a mere

15 application is insufficient.); GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F. Supp. 2d 234,

16 241 (S.D. N.Y. 2000) ("[B]y its terms, [15 U.S.C. § 1119] contemplates an action involving a

17 registered trademark.").[18]  Accordingly, in light of the Lanham Act's express provisions, and the

18 supporting authorities of several district courts, Woffinden's third counterclaim is not legally

19 cognizable and must be dismissed. Leave to amend should likewise not be granted because no

20 such registration exists upon which such a counter claim can be stated.

21 / / /

22 / / /

23 ────────────────

[18] By asking the Court to act before the trademark application in question has matured to
24 registration Woffinden's third counterclaim also raises the issue of "ripeness." "The basic
   rationale of the ripeness doctrine 'is to prevent the courts, through avoidance of premature
25 adjudication, from entangling themselves in abstract disagreements over administrative policies,
   and also to protect the agencies from judicial interference until an administrative decision has
   been formalized and its effects felt in a concrete way by the challenging parties.'" Pac. Gas &
26 Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200-201 (U.S.
   1983) (quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 148-149 (1967)). With her third
27 counterclaim, Woffinden violates this principle by asking the Court to rule on an administrative
   proceeding (e.g., the prosecution of a federal trademark application within the USPTO) before
28 that decision (e.g., whether to allow registration of the mark) has been formalized by that Office.
   This third counterclaim must also fail, because the issue is not ripe for adjudication.

2.    The Fourth Counterclaim Fails Because Woffinden Does Not Allege Critical Elements Of An Unfair Competition Claim.

Though no statutory or common law cause of action is recited in her claim, Woffinden presumably relies upon Lanham Act § 43(a), 15 U.S.C. § 1125(a), when she seeks redress for "Counterclaim Defendant's Use Of Counterclaim Plaintiff's Trademark." [Answer to FAC at 26:18-19.] Section 43(a) provides a federal cause of action for infringing an "unregistered" mark. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). To state a claim under 15 U.S.C. § 1125(a), where (as here) functionality is not an issue, Woffinden must allege (i) that her use of the "stage name Violet Blue" is a protectable unregistered trademark (e.g., that it is distinctive); and (ii) that Ms. Blue's use of Counterclaim Plaintiff's unregistered "mark" (her stage name) is likely to cause confusion regarding the source of the goods and/or services associated with that unregistered "mark." Kendall-Jackson Winery v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998) (elements of a claim under 15 U.S.C. §1125 are, "(1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion."). *See also* McCarthy on Trademarks and Unfair Competition §§ 27:14, 27:18 (4th ed. Supp. 2006) ("McCarthy").

Woffinden's purported fourth counterclaim for infringement must be dismissed for two simple reasons. First, the two-sentence counterclaim fails to allege that her "stage name" is a protectable trademark or that Woffinden has been damaged. [Answer to FAC at 26:20-25.][19] Second, and more critical here, Woffinden does not allege the cornerstone element of a suit for trademark infringement: "likelihood of confusion." Kendall-Jackson, 150 F.3d at 1047; McCarthy, §§27:14, 27:18. Indeed, Woffinden expressly and repeatedly asserts the *opposite* in paragraphs that are expressly "incorporate[d] by reference" to her counterclaim. [Answer to FAC at 26:20-21 ("Counterclaim Plaintiff alleges, re-alleges and incorporates by reference each and ever allegation set forth above."); 17:6-7 (denying any confusion between Blue and the Woffindens); 18:11-13 (denying confusion between Blue and Woffinden); 23:23-25 (alleging that the "parties have co-existed with their respective uses of the name "Violet Blue" for many years

---

[19] While the claim does refer to "Counterclaim Plaintiff's stage name and trademark" [Answer to FAC at 26:23-24] it does not allege any of the requirements of having a protectable trademark, e.g., continues and exclusive use, when such use allegedly began. The claim also fails to specifically allege any damages.

1    without confusion."] For these reasons, the fourth counterclaim must fail as a matter of law.

2    Further, because no amount of amendment to her pleading could change the fact that she denies

3    confusion, leave to amend should be denied. <u>Lopez</u>, 203 F.3d at 1130.

4                               **IV.   CONCLUSION.**

5           For the reasons stated above, this Court should dismiss the third, fourth and fifth

6    counterclaims and further grant Plaintiff's special motion to strike the fifth counterclaim as a

7    SLAPP and award Plaintiff Blue's attorneys fees and costs.

8           Dated:  February 25, 2008

                                                    VOGELE & ASSOCIATES
9

10

11                                          By:_____/S/_____
                                                    Colette Vogele
12                                          Attorneys for Plaintiff VIOLET BLUE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28