Robert S. Apgood
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117
Telephone  206-624-2379
Facsimile:  206-784-6305
rob@carpelaw.com

John Jeffrey Carter
329 Flume Street
Chico, CA 95927-3606
Telephone:  530-342-9196
Facsimile:  530-342-6195

Attorneys for Defendant Ada Mae Woffinden *nee* Johnson

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| VIOLET BLUE, an individual,<br><br>        Plaintiff/Counter-Defendant,<br><br>vs.<br><br>ADA MAE JOHNSON, et al.,<br><br>        Defendant/Counter-Plaintiff. | **Case No.:  C 07-5370 SI**<br><br>**DEFENDANT WOFFINDEN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE FIFTH COUNTERCLAIM AND MOTION TO DISMISS THIRD AND FOURTH COUNTERCLAIMS**<br><br>Hon. Susan Illston<br>Courtroom 10, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>**Hearing Date:  April 04, 2008**<br>**Hearing Time:  9:00 AM** |

## I.   INTRODUCTION

Plaintiff/Counter-Defendant, Violet Blue ("Plaintiff"), has moved this Honorable Court to strike Defendant/Counter-Plaintiff Ada Mae Woffinden *nee* Johnson's ("Defendant") Fifth Counterclaim for Defamation by claiming that it is strategic lawsuit against public participation (SLAPP) subject to a special motion to strike pursuant to Cal. Code. Civ. P. § 425.16. *See Plaintiff Violet Blue's Notice of Motion and Motion Strike Fifth Counterclaim and Dismiss Third and Fourth Counterclaims* (Court Dkt.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S                                    Case No.:  C 07-5370 SI
MOTIONS TO STRIKE AND DISMISS - 1

No. 42) ("Plaintiff's Motion"). Additionally, Plaintiff has moved this Honorable Court to dismiss, on the basis of Fed. R. Civ. Pro. 12(b)(6), Defendant's Third Counterclaim for cancellation of Plaintiff's VIOLET BLUE mark and Defendant's Fourth Counterclaim seeking injunctive relief for Plaintiff's infringement of Defendant's mark. *Id*. For the reasons that follow, this Honorable Court must deny all three of Plaintiff's motions.

## II.  FACTS AND PROCEDURAL HISTORY

For the sake of brevity, the Defendant will not restate her entire position regarding the Plaintiff's statement of facts, except to state that the Defendant disagrees and disputes Plaintiff's version of the facts as discussed in the Plaintiff's Motion. The Defendant will therefore only discuss or dispute those facts that are relevant to Defendant's response to Plaintiff's Motion.

The Plaintiff filed suit against the Defendant on October 22, 2007 alleging trademark infringement and dilution in violation of 15 U.S.C. § 1125, along with allegations of misappropriation of name and likeness in violation of Cal. Civ. Code §3344 and unfair competition. *See Complaint* (Court Dkt. No. 1) ("Complaint"). On November 13, 2007, Defendant filed her *pro se* answer to Plaintiff's Complaint under threat of default. *See Defendant's Answer to Complaint* (Court Dkt. No. 6)("First Answer"). Plaintiff filed an Amended Complaint on February 4, 2008 naming additional defendants, but maintaining the same causes of action alleged against Defendant as were alleged in the Complaint. *See Amended Complaint* (Court Dkt. No. 28)("Amended Complaint"). Defendant filed her answer to the Amended Complaint that same day. *See Defendant's Answer to Amended Complaint* (Court Dkt. No. 29)("Second Answer"). With the benefit of representation by counsel that Defendant was able to obtain, Defendant was able to understand the legal import of many terms of art and legal terminology that she, as a non-attorney, was not able to decipher on her own, and thus modified much of her First Answer and alleged five counterclaims against Plaintiff.[1]

---

[1] Plaintiff's discussion of the differences between the First Answer and the Second Answer is of no moment. Pleadings filed by *pro se* litigants are liberally construed, and are held to less stringent standards than are applied to pleadings prepared by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Any differences between the First Answer and the Second Answer can easily be explained by Defendant's lack of knowledge with respect to both the law and the claims leveled against her. Moreover, "[i]t is hornbook law that an amended pleading supersedes the

1    The Fifth Counterclaim alleged by Defendant is a claim for defamation under Washington law.
2 On October 27, 2006, nearly *one year prior* to Plaintiff's initiation of the instant suit, Plaintiff posted on
3 her Internet Web site derogatory, vulgar, and patently false statements concerning the Defendant's
4 character. *See Declaration of Collette Vogele in Support of Plaintiff's Motion* (Court Dkt. No.
5 43)("Vogele Decl."), Exh. F (Entry from Plaintiff's Web site discussing Defendant). While Defendant
6 has made the specific averment that Plaintiff referred to Defendant in Plaintiff's online statements that
7 the Defendant is a "twat," Defendant's specific averment was that "[Plaintiff] has made numerous
8 postings on the Internet regarding [Defendant] and has, at times, slandered and libeled [Defendant] in
9 such a manner on [Plaintiff's] Web site that [Defendant] cannot respond in a meaningful manner."
10 *Second Answer*, ¶17, 27:4-8. In addition to referring to the Defendant as a "twat," Plaintiff also makes
11 insinuations concerning Plaintiff's views on politics and world events. *Vogele Decl.*, Exh F; *see also*
12 Plaintiff's Motion, 16:n.15. Additionally, Plaintiff repeatedly refers to Defendant as "fake" and as an
13 "imposter" with respect to Defendant's use of Defendant's stage name "Violet Blue." *Vogele Decl.*, Exh
14 F. As demonstrated by Plaintiff's own evidence, Defendant has been using the stage name Violet Blue
15 since at least as early as the year 2000. *Id.* at Exh. O. These statements and insinuations made by
16 Plaintiff were and are designed to falsely imply that the Defendant somehow nefariously usurped the
17 Plaintiff's name and punctuates this assertion by demeaning and ridiculing the Defendant to demonstrate
18 that the Defendant's assertion is true.

