COLETTE VOGELE (SBN No. 192865)
Email: colette@vogelelaw.com
BENJAMIN COSTA (SBN No. 245953)
Email: ben@vogelelaw.com
**VOGELE & ASSOCIATES**
12 Geary Street, Suite 701
San Francisco, CA 94108
Tel: (415) 751-5737
Fax: (415) 358-4975

Attorneys for Plaintiff and Counter-defendant
VIOLET BLUE

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VIOLET BLUE, an Individual,<br><br>    Plaintiff and Counter-defendant,<br><br>    v.<br><br>ADA MAE JOHNSON a/k/a ADA WOFFINDEN, an individual d/b/a VIOLET BLUE a/k/a VIOLET a/k/a VIOLET LUST; ASSASSIN PICTURES INC., a California Corporation; ASSASSINCASH.COM; BILL T. FOX, an individual, a/k/a BILL FOX; FIVE STAR VIDEO L.C., an Arizona Limited Liability Company a/k/a Five Star Video Distributors LLC d/b/a Five Star Fulfillment; and DOES 1-10<br><br>    Defendants and Counter-claimants. | Case No. C 07-5370 SI<br><br>**PLAINTIFF VIOLET BLUE'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE FIFTH COUNTERCLAIM AS A MERITLESS S.L.A.P.P. PURSUANT TO CAL. CODE OF CIV. P. § 425.16 AND MOTION TO DISMISS THE THIRD AND FOURTH COUNTERCLAIMS**<br><br>The Honorable Susan Illston<br>Courtroom 10, 19th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Hearing Date: April 4, 2008<br>Hearing Time: 9:00 a.m. |

## I. INTRODUCTION.

Plaintiff and Counterclaim Defendant Violet Blue's ("Blue") motion seeks three rulings: (1) that the Fifth Counterclaim be struck as a Strategic Lawsuit Against Public Participation ("SLAPP") under Section 425.16 of the California Code of Civil Procedures and attorneys fee be awarded; (2) that the Third Counterclaim for "cancellation" of a trademark application be dismissed without leave to amend for failure to state a claim,[1] and (3) that the Fourth Counterclaim for "unfair competition" be dismissed for failure to state a claim. [Plf. Blue's Notice of Mot. and (1) Special Mot. to Strike Fifth Countercl. as a Meritless S.L.A.P.P. Pursuant to Cal. Code of Civ. P. § 425.16; and (2) Mot. to Dismiss the Third and Fourth Countercls. ("Plf. Blue's Mot."), and accompanying papers, *filed* Feb. 25, 2008 (Docket Nos. 42-50).][2]

Regarding Blue's motion to strike under California's Anti-SLAPP statute, Defendant Ada Mae Johnson a/k/a Ada Woffinden ("Woffinden") contests only two issues. First, she contests whether there is an "issue of public interest" sufficient to trigger the statute's applicability. [Defendant Woffinden's Response In Opposition To Plaintiff's Motion To Strike Fifth Counterclaim And Motion To Dismiss Third And Fourth Counterclaims ("Opposition" or "Opp. Br."), *filed* Mar. 14, 2008 (Docket No. 61), at 5:5-10:8.] This argument must be rejected because it patently ignores the evidence of public interest already in the record of this case. Second, Woffinden argues that her Fifth Counterclaim, initially styled as a claim for "Outrage" is rather a claim for defamation under Washington state law and, under her newly-asserted defamation theory, she has demonstrated the required probability of prevailing on the claim. [*Id.* at 10:9-16:6.] This argument should likewise be rejected because, as discussed further below, it fails several of the mostbasic requirements of defamation cases.

---

[1] After the filing of Plaintiff's Motion, the U.S. Patent & Trademark Office issued the Registration for Plaintiff's trademark, VIOLET BLUE, making her motion to dismiss the counterclaim effectively moot.

[2] In this Reply Brief, Plaintiff uses the same abbreviations introduced in her moving papers. For ease of reference, the "FAC" refers to Plaintiff's First Amended Compliant (Docket No. 28); "Answer to FAC" refers to Defendant's Answer to the First Amended Complaint (Docket No. 29); "Initial Answer" refers to Defendants Answer to the original Complaint (Docket No. 6); Corrected Vogele Decl., refers to the Corrected Declaration of C. Vogele In Support Of Plaintiff Blue's Motion (Docket Nos. 48-50).