19    Additionally, since the Plaintiff filed her Second Answer, Defendant has *again* posted on her
20 Web site slanderous and libelous statements about the Defendant. In a post dated February 28, 2007,
21 Plaintiff made the following statement on her Web site: "this woman has used and abused your name
22 and cost you time, money, blood, sweat, and tears. You never should have had to suffer this indignity."
23 (Like her recent pregnant gangbang porn a friend just told me about found on a clip site, for example…
24 Ugh.)." *Declaration of Robert S. Apgood In Support Of Defendant Woffinden's Response In Opposition*
25 *To Plaintiff's Motion To Strike Fifth Counterclaim And Motion To Dismiss Third And Fourth*

26 ───────────────────────────────────

27 original, the latter being treated thereafter as non-existent." *Bullen v. De Bretteville*, 239 F.2d 824, 833
28 (9th Cir. 1956). As such, by amending her Complaint, Defendant effectively rendered the First Answer moot, and necessarily required the Second Answer.

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S     Case No.:  C 07-5370 SI
MOTIONS TO STRIKE AND DISMISS - 3

*Counterclaims* ("Apgood Decl."), Exh. A, p.2. This statement was made in connection with Plaintiff's discussion of an interview Plaintiff gave on the Web based telecast "Internet Superstar" during which there was a discussion of Defendant's use of her stage name Violet Blue. *See Id.* at Exh. A, p.2. Defendant has never performed in any form of "pregnant gangbang porn," and Plaintiff's statement on her Web site that Defendant has done so is totally false.

On March 2, 2007, Plaintiff filed an application with the United States Patent and Trademark Office for the Word Mark VIOLET BLUE in International Classes 9 and 41. *Apgood Decl.*, Exh. B. Plaintiff's application was given the serial number 77121570 and published for opposition December 18, 2007. *Id*. On March 4, 2008, the United States Patent and Trademark Office granted Plaintiff's application and assigned the mark the registration number 3391010. *Id.* at Exh. B.

### III.    RESPONSE IN OPPOSITION

**A.    PLAINTIFF'S SPECIAL MOTION TO STRIKE MUST BE DENIED BECAUSE THE STATEMENTS FORMING THE BASIS OF DEFENDANT'S FIFTH COUNTERCLAIM DID NOT CONCERN A MATTER OF PUBLIC INTEREST AND THERE IS A PROBABILITY OF DEFENDANT PREVAILING ON HER CLAIM.**

The Anti-Strategic Lawsuits Against Public Participation statute (Anti-SLAPP Statute) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. P. § 425.16. "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes.... any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest. Cal. Code Civ. P. § 425.16(e)(3). Courts considering a motion to strike pursuant to the Anti-SLAPP Statute must engage in a two-part inquiry. *McSi, Inc. v. Woods*, 290 F. Supp. 2d 1030, 1032 (N.D. Cal. 2003). The first inquiry is whether Plaintiff Blue has made an initial prima facie showing that Defendant Woffinden's counterclaim "arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* at 1033, *citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). If the court determines that Plaintiff Blue has made

this initial showing, the burden shifts to Defendant Woffinden to demonstrate a probability of prevailing on the challenged claims. *Id*. The second inquiry made by the court is whether Defendant Woffinden has established such a probability. *Id*. If the court determines that Defendant Woffinden has established that there is a probability that she will prevail on the claim, the motion to strike must be denied. *Id*.

### 1. Plaintiff has failed to establish that Defendant's counterclaim arises from an act in furtherance of Plaintiff's right of petition or free speech because Plaintiff's speech was not made in connection with an issue of public interest or public significance.

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Du Charme v. International Brotherhood of Electrical Workers*, 110 Cal. App. 4th 107, 115 (Cal. Ct. App. 2003). However, to satisfy this definition "in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." *Id*. at 119.