1    Moreover, with respect to Blue's motion to dismiss the Third and Fourth Counterclaims, Woffinden *concedes* that both counterclaims should be dismissed. [Opp. Br. at 16:7-18, 16:19-17:10.] Nevertheless, Woffinden attempts to save these ill-conceived counterclaims by seeking leave to amend. None of the arguments made in her Opposition are capable of overcoming the fatal defects in the claims. Amendment of either claim should be denied because it would be futile. Moreover, the arguments presented by counsel for Woffinden regarding the Fourth Counterclaim raise serious Rule 11 issues, namely, the impropriety of setting forth inconsistent factual allegations in a pleading.

For the reasons more fully discussed below, and also addressed in Plaintiff Blue's moving papers, Blue respectfully requests that the Court strike the Fifth Counterclaim as a meritless SLAPP, dismiss the Third and Fourth Counterclaims without leave to amend, and award Blue her attorneys fees pursuant to Section 425.16.

## II.  ARGUMENT

A.  Plaintiff Blue's Anti-SLAPP Motion Should Be Granted Because An Issue Of Widespread Public Interest Is Plainly Established.

The "public issue" for purposes of section 425.16(b)(1), (e)(3) and (e)(4) relevant to Woffinden's Fifth Counterclaim is the public "dispute between Blue and Woffinden regarding Woffinden's unauthorized use of Blue's name, persona, and trademark and the ongoing confusion of the two public figures." [Plf. Blue's Mot. at 11:21-24.]. It is without doubt that Blue and Woffinden are both public figures who garner widespread and ongoing attention from the "public at large" related to their respective activities under the name Violet Blue.[3] <u>Du Charme v.</u>

---

[3] Woffinden repeatedly admits her public notoriety throughout her various filings with this Court and through statements made by her at her website, and in the articles previously noted in Plaintiff Blue's Motion. *See, e.g.,* Joint Case Management Conference Statement, *filed* 03/04/08 (Docket No. 2) at 5:20-22 (Woffinden is a "well-established and prolific actor in the adult erotica genre of films and modeling, having performed in over 300 films since 1999"); <u>id.</u> at 5:24 (Woffinden has had a "highly successful career" in the adult film industry). *See also* Initial Answer at ¶ 6 at 2:20-22 and ¶14 at 4:22 (Woffinden contracts to provide public appearances at Exotic Erotic Ball), ¶ 6:26 (Woffinden's videos are "distributed world-wide"), ¶ 7:2-3 (due to her notoriety, Woffinden was "invited to participate in the Exotic Erotic Ball"), ¶ 9 at 3:20-21 (Woffinden wins AVN new starlet award in 2002), ¶ 10 at 4:4-5 (Woffinden continues modeling for her website after moving to Washington state), ¶ 10 at 4:6 (Woffinden continues to release films long after she has performed in anything new), ¶13 (Woffinden signed autographs for "her fans" in 2006 at the Exotic Erotic Ball in San Francisco), ¶ 30 at 9:17 (alleging that Woffinden "was famous" before Blue), ¶ 33 at 10:14 (same), ¶ 34 (when Woffinden allegedly learned of Blue, she was already "established in the adult film

1 Int'l Brotherhood of Electrical Workers, Local 45, 110 Cal.App.4th 107, 117, 1 Cal. Rptr. 3d 501, 509 (Cal. App. 2003). To argue that these individuals and the issue of their dispute are not of widespread public interest would be to drastically misconstrue the statements made by Woffinden herself, *see* supra footnote 2, and those made in the media at large, concerning the public's interest in both Blue and Woffinden and the ongoing confusion among the public regarding these two figures. [*See* Plf. Blue's Mot. at 1:11:21-12:22 (citing Seelig, 97 Cal. App. 4th at 808).] *See also infra* Section II.A.1. Woffinden's allegations in the Fifth Counterclaim relate plainly to statements made in connection with a "topic" (the ongoing confusion and dispute) and "person[s]" (Blue and Woffinden) "of widespread public interest." Du Charme, 110 Cal.App.4th 107, 117. Accordingly, Blue has squarely established the requirement that the cause of action to be struck because her Motion is a cause of action "in connection with a public issue" and/or an "issue of public interest." Cal. Code. Civ. P. § 425.16(b)(1), (e)(3), (e)(4).