In *Du Charme*, the plaintiff contended that the defendant, a local union, had made a defamatory Internet posting stating that the reason for plaintiff's termination as assistant business manager for defendant was because of plaintiff's financial mismanagement. *Id*. at 111. In response, the defendant filed a special motion to strike plaintiff's defamation claim as a SLAPP because, according to defendant, the defendant's Internet posting "constitute[d] a statement made in a public forum in connection with an issue of public interest," to wit, a labor dispute concerning the defendant local union. *Id.* at 114. In that case, however, the court found that while defendant's Internet posting was presumably of interest to the limited membership of the local union, it was unconnected to any discussion, debate or controversy because plaintiff had already been terminated, and the propriety of that termination was no longer at issue. *Id.* at 118. The members of the local union were not being urged to take any position on the matter, and in fact no action on their part was called for or contemplated. *Id*. The court therefore held that "[to] grant protection to mere informational statements, in this context, would in no way further the

[Anti-SLAPP Statute's] purpose of encouraging participation in matters of public significance." *Id.* Because the allegedly defamatory statement in that case was not made in the context of an ongoing controversy, dispute or discussion, and interest in any dispute was limited to the members of the union, the court denied the defendant's special motion to strike the defamation claim under the Anti-SLAPP Statute. *Id.* at 119.

In this case, while the Internet is admittedly a public forum, the defamatory statements made by the Plaintiff were not made in connection with any "public dispute" between concerning Plaintiff and Defendant's respective uses of the name "Violet Blue" that was of interest to "the public at large." Simply stated, the Plaintiff's Internet posting that is the subject of Defendant's defamation claim was made *one year prior* to Plaintiff's initiation of the instant lawsuit. *Compare Vogele Decl.*, Exh. F (Defendant's Internet posting of October 27, 2007), *with Complaint* (filed October 22, 2007). Moreover, while the Plaintiff has submitted that "numerous articles"[2] have been written about the "public dispute" between Plaintiff and Defendant, and has submitted nine articles in support of that contention, a careful reading of Plaintiff's own description of these articles demonstrates that at least five of these articles specifically discuss the *lawsuit* filed by Plaintiff against Defendant. *See, e.g., Vogele Decl.*, Exh. N (article titled "*Legal Battle Ensues* Between the Two Violet Blues: The Writer *Sues* the Porn Star) (emphasis added), Exh. O (article titled Analysis: *Violet Blue Vs. Violet Blue*") (emphasis added), Exh. P (article titled "Writer Violet Blue *Sues* Porn Star Violet Blue") (emphasis added), Exh. Q (article titled "Sex Writer Violet Blue *Sues* Porn Star Violet Blue Over Name – Updated") (emphasis added), Exh. S (article titled "Violet Blue *Sues* Violet Blue") (emphasis added), and Exh. U (article entitled "Will the Real Violet Blue Please Stand Up: Writer-Blogger *Sues* Porn Star Over Name) (emphasis added).

The other four articles cited by Plaintiff in support of her claim of the existence of a "public dispute" do not disclose by their titles that the instant lawsuit is the topic, but are all dated *after* the

---

[2] While Plaintiff has classified each of these exhibits as "articles," many appear to be Web log ("Blog") posts that do not seem to fit the typical mainstream press definition of the word "article" that the use of that phrase implies. *See, e.g., Vogele Decl.*, Exh. R (referred to by Plaintiff as "Gizmondo tech blog entry"). Defendant merely utilizes Plaintiff's term "articles" for the sake of continuity.

instant suit was filed. *See, e.g., Vogele Decl.*, Exh. R (Internet posting dated February 28, 2008), Exh. T (Article dated October 25, 2007 discussing instant lawsuit), and Exh. V (article dated November 3, 2007). The Plaintiff also cites as support the Revision History logs for the Wikipedia entries of both Plaintiff and Defendant. Again, however, the vast majority of the revision history for Plaintiff's Wikipedia article occurs *after* the instant suit was filed. In fact, *two of the three pages* of that Revision History demonstrate that the revisions were made October 25, 2007 or later. *See Vogele Decl.*, Exh. W-1, pp. 1-2. Nearly *half* of the revisions listed on the third page of the Revision History occurred October 25, 2007. *See Id.* at Exh. W-1, p.3. *All* of the revisions listed on all three pages were made August 20, 2007 or later. *See Id.*, Exh. W-1. With respect to the Revision History of Defendant's Wikipedia page, all revisions listed in the history provided by Plaintiff occurred on December 11, 2007 or later. *See Id.*, Exh. W-2.

Furthermore, the Plaintiff's Internet post at issue here does not *itself* disclose that any "dispute" or "issue of public significance" existed on October 27, 2006 concerning Plaintiff and Defendant's use of the name "Violet Blue." *See Vogele Decl.*, Exh. F. Before launching into her defamatory discussion of the Defendant, Plaintiff merely states that she was contacted by approximately five individuals concerning Defendant's use of Defendant's stage name "Violet Blue." *See Id.*, Exh. F. Nowhere is there any further mention of any interest about Plaintiff and Defendant both using the name "Violet Blue." Therefore, even assuming that there existed an issue of public interest concerning a dispute between on October 27, 2006, Plaintiff's evidence of an issue of public interest could only be capable of demonstrating that the issue is not of interest to the public at large, but rather to a very limited portion of the public, to wit, Plaintiff's acquaintances and possibly readers of her Internet postings.