Despite the obvious issues of public interest here, Woffinden's Opposition appears to challenge the issue of whether there exists an "issue of public interest" on temporal grounds coupled with a misapplication of Du Charme. [Opp. Br. at 5:5-10:8.] Specifically, Woffinden relies on Du Charme and appears to argue that because the statement at issue in Blue's October 2006 blog post was made sometime *before* Blue filed the instant action, there was no "ongoing controversy, dispute or discussion" at the time the statements were made. This argument must fail for two important reasons.

1.    The Record Is Replete With Examples Over Several Years Of The Public Interest In The Dispute And The Ongoing Public Confusion of Blue And Woofinden.

Setting aside for the moment the fact that Woffinden misreads Du Charme's impact on this case, Woffinden's assertion that there was no "ongoing controversy, dispute or discussion" is plainly belied by the record in this case. The record is replete with examples of the public

---

community"); id. at Exh. G at 22 (Woffinden referencing her internet radio show). *See also,* Corrected Vogele Decl. at Exh. D (Internet Movie Database reflecting hundreds of appearances by Woffinden)), Exh. E (Exotic Erotic Ball publicity advertisements); Woffinden's public website (www.violetblue.org). Blue's national and international notoriety and fame is likewise undisputed. *See, e.g.,* Corrected Vogele Decl. at Exhs. A, B, C, G, H, M, O, P, Q, R, S, T & U (media reports regarding Violet Blue including reports of the instant controversy).

discussions leading to a full-on controversy well before Blue made her October 2006 blog post, and the public's interest in this controversy continues to this day.

Woffinden readily admits in her Initial Answer[4] that a discussion, dispute and/or controversy existed well before October 2006. At this time, one of the most direct pieces of evidence to support this fact is Woffinden's own statement that at some point "years" before December, 2006, Woffinden believed there was such an interest in the fact that she used a name that was the same as Blue's real name, that *she (Woffinden) had invited Blue to be guest on Woffinden's internet radio talk show*. [Initial Answer at 22, Exh. G (e-mail from Woffinden to Blue dated Dec. 5, 2006) (the "December 5 Email") ("I know I wrote you years ago asking you to come on my internet radio show.").] Moreover, the record also shows that Woffinden admits that (1) in 2002 she won a "prestigious" AVN "Best New Starlet" award under the name "Violet Blue" [Initial Answer, ¶ 9]; (2) sometime *before* October 2006, she executed contracts with the local, San Francisco-based organizers of the Exotic Erotic Ball for numerous public appearances [Initial Answer, ¶ 6 at 2:2-22 and ¶13 at 4:22 (referring to "all contracts" with the Ball organizers)]; (3) at some point *before* the 2006 Exotic Erotic Ball, Woofinden recognized the

---

[4] Relying on Bullen, Woffinden argues her Initial Answer is "non-existent" and thus should be ignored by the Court. [Opp. Br. at 2;25-28, 3:27-28.] Woffinden's Initial Answer is, however, a pleading in this Court's record, and has been neither amended nor stricken from that record. *See* Fed. R. Civ. P. 12(f), 15(a). Her reliance on Bullen for the uncontroversial proposition that "[i]t is hornbook law that *an amended pleading* supersedes the original" is irrelevant. Bullen v. De Bretteville, 239 F.2d 824, 833 (9th Cir. 1956) (emphasis added). Here, the record contains no *amended answer* by Woffinden. Instead, the record contains two entirely separate and distinct documents both placed into the record by Woffinden: (i) an Answer to the original Complaint and (ii) an Answer to Blue's FAC. Though *Blue's* original Complaint is superseded by her FAC, Woffinden's Answer to the FAC is not itself an amendment to the Initial Answer filed by Defendant in this case, but rather a responsive pleading to Blue's FAC.