In *Du Charme*, the court found that the local union there was a limited, but definable, portion of the public – the members of the local union. The *Du Charme* court reached its conclusion by analogy to situations in other cases where the activity subject to complaint was connected to an issue of interest to only a limited by definable portion of the public, a narrow segment of society consisting of members of a private group or organization – such as a 3,000 member homeowners association and a 10,000-member union local. *Id.*, *citing Macias v. Hartwell*, 55 Cal. App. 4th 669 (Cal. App. 1997) *and Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (Cal. App. 2000). Plaintiff has proffered no

1  evidence that even 3,000 people would have been interested in Plaintiff and Defendant's respective use of the name "Violet Blue" on October 27, 2006.  However, assuming *arguendo* that such a large, definable portion of the public existed, whatever constitutionally protected activity Plaintiff's defamatory Internet posting represents must, therefore, at a minimum, have occurred in "the context of an *ongoing* controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." *Du Charme*, 110 Cal. App. 4th at 119 (emphasis added).  As discussed above, Plaintiff has not, and indeed cannot, demonstrate that any ongoing controversy, dispute or discussion concerning a matter of public significance existed when her defamatory statements were made on October 26, 2006.  Instead, the Plaintiff's statements were made *almost one year prior* to the alleged catalytic event for the "public interest" that Plaintiff claims exists now – the filing of the instant lawsuit on October 22, 2007 – that Plaintiff cites in support of this matter being "of public significance".

While there may be an issue of "public significance" now, which Defendant neither admits or denies, *no issue of issue of public significance existed when Plaintiff made her defamatory Internet post*, and Plaintiff has cited *no* evidence whatsoever of any issue of public significance there may have been on October 27, 2006.  In actuality, the Plaintiff seeks shelter for her defamatory statements *via* retroactive application of whatever issue of public significance there may be *now* to the facts that existed when the defamatory comments were made.  However, what may be now is not what was then, and Plaintiff has provided nothing more than purported evidence of public interest in the current lawsuit to demonstrate that a public interest existed in the past.  Plaintiff's evidence is insufficient to show that her written statements or writings were in connection with an issue of public significance, and therefore cannot show that any "ongoing controversy, dispute or discussion" *could* have existed with respect to such an issue.  The Plaintiff is therefore unable to establish a prima facie showing of the applicability of the Anti-SLAPP Statute.  *See Du Charme*, 110 Cal. App. 4th at 118-19.

*Seelig*, the principal case cited by Plaintiff in support of her determination that her defamatory comments were made in connection with an issue of public significance is inapposite.  *See Seelig v. Infinity Bradcasting Corp.*, 97 Cal. App. 4th 798 (Cal. App. 2002).  In *Seelig*, the court held that defendant radio commentators' statements concerning the plaintiff were made in connection with a

topic, person or entity of *widespread* public interest. *Id.* at 807-808. The plaintiff there was a contestant on the television program *Who Wants to Marry a Multimillionaire*, a television program that "generated considerable debate within the media on what its advent signified about the condition of American society." *Id.* at 807. Specifically, one of the media's concerns "focused on the sort of person willing to meet and marry a complete stranger on national television in exchange for the notoriety and financial rewards associated with the Show and the presumed millionaire lifestyle to be furnished by the groom." *Id.* at 807-808. The topic of defendants' radio program was specifically addressed to this concern. *Id.* The court therefore held that, as a contestant on such a television program, the "plaintiff voluntarily subjected herself to inevitable scrutiny and potential ridicule by the public and the media." *Id.* at 808.

A plain reading of the court's decision in *Seelig* shows that it did not turn on that plaintiff's voluntary participation alone, but rather on the plaintiff's voluntary participation *in a television show that was of widespread public significance*. While Defendant may have, for the sake of argument, "repeatedly inserted herself in the same public forum of the internet [*sic*]" as suggested by the Plaintiff, the "Internet" is not the purported issue of public significance here. Rather, the issue of public concern described by Plaintiff is Plaintiff and Defendant's respective use of the name "Violet Blue." But what Plaintiff has failed to divulge, as discussed *supra*, is precisely *how* that purported issue is in any way comparable to issues concerning a television program of *widespread public significance*. The Plaintiff has only provided purported evidence of "public interest" concerning *this lawsuit* which has been generated *subsequent* to its filing. Again, the Plaintiff has provided no evidence that any issue of public interest existed on October 27, 2006, let alone an issue of *widespread* public interest such as that generated by *Who Wants to Marry a Multimillionaire*. The case here is therefore wholly distinguishable from the case considered by the court in *Seelig*. As such, this case is at best, analogous to the case in *Du Charme* in terms of any level of "public interest" that may have existed when Plaintiff's defamatory comments were posted to the Internet.[3]

Courts have stated that "judges and attorneys will, or should, know a public concern when they

---

[3] Quare *how* Plaintiff's posting that Defendant engaged in "pregnant gangbang porn" has any significance, whatsoever, to any of Plaintiff's claims.

see it." *Du Charme*, 110 Cal. App. 4th at 117. Such a public concern is not evident here. Because the Plaintiff has wholly failed to demonstrate that any ongoing controversy, dispute or discussion of public significance was occurring with respect to Plaintiff and Defendant's respective uses of the name "Violet Blue" when Plaintiff's defamatory comments were made, the Plaintiff has failed to demonstrate that these defamatory comments were made in connection with an issue of public interest. Plaintiff has thus failed to demonstrate that her October 27, 2006 remarks fall within the ambit of the Anti-SLAPP Statute. This Honorable Court must therefore deny Plaintiff's Motion to Strike Defendant's defamation counterclaim.