Moreover, Though Woffinden has retained counsel between the time she filed her Initial Answer and the time she filed of her Answer to the FAC, her pro se status cannot be used to shield her from the damaging factual admissions she so freely makes in her Initial Answer. "Pro se litigants must follow the same rules of procedure that govern other litigants. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) *see also* United States v. Merrill, 746 F.2d 458, 465 (9th Cir. 1984), Briones v. Riviera Hotel & Casino, 116 F.3d 379, (9th Cir. 1997). This principle is doubly applicable to the instant matter because Woffinden does not seek to diminish the relevance of her Initial Answer to account for the fact that she misunderstood or misapplied some arcane and nuanced legal theory or formalistic pleading requirement intelligible only to those trained in the law. Rather, the statements she now seeks to change are plain and simple statements of facts of which she – not her lawyer -- possessed personal knowledge. Neither she nor her counsel can attempt to relegate these statements to "non-existence" simply because counsel understands more keenly than client just how damaging these admissions are to her case.

1  problem of the confusion, and *herself* asked the Ball organizers to indicate "porn star" on

2  advertising to avoid public confusion with Blue [Initial Answer, ¶ 19 at 6:11-13)].

3       In addition, between the time Blue published the October 2006 blog post and her filing

4  this action, public interest appears to have increased as the discussion and controversy continued

5  to evolve. In a December 5, 2006, email message to Blue, Woffinden acknowledges the public

6  issue of confusion surrounding the Exotic Erotic Ball advertisements of her appearances earlier

7  that year. [Initial Answer at Exh. G p. 22 (email message from A. Woffinden to V. Blue dated

8  Dec. 5, 2006) ("On the fliers for the EEB they did state under Violet Blue the fact that it was the

9  porn performer. I know they didn't want people confusing the two of us.").] A few weeks later,

10 Woffinden admits that the consumers of adult entertainment are so interested in "Violet Blue"

11 pornographic performances that Woffinden had been nominated for "best actress." She writes in

12 an email to Blue: "Oh, did you see that *your name was nominated for best actress* in a video? Its

13 [sic] funny, the one movie that I do and I get nominated LOL." (emphasis added) [Initial Answer

14 at Exh. G at 22 (email from A. Woffinden to V. Blue dated Jan. 20, 2007.] Woffinden further

15 asserts in her Initial Answer that she was so well known that when she "found out about"

16 Plaintiff Blue, a name change would have confused the "entire adult [entertainment]

17 community." [Initial Answer ¶ 34 at 10:22-11: 2.][5] Finally, as noted in Blue's moving papers,

18 during the many months leading up to the filing of this action, the public interest in the

19 discussion and controversy was widespread. *See, e.g.,* Plf. Blue's Mot. at 11:21-12:22; Corrected

20 Vogele Decl., Exh G (This Week In Tech program number 86) and H (SFGate.com article

21 reflecting public interest in the controversy).

22      As these numerous and indisputable facts in the record make clear, there is no doubt that

23 the public is and has been for some time interested in the "dispute between Blue and Woffinden

---

[5] Moreover, shortly before Blue filed suit, Dave Pounder contacted Plaintiff Blue by email assuming that she was Woffinden. [FAC at 11:9-17 Initial Answer, ¶ 20.] Woffinden explains that Pounder learned of "Violet Blue" through Google news updates "related to adult entertainment." [Initial Answer, ¶ 20 at 6:16-21.] Google news alerts aggregate public news stories from around the world. *See* http://www.google.com/alerts ("Google Alerts are email updates of the latest relevant Google results (web, news, etc.) based on your choice of query or topic referenced) (last visited March 21, 2008). The fact that Pounder – then living in Florida -- received an internet alert involving "Violet Blue" *and then acted upon it by writing to Blue*, demonstrates unequivocally the broad public interest in both Blue and Woffinden, and the ongoing confusion between the two.

regarding Woffinden's unauthorized use of Blue's name, persona, and trademark and the ongoing confusion of the two public figures." [Plf. Blue's Mot. at 11:21-24.] In short, Blue has met, if not vastly exceeded, the initial threshold showing that section 425.16 is triggered in this case.[6]

      2.      <u>Du Charme</u> Does Not Contradict The Fact That Plaintiff's Allegedly Defamatory Statements Are Made In Connection With An Issue Of Public Interest.