**2. Even assuming, *arguendo*, that Plaintiff's defamatory remarks were made in connection with an issue of public interest, Defendant's can establish a probability of prevailing on her Counterclaim because her defamation claim was properly pled under Washington law and can be substantiated by the evidence.**

To meet the burden of establishing a probability that a claim will succeed on the merits, a plaintiff must "demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Even assuming that the Plaintiff's has somehow established a prima facie showing that her statements on the Internet were made in connection with an issue of public interest, Defendant's counterclaims easily meet this standard.

(a) Defendant's Counterclaim is properly made under Washington law.

It is well-settled law that the brunt of harm suffered as the result of a tort are felt by the victim in the state where the victim resides. *Northwest Healthcare Alliance, Inc. v. Healthgrades.com, Inc.*, 50 Fed. Appx. 339, 340 (9th Cir. 2002), *citing Calder v. Jones*, 465 U.S. 783, 788, 79 L.E. 2d 804, 104 S. Ct. 1482 (1984); *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 ("for the purpose of personal jurisdiction in tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state"). The Defendant is a resident of Washington State. *Amended Complaint*, ¶2, 8:10; *Second Answer*, ¶2, 5:5-7. Thus, the Defendant is entitled to assert as a counterclaim causes of action sounding in tort under Washington law. Moreover, the Plaintiff's remarks with respect to Defendant being "fake" and an "imposter" will necessarily turn on the outcome of the Plaintiff's lawsuit, to wit, whether Defendant has usurped Plaintiff's name and infringed Defendant's trademark, the falsity

of Plaintiff's statements as averred by the Defendant in her Fifth Counterclaim will also be decided by the facts of this lawsuit. As such, Defendant's Fifth Counterclaim for defamation is compulsory under Fed. R. Civ. P. 13(a)(1) because it arises out of the same transaction or occurrence that is the subject matter of the Plaintiff's claims.[4] Fed. R. Civ. P. 13. As such, Defendant's Fifth Counterclaim is properly based upon Washington Law.

      (b)      The Defendant's Fifth Counterclaim for Defamation is properly pled under Washington law and Fed. R. Civ. P. 8(a).

Under Washington state law, a claim of defamation requires pleading four elements: (1) falsity, (2) an unprivileged communication, (3) fault and (4) damage. *Herron v. King Broad. Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989). Under Fed. R. Civ. P. 8, a statement of claim need only give a defendant fair notice of what plaintiff's claim is and grounds upon which it rests. *Conley* v. *Gibson,* 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). This liberal and simplified "notice pleading" standard – which was adopted to focus litigation on merits of claim and which applies to all civil actions, with limited exceptions – relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. *Id.* at 47-48. In addition, if pleading fails to specify allegations in manner that provides sufficient notice, then defendant can move for more definite statement, under Fed. R. Civ. P. 12(e) before responding. *See* Fed. R. Civ. P. 12(e). The Federal Rules of Civil Procedure have dispensed with the requirement of technical forms of pleading. *See* Fed. R. Civ. P. 8(d)(1). Moreover, Defendant/Counterclaimant put Plaintiff on notice that jurisdiction and venue are also proper in the Western District of Washington. *Second Answer* at ¶ 7, p. 25:4-12.

While the Defendant's Fifth Counterclaim contains within its title the word "outrage," the allegations of the claim clearly state a claim for defamation sufficient to notify Plaintiff of the claim

---

[4] Defendant notes also that Defendant could have properly brought the Fifth Counterclaim against the Plaintiff in the State Courts of Washington. *See Calder*, 465 U.S. 783, 788. Washington's long arm statute provides that "[a]ny person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:....(b) The commission of a tortious act within this state." RCW 4.28.185(1)(b). Washington's long-arm jurisdiction is intended to operate to the full extent permitted by due process. *Werner v. Werner*, 84 Wn.2d 360, 526 P.2d 370 (1974).

against her. In her Fifth Counterclaim, Defendant has averred "Counterclaim Defendant's allegations were and are false," *Second Answer*, ¶18:9. This averment is sufficient to plead falsity. The Defendant alleged that Plaintiffs statements "slandered and libeled" Counterclaim Plaintiff. *Id.* at ¶17, 27:4-8. This allegation is sufficient to plead that Plaintiff's statements were not privileged.[5] The Defendant's Fifth Counterclaim avers also that Plaintiff "intended for other persons to believe her allegations to be true." *Id.* at ¶21, 27:17-18. This is sufficient to plead fault on the part of the Plaintiff in making her statements.[6] Finally, Defendant has averred that she has suffered damage as the result of Plaintiff's false statements. *Id.* at ¶¶23-24, 27:21-23. Because the Defendant has effectively averred each and every element necessary to properly plead a claim of defamation under Washington state law, Defendant's Fifth Counterclaim meets the liberal standard of notice pleading under Fed. R. Civ. P. 8(a).

(c)    The Defendant's Fifth Counterclaim is sustainable by the evidence.