Woffinden's characterization of the holding in <u>Du Charme</u> and its application here is mistaken. <u>Du Charme</u> involved an allegedly defamatory posting on a union website. <u>Du Charme</u>, 110 Cal. App. 4th at 113-114. The local union had , prior to the internet posting, undergone some controversy over financial mismanagement. But at the time of the posting the controversy which was no doubt relevant to the narrow community – the local union – was over. <u>Id.</u> With these facts, the plaintiff argued there was no public issue because the defamatory statement ("that [union officer] Du Charme had been removed from office for financial mismanagement") was not related to an *ongoing* controversy for the union upon which members of the union were to act. <u>Id.</u> at 118. In agreeing with the plaintiff, the Court of Appeals of California carefully distinguished several cases, like the instant action, where allegedly defamatory statements were made "in connection with a topic, person or entity of widespread public interest," <u>id.</u> at 117 (citing cases), from cases like the one before that court, concerning the activities of "only a limited but definable *portion* of the public, a *narrow* segment of society consisting of the members of a private group or organization…" <u>Id.</u> at 117-18 (emphasis in original).

Applying these lessons, it is clear that this is not a case involving a "narrow community" like in <u>Du Charme</u>, but rather a case involving demonstrated and widespread interest from the public at large. Moreover, when read in its proper context, <u>Du Charme</u> underscores the legislative mandate that California's anti-SLAPP statute be accorded broad application to prevent chilling free speech and public participation.

---

[6] Furthermore, there is also a recognized public interest in the issue of porn stars taking the names of celebrities to enhance their notoriety, and several lawsuits filed regarding them. *See, e.g.,* http://www.femalefirst.co.uk/celebrity/Tyra+Banks-6446.html (last visited Mar. 21, 2008) (Tyra Banks); http://dailyblabber.ivillage.com/entertainment/archives/2007/05/katie-holmes-a-porn-star.html (last visited Mar 21, 2008) (Katee Holmes); http://www.msnbc.msn.com/id/16115548/ (last visited Mar. 21, 2008) (Mariah Carey).

B.   **Defendant Woffinden Has Not Met Her Burden To Show A Probability Of Prevailing On Her Fifth Counterclaim.**[7]

1.   **Because Woffinden Concedes Her Outrage Claim Has No Probability Of Prevailing, The Fifth Counterclaim Should Be Struck.**

As an initial matter, Woffinden concedes her sparsely-plead Fifth Counterclaim is actually not a proper claim for "Outrage" but rather a claim for defamation. [Opp. at 11:22-12:10.] Because Woffinden admits that her "Outrage" claim is not properly presented in the Answer to the FAC, this Court should grant Blue's anti-SLAPP motion and award Blue her attorneys' fees without further consideration. *See* Cal. Code of Civ. P. §§ 425.16(b)(1), (c).

2.   **Even Under A Defamation Theory, Woffinden Cannot Meet The Burden Of Establishing A Probability Of Prevailing On Her Claim.**

a.   **By Abandoning Her Allegation That The "Twat" Comment Is Defamatory, Woffinden Concedes That She Has No Probability Of Prevailing On The Fifth Counterclaim.**

The record is clear that the only specific allegation of an allegedly actionable statement appearing in the Fifth Counterclaim is the single allegation that Blue called Woffinden a "twat". [*See* Plf. Blue's Mot. at 8:8-17:20; *see* Opp. Br. at 4:11-16:6; Answer to FAC at 27:1-23.] Nevertheless, Woffinden now abandons her original pleading all together and takes the position that the twat comment is *not* actually the basis for her defamation claim at all. [Opp. Br. at 12:16-17.] By abandoning the specific allegation in her counterclaim, Woffinden concedes that Blue's argument that the claim has no probability of prevailing is correct. [*See* Plf. Blue's Mot. at 13:2-17:20.] Accordingly, the Court should strike the Fifth Counterclaim and award Plaintiff Blue her attorneys fees under 425.16(c).

b.   **Even Under The Expanded Version Of Woffinden's Purported Defamation Claim, Woffinden Would Have No Probability of Prevailing.**

Abandoning the language of her pleading all together, and faced with the challenge of manufacturing some fresh basis to forestall the application of 425.16, Woffinden's original position has now been replaced by a new contention: that the entire October 2006 blog entry creates an overall "impression" that Woffinden's use of Blue's name for her "stage name" in

---

[7] Woffinden argues that the Fifth Counterclaim "is properly made under Washington law" (Opp. at 10:18), and meets the requirements of a compulsory counterclaim under Fed. R. Civ. P. 13(a)(1). (Opp. at 11:2-5 & fn 4.) Blue expressly does not concede the propriety of raising these allegations under Washington law or whether this is a required counterclaim under Rule 13(a)(1).

pornographic productions "is illegitimate." [Opp. Br. at13: 3.][8] Woffinden cannot prevail on her re-characterized Fifth Counterclaim for several reasons.