The Plaintiff has made two basic claims in Plaintiff's Motion. The first claim is that the Plaintiff's statements on the Internet are protected by the First Amendment as "pure opinion." *Plaintiff's Motion*, 14:25-15:2. The second claim is that Plaintiff's statements do not imply an assertion of objective fact. *Id.* at 15:3 – 17:20. The Plaintiff, however, operates from the assumption that Plaintiff's statement that Defendant is a "twat" is the gravamen of Defendant's Fifth Counterclaim. It is not. In fact, the specific allegation that Plaintiff referred to the Defendant as a "twat" was specifically included to elucidate the venom with which Plaintiff's statements were made. Whether Plaintiff was referring to Plaintiff as a "twat" or was referring to Plaintiff's "tools" as including a "twat," the very inclusion of the word "twat," which Plaintiff has so eloquently defined as a slang term in reference to female genitalia, is indicative of the deprecating and derogatory character of the statements made by Plaintiff when considered as a whole.

The statement made by the Plaintiff's Internet post of which Defendant complains is the fact that

---

[5] The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-246, 122 S.Ct. 1389, 152 L. Ed. 2d 403 (2002).

[6] Under Washington law, fault amounts to at least negligence on the part of the publisher. *Sims v. Kiro, Inc.*, 20 Wn. App. 229, 233, 580 P.2d 642 (1978), *citing* Restatement 2d of Torts, § 558. Pleading intentional falsity easily meets this standard.

1  Plaintiff's entire statement implies that the Defendant's legitimate use of her stage name "Violet Blue"
2  for at least the past eight years makes the Defendant a "thief," "imposter," or somehow "fake" because
3  Defendant's use of her stage name is illegitimate. *See Vogele Decl.*, Exh. F. To hammer the point
4  home, the Plaintiff not only refers to Defendant specifically as "The fake Violet Blue," and as and
5  "Imposter," she subjects Defendant to ridicule by referring to Defendant in a derogatory fashion.
6  Plaintiff herself has provided an excellent example of this scorn by reprinting the very passage where the
7  word "twat" arose in Plaintiff's statement. *See Plaintiff's Motion*, 16:7-17. Hence, contrary to the
8  Plaintiff's assertion, the threshold matter for this Honorable Court to decide is not whether a reasonable
9  finder of fact could conclude that the statement that Defendant is a "twat" implies an assertion of
10 objective fact. Rather, this Honorable Court should determine whether the statement, which is
11 embodied by the Plaintiff's writing taken *as a whole*, implies an assertion of objective fact that the
12 Defendant's legitimate use of her stage name for the past *eight years* is somehow illegitimate.

13 In order to determine whether Plaintiff's statement that Defendant has nefariously usurped or
14 "stolen" Plaintiff's name, this Court must determine (1) whether Plaintiff used figurative or hyperbolic
15 language that would negate the impression that she was seriously maintaining that the Defendant had
16 "stolen" Plaintiff's name; (2) whether the general tenor of Plaintiff's Internet statement negated this
17 impression, and (3) whether Plaintiff's statement is susceptible of being proved true or false. *Unelko*
18 *Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990).

19 With respect to the Plaintiff's use of hyperbolic or figurative language in her Internet post, no
20 such language exists to negate the impression created by Plaintiff's statement that the Defendant is an
21 "imposter" or "fake," and is somehow usurping Plaintiff's name. As Plaintiff has so aptly stated,
22 "hyperbole" refers to "extravagant exaggeration." Plaintiff has used no such language to dispel the
23 impression her statements leave on the reader that the Defendant has "stolen" Plaintiff's name. An
24 example of what may be considered "figurative" or "hyperbolic" language in the Plaintiff's statement is
25 the following:

> I guess it's really easy to accidentally end up with someone else's name when you are a porn performer. Names are hard, and once you get one, you can't change it to make a name for yourself as an Individual. (The porn performer using my name has used "Ada Mae" when burlesque dancing, and it is her name on Tribe.net.) I mean, look at the

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S                    Case No.: C 07-5370 SI
MOTIONS TO STRIKE AND DISMISS - 13

> trouble and confusion poor Tyra BanXXX goes through, having her name diluted by some model with a TV show. And Marey Carey – she's just trying to run for governor and get some new teeth and better tits, and some singer has to come along and ring her coattails to fame. To be a successful porn star, you have to choose the right name carefully, so you don't end up like Jenna Jameson. A good porn name is right up there with voice lessons for caterwauling on cue, and having a perfectly immobile pair of waxen breasts mounted on your chest. And as everyone knows, doing porn will make you famous."

*Vogele Decl.*, Exh. F. While this statement may be considered sarcastic, or possibly a "figurative" discussion of how adult entertainment performers choose their names, it does nothing to negate the impression that the entire work creates – that Defendant Violet Blue has stolen or is misusing Plaintiff Violet Blue's name. Rather, it is precisely the sarcastic nature of this statement and its "figurative" language that reinforces Plaintiff's overall statement. By suggesting sarcastically that other adult entertainment performers utilize names similar to those of more well-known personas such as Mariah Carey and Tyra Banks because "names are hard," the Plaintiff reinforces the impression that the Defendant "stole" Plaintiff's name because these others have evidently done so. There is no hyperbolic, figurative or any other type of language in the Plaintiff's Internet post that suggests that the Plaintiff is trying to do anything other than establish that the Defendant is a thief.