        (i)        The "Fake" and "Impostor" Statements Are Not Actionable Because They Are Merely Statements Of Opinion Which Cannot Be Proved True Or False.

The initial deficiency in Woffinden's newly constituted claim arises from the fact that Woffinden's Opposition brief points two express statements by Blue in the October 2006 blog post that Woffinden uses to ground her claims of defamation: Blue's reference to Woffinden as a "fake Violet Blue," and as being an "imposter".[9] Ultimately, neither of these statements can be actionable because, for the same reasons detailed in Blue's Motion regarding Woffinden's counterclaim of Outrage, Plf. Blue's Mot. At 19:3 – 22:20, these statements are plainly statements of opinion that cannot be proved false and the Court must grant Blue's anti-SLAPP motion accordingly.

        (ii)       Even If Provable, The "Fake" And "Impostor" Statements Are Not Actionable Because They Are Not False.

To meet her burden under the anti-SLAPP statute, a "plaintiff must present evidence of a statement of fact that is provably false." *See* Seelig, 97 Cal. App. 4th 809. Here, Woffinden is incapable of proving that the "fake" and "imposter" statements are false. These two statements are in fact truthful characterizations that Woffinden cannot and does not deny.

The term "fake" means "one that is not authentic or genuine." *See* The American Heritage Dictionary of the English Language, Fourth Edition (Houghton Mifflin Company, 2004) (hereinafter "AHD") (available at http://dictionary.reference.com/browse/fake) (last visited Mar. 21, 2008) (definition of "fake"). The term "imposter" means ""a person who

---

[8] It should be noted that Woffinden's pleadings, allegations, and statements made to this Court throughout this action have been a constant moving target with many inconsistencies. This leaves the Court and Plaintiff Blue with the unenviable task of deciphering Woffinden's allegations in order to efficiently resolve this matter. In this Brief, Blue makes every effort to address the new allegations so that the Court may rule in full on the motion without delay. However in addressing Woffinden's new allegations, Plaintiff expressly does not concede that they are properly raised in the Fifth Counterclaim as plead in the Answer to the FAC.

[9] Woffinden repeatedly uses inaccurate quotation marks around words in the Opposition Brief. For example, the Opposition Brief states repeatedly that Blue has allegedly referred to Woffinden as a "thief" and as having "stolen" Blue's name. Opp. Br. at 13:2, 13:13, 13:16, 13:23. Intended no doubt to suggest that the words so quoted are actually found in the Blue's allegedly defamatory blog post, these words do *not* appear in Blue's blog post and serves only to mislead the Court.

practices deception *under an assumed character, identity, or name*." Id. (emphasis added) (available at http://dictionary.reference.com/browse/imposter) (defining "imposter"). Under either of these terms, Woffinden would seem to be taking umbrage with the statement that she is not in, fact, "Violet Blue." However, it is undisputed that Woffinden's real name is "Ada Woffinden" and that "Violet Blue" is merely one of the "stage name[s]," or assumed identities, she has selected. [*See, e.g.,* Initial Answer at 3:16-19; Answer to FAC at 2:20-24.] A "stage name" is a "pseudonym for an actor" and a pseudonym is simply a "fictitious name", in other words a "fake" name. *See* WorldNet 3.0 (Princeton University 2006) (available at http://dictionary.reference.com/browse/pseudonym) (last visited Mar. 21, 2008) (defining pseudonym). Accordingly, Blue's statement that Woffinden is a "fake Violet Blue" is truthful because it is without doubt that Woffinden is, in fact, not "Violet Blue" (either the Plaintiff *or* a person with that real name). As such, because Woffinden's new defamation claim is based on a truthful statement, it cannot stand.

        (iii)    The Fifth Counterclaim Fails To Allege The Proper Intent For Defamation Claims Involving A Public Figure.