Moreover, the general tenor of the Plaintiff's statements does nothing to dispel the impression that her statements leave concerning the Defendant. Instead, the general tone of the Plaintiff's statements is that *she* is "The Real Violet Blue" and that the Defendant is "the fake Violet Blue." The Internet post itself is titled, in part, "I am teh [*sic*] real VB." Moreover, the entire Internet posting is vindictive and venomous in nature. As mentioned already, the Plaintiff refers to the Defendant as both "the fake Violet Blue" and as an "imposter." Moreover, the Plaintiff has interjected what she asserts to be the Defendant's political opinions concerning topics such as the war in Iraq and immigration, which opinions "are absolutely offensive and repugnant to [Plaintiff] and which [Plaintiff] would never herself assert." *Plaintiff's Motion*, 15:20 – 16:1; p.16, n.15 (reproducing statements purportedly made by Defendant). The only possible reason that the Plaintiff would have placed such statements by the Defendant – statements that the Plaintiff herself finds offensive and repugnant – would be to ridicule and demean the Defendant in effort to make Plaintiff's own claims appear more likely. The tenor of the

Plaintiff's Internet post was not conciliatory, nor was it simply discussing the Plaintiff's personal experiences. The tenor of the Plaintiff's Internet statement, read in its entirety, is designed to not only substantiate her claim that the Defendant has usurped or otherwise misappropriated the name "Violet Blue," but is also designed to do so by portraying the Defendant as some form of miscreant or disgusting human being that would steal Plaintiff's name. The Plaintiff's Internet statements are, in a word, vile.

As if the tenor of this statement alone were not enough, the Plaintiff has more recently posted that the Plaintiff has engaged in "pregnant gangbang porn." *Apgood Decl.*, Exh. A. This statement is absolutely false, and was obviously made by the Plaintiff to further subject the Defendant to additional ridicule and scorn. This more recent statement shows that the Plaintiff engages in a pattern and practice of such behavior toward the Defendant, and further demonstrates that the Plaintiff is not above stooping to such depths to make her statements of fact seem more believable.

Regarding the provability of Plaintiff's statements as truth or falsehood, this very proceeding is capable of proving whether the Defendant's use of the name "Violet Blue" is legitimate. Presumably Plaintiff would not have filed this action if her claims were not provable as true or false. Moreover, Plaintiff herself has provided the best evidence of this. As can be seen in Exhibits O and Q to the Vogele Decl., there is considerable room for debate concerning the veracity of not only this lawsuit filed by the Plaintiff, but also Plaintiff's statements made on the Internet. *See Vogele Decl.*, Exh. O, p.1 ("Author Blue provides no proof in her lawsuit as to even the approximate date that she claims she became widely known as 'Violet Blue,' and the earliest date of publication listed in her Wikipedia entry is 2001, when she edited 'Sweet Life: Erotic Fantasies for Couples' for Cleis Press."); Exh. Q, p.1. Whether the Defendant usurped, misappropriated, or otherwise absconded with the Plaintiff's name is therefore obviously an objectively verifiable fact.

The evidence in this case demonstrates that the Plaintiff's statements made on the Internet concerning the Defendant's use of the name "Violet Blue" are not merely the Plaintiff's opinion. The Plaintiff not only did nothing within the context of her Internet post to dispel the image she paints of the Defendant as a usurper, but instead did everything she could to reinforce that image. This was obviously the Plaintiff's intent. Whether the Defendant has made and is making legitimate use of the name "Violet Blue" is also objectively verifiable, otherwise Plaintiff would not have filed the instant

action. While the Supreme Court may distinguish between statements that are pure opinion and assertions of fact, the Plaintiff's statements concerning the Defendant cannot be found to be anything other than assertions of fact. A reasonable fact finder, reading the statements made by the Plaintiff, could therefore find that the Plaintiff has made a false assertion of fact. As such, the Defendant has established the probability of her Fifth Counterclaim succeeding on the merits based upon the evidence of this case. This Honorable Court must therefore deny the Plaintiff's Motion to Strike.

**B.   PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FOURTH COUNTERCLAIM MUST BE DENIED AS MOOT BECAUSE PLAINTIFF'S TRADEMARK WAS REGISTERED ON MARCH 4, 2008, OR DEFENDANT MUST BE GRANTED LEAVE TO AMEND HER COUNTERCLAIMS.**

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. While Plaintiff's Third Counterclaim for Cancelation of Plaintiff's U.S. Trademark and Service Mark Registration Application Serial No. 77121570 may or may not have stated a claim upon which relief may be granted, Plaintiff's Application matured to Registration No. 3391010 on March 4, 2008. As such, Plaintiff's motion to dismiss Defendant's Third Counterclaim has been rendered moot. To the extent necessary, Defendant seeks leave to amend the Third Counterclaim to reflect that Defendant is seeking cancelation of Plaintiff's Registration No. 3391010.