Finally, even allowing that the statements here in question are capable of factual determination, and even assuming (solely for the sake of argument) that Woffinden could prove that these statements are false, she still has no probability of prevailing she because she has not plead, nor can she establish a core element of the defamation of a public figure like herself: Woffinden never claims (or even argues) that Blue acted with malice. New York Times Co. v. Sullivan, 376 U.S. 254, 281-282 (U.S. 1964) ("[A]ny one claiming to be defamed by the communication must show actual malice or go remediless. This privilege extends to a great variety of subjects, and includes matters of public concern, public [persons], and candidates for office."). To satisfy this malice requirement, Woffinden must show that the defamatory and false statements were made, "with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 280. Because she fails to make even a bare allegation on this point, her claim cannot possibly succeed on its merits.

Here, it requires no detailed analysis to conclude that Woffinden is a public figure. Her own admissions trumpet that fact. See footnote 2 *supra*. Moreover, even assuming that the "fake" and "imposter" statements are false, and can be proven so, First Amendment protection "does not turn upon the truth, popularity, or social utility of the ideas and beliefs which are offered." Id. at 271 (internal quotations omitted). Only when these false statements are made maliciously can the protections of the First Amendment be pierced. Woffinden, here, has failed to allege malice of the type that would enable her to overcome Blue's First Amendment protection. Nowhere in the Fifth Counterclaim or even in her Opposition brief does she allege anything that meets the New York Times standard. *See* Answer to FAC at 27:1-23; Opp. Br. at 12:4-7 and fn. 6 (asserting a negligence standard). Accordingly, even if the allegedly defamatory comments are provable, and even if they are in fact proven false, Woffinden's Fifth Counterclaim must be struck as a meritless SLAPP, and Blue should be awarded her attorneys fees.

C. The Fourth Counterclaim Must be Dismissed Because Any Amendment Would Be Futile And Because FRCP 8 And 11 Preclude Inconsistent Factual Pleadings.

Woffinden's position that she should be granted leave to amend her fourth counterclaim should be rejected. Under Rule 15, any proposed amendment must not be futile. Foman v. Davis, 371 U.S. 178 (1962). The amendment here would be futile because it would require Plaintiff to make wholly disparate and inconsistent factual pleadings violating Rule 8 and 11. Nevertheless, Woffinden argues that she is permitted to make inconsistent factual allegations in her pleadings under Rule 8 of the Federal Rules of Civil Procedure. [Opp. Br. at 17:6-9.] Rule 8 and Rule 11 preclude such inconsistent factual pleadings. Total Coverage, Inc. v. Cendant Settlement Services Group, Inc., 2007 U.S. App. LEXIS 16157 (9th Cir. 2007). "'[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.'" Total Coverage, 2007 U.S. App. LEXIS 16157 at *8 (emphasis added) (quoting Am. Int'l. Adjustment Co. v. Galvin, 86 F.3d 1455, 1461 (7th Cir. 1996) (citing Fed. R. Civ. Pro. 11;

8(e)(2) (all statements in pleading "shall be made subject to the obligations set forth in Rule 11"))).[10]

Here, Woffinden alleges, on the one hand, that there is no confusion between the two parties, [Answer to FAC at 17:6-7 (denying any confusion between Blue and the Woffinden); 18:11-13 (denying confusion between Blue and Woffinden); 23:23-25 (alleging that the "parties have co-existed with their respective uses of the name "Violet Blue" for many years without confusion"); 26:20-21 ("Counterclaim Plaintiff alleges, re-alleges and incorporates by reference each and ever allegation set forth above.")] and, on the other hand, that confusion exists sufficiently to allow her own recovery on a counterclaim for "unfair competition", [Answer to FAC at 26:18-26]. Because, these factual contentions are directly contradictory, Woffinden's counsel cannot assert these inconsistencies while maintaining his Rule 11 obligations to the Court. *See* Fed. R. Civ. P. 11(b)(3) ("factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery) and (b)(4) ("the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."). Acordingly, the Fourth Counterclaim should be dismissed without leave to amend.

### III.  CONCLUSION.

For the reasons stated above, this Court should dismiss the third, fourth and fifth counterclaims and further grant Plaintiff's special motion to strike the fifth counterclaim as a SLAPP and award Plaintiff Blue's attorneys fees and costs.

Dated:  March 21, 2008

VOGELE & ASSOCIATES

By:      /S/
Colette Vogele
Attorneys for Plaintiff VIOLET BLUE

---

[10] *See also* Wright and Miller, 5 Federal Practice and Procedure § 1285 (3d ed. 2004) ("A party should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses or is otherwise justified in pleading in this fashion ...").