**C.   DEFENDANT SHOULD BE GRANTED LEAVE TO AMEND HER FOURTH COUNTERCLAIM FOR UNFAIR COMPETITION.**

Fed. R. Civ. P. 15(a) provides that, in the circumstances disclosed in this case, a party may amend his pleading only by leave of court, or by written consent of the adverse party, "and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – leave to amend should, as the rules require, be "freely given." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (U.S. 1962). Moreover, "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(e)(3).

1   In this case, the Defendant's Fourth Counterclaim seeks injunctive relief proscribing the Plaintiff from using Plaintiff's trademark. While the Fourth Counterclaim may not elaborate all of the necessary elements, the Plaintiff does not appear to have been prejudiced in her ability to understand the claim because Plaintiff details the necessary elements in Plaintiff's Motion. *Plaintiff's Motion*, 21:7-12. The Plaintiff is therefore not likely to be prejudiced by this Honorable Court granting the Defendant leave to amend the Fourth Counterclaim. Moreover, while the Plaintiff questions how the Defendant can plead that no confusion exists sufficient to support Plaintiff's claims while at the same time pleading that sufficient confusion exists to support Defendant's Fourth Counterclaim, this type of pleading is allowed under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(e)(3). This Honorable Court should therefore grant the Defendant leave to amend her Fourth Counterclaim.

### IV.     CONCLUSION

The Plaintiff's Motion to Strike the Defendant's Fifth Counterclaim is utterly baseless. The Plaintiff has not only failed to demonstrate how evidence of *current* public interest in this lawsuit relates back to the date of Plaintiff's defamatory statements about the Defendant made *almost one year prior*, but the Defendant has shown that her defamation claim could succeed on the merits. The Plaintiff's statement on the Internet concerning the Defendant is nothing more than Plaintiff's attempt to demonstrate that the Defendant has maliciously usurped the Plaintiff's name, and buttresses this assertion of fact by demeaning, dehumanizing and ridiculing the Defendant. There can honestly be no doubt that this was precisely her intent. Because the Defendant has properly averred a claim of defamation, and shown that her claim could succeed on the merits. For these reasons and the reasons given above, this Honorable Court should deny the Plaintiff's Motion to Strike the Defendant's Fifth Counterclaim as a SLAPP suit.

Because the Plaintiff's mark was granted registration on March 4, 2007, this Honorable Court should deny the Plaintiff's Motion to Dismiss as moot the Defendant's Third Counterclaim for failing to state a claim upon which relief may be granted. To the extent necessary, the Defendant seeks leave to amend the Third Counterclaim as necessary to reflect that the Defendant is seeking cancellation of Plaintiff's Registered Mark.

The Fourth Counterclaim is sufficient to notify the Plaintiff of the facts and basis for relief that

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S          Case No.:  C 07-5370 SI
MOTIONS TO STRIKE AND DISMISS - 17

the Defendant is seeking, this Honorable Court should deny the Plaintiff's Motion to Dismiss for failure to state a claim and grant the Defendant the ability to amend, if necessary.

### V.    PRAYER FOR RELIEF

Wherefore, the Defendant respectfully PRAYS THIS HONORABLE COURT:

(1)    to enter an order DENYING Plaintiff's Special Motion to Dismiss Defendant's Fifth Counterclaim;

(2)    to enter an order DENYING Plaintiff's Motion to Dismiss the Third and Fourth Counterclaims for failure to state claims upon which relief may be granted;

(3)    to enter an order GRANTING Defendant the ability to amend Defendant's Counterclaims as this Honorable Court may deem necessary; and

(4)    to award the Defendant its fees and costs incurred in responding to Plaintiff's Motions.

DATED THIS 14th day of March 2008.

Respectfully submitted,

CARPELAW PLLC

*/s/ Robert S. Apgood*
Robert S. Apgood, *Pro Hac Vice*
WSBA # 31023
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: (206) 624-2379
Facsimile: (206) 784-6305
E-mail: rob@carpelaw.com

**DECLARATION OF SERVICE**

I, Robert S. Apgood, hereby make the following Declaration from personal knowledge that on March 14, 2008, I served the foregoing

1. Defendant Woffinden's Response In Opposition To Plaintiff's Motion To Strike Fifth Counterclaim And Motion To Dismiss Third And Fourth Counterclaims;

2. Declaration Of Robert S. Apgood In Support Of Defendant Woffinden's Response In Opposition To Plaintiff's Motion To Strike Fifth Counterclaim And Motion To Dismiss Third And Fourth Counterclaims; and

3. this Declaration of Service

by filing a copy thereof with Clerk of the Court via the Court's CM-ECF system. As a result of their agreement and the court's rule, the following will be notified of this filing and copies of the documents will be made available to them:

Colette Vogele
Benjamin Costa
Vogele & Associates
12 Geary Street, Suite 701
San Francisco, CA 94108

I herby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 14th of March 2008 at Seattle, Washington.

CARPELAW PLLC

*s/ Robert S. Apgood*
Robert S. Apgood, *Pro Hac Vice*
WSBA # 31023
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: (206) 624-2379
Facsimile: (206) 784-6305
E-mail: rob@carpelaw.com