IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLET BLUE,<br><br>        Plaintiff,<br>  v.<br><br>ADA MAE JOHNSON, aka ADA WOFFINDEN, dba VIOLET BLUE, aka VIOLET aka VIOLET LUST,<br>        Defendant.. | No. C 07-05370 SI<br><br>**ORDER RE: PLAINTIFF'S MOTION TO STRIKE OR DISMISS DEFENDANT'S COUNTERCLAIMS AND PLAINTIFF'S MOTION FOR SANCTIONS** |

AND RELATED COUNTERCLAIMS

    On April 4, 2008, the Court heard argument on plaintiff's motion to strike and dismiss several of defendant's counterclaims, as well as plaintiff's motion for sanctions. Having considered the arguments of counsel and the papers submitted, and for good cause shown, the Court hereby DENIES IN PART and GRANTS IN PART plaintiff's motion to strike and dismiss, and DENIES plaintiff's motion for sanctions and defendant's cross-motion for sanctions.

**BACKGROUND**

    Plaintiff and counterclaim defendant Violet Blue is a "well-known and respected personality in the field of human sexuality, sexual health, and relationship education" who has worked as a "writer, lecturer, blogger, podcaster, editor, and newspaper columnist." Amended Complaint at ¶ 17. Since 1999, Blue has regularly written articles in various media under her own name. *Id.* at ¶ 18. Defendant and counterclaim plaintiff Ada Mae Woffinden is an actress who has appeared in dozens of pornographic films. *Id.* at ¶ 28. Woffinden has appeared in many adult films under the name "Violet Blue." *Id.* Sometime in late October 2006, plaintiff Blue received several communications from other journalists and acquaintances indicating that they believed she would be appearing at the Exotic Erotic

Ball the weekend of October 28, 2006 in South San Francisco. *Id.* at ¶ 54. Blue soon learned that Woffinden was scheduled to appear at the Exotic Erotic Ball under the name "Violet Blue." *Id.* Blue alleges other instances of confusion as well, such as when pornographic actor "Dave Pounder" emailed Blue at the San Francisco Chronicle thinking she was Woffinden, with whom "Pounder" had acted in his first "scene." *Id.* at ¶ 56. On October 22, 2007, Blue filed a complaint for trademark infringement, trademark dilution, violation of California Civil Code § 3344, and unfair competition.

Blue filed an amended complaint on February 4, 2008, and on the same day Woffinden filed her second answer. The answer included five counterclaims, including claims for declaratory relief, cancellation of Blue's trademark application, trademark infringement, and outrage. The fifth counterclaim, for outrage, arose out of comments Blue made about Woffinden on Blue's blog around October 26, 2007, when Blue learned that Woffinden would be appearing at the Exotic Erotic Ball under the name "Violet Blue." Woffinden claims that Blue called her a "twat," Answer at 27, ¶ 17, and also that Blue referred to Woffinden as an "imposter" and as a "fake," Defendant's Opposition at 13. Currently before the Court is Blue's motion to strike and dismiss several of Woffinden's counterclaims, as well as Blue's motion for sanctions, which Blue argues are necessary because Woffinden failed to consent to the filing of an amended complaint but later did not oppose Blue's motion for leave to amend.

## LEGAL STANDARD

### I.  Motion to strike

The California Anti-SLAPP statute permits defendants to bring a "special motion to strike" if a cause of action against them arises "from any act . . . in furtherance of the . . . right of petition or free speech . . . in connection with a public issue," unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). If a defendant prevails in bringing a motion to strike, that defendant "shall be entitled to recover his or her attorney's fees and costs." *Id.* § 425.16(c). Although it is a state statute, California's Anti-SLAPP protections apply to state law claims brought in federal court. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999).

**II.    Motion to dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.    Blue's motion to strike Woffinden's fifth counterclaim**

Plaintiff and counterclaim defendant Blue moves to strike defendant Woffinden's fifth counterclaim pursuant to California's Anti-SLAPP statute. Woffinden's fifth counterclaim alleges liability for outrage based on Internet postings in which Blue allegedly slandered and libeled Woffinden, including one instance in which Blue may have called Woffinden a "twat." Counterclaim at ¶ 17. In her opposition to Blue's motion to dismiss, Woffinden contends that the fifth counterclaim is actually a claim for defamation and that the defamation is not limited to Blue's use of the word "twat" but also includes Blue's reference to Woffinden as a "fake" and as an "imposter." *See* Defendant's Opposition at 11-14.

California's Anti-SLAPP statute was enacted to quash lawsuits "brought primarily to chill the

valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a); *see also Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 806 (Cal. Ct. App. 2002) ("The goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings."). California courts have clarified that "[t]he statutory language establishes a two-part test." *Seelig*, 97 Cal. App. 4th at 806. First, courts "determine whether plaintiff's causes of action arose from acts by defendants in furtherance of defendants' rights of petition or free speech in connection with a public issue." *Id.* at 806-07. This is a "threshold condition" to granting a motion to strike under the statute. *Id.* at 807.

The statute defines an act in furtherance of the right of petition or free speech as, *inter alia*, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding," "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or "any other conduct in furtherance of the exercise of the constitutional right of petition or . . . free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). The requirement that the offending comments must have been made "in connection with an issue of public interest" should be "'construed broadly' so as to encourage participation by all segments of our society in vigorous public debate related to issues of public interest." *Seelig*, 97 Cal. App. 4th at 808 (quoting § 425.16(a)). Accordingly, California courts have explained that the public interest requirement can be met where "private conduct [] impacts a broad segment of society and/or . . . affects a community in a manner similar to that of a governmental entity." *Du Charme v. Int'l Bhd. of Elec. Workers*, 110 Cal. App. 4th 107, 115 (Cal. Ct. App. 2003) (internal quotation marks omitted). In the latter situation, "where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public . . . the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance." *Id.* at 119.

If a defendant can satisfy the first step, courts "then determine whether plaintiff has established a reasonable probability that she will prevail on her claims at trial." *Seelig*, 97 Cal. App. 4th at 807. In order to survive the motion to strike, a plaintiff must "make a prima facie showing . . . of facts, which,

4

if proved at trial, would support a judgment in her favor." *Id.*

Here, Blue argues that she meets the threshold condition and that Woffinden cannot make a showing that she will likely prevail on her counterclaim at trial. Woffinden argues in response that the dispute over her use of the name "Violet Blue" was not an issue of public interest at the time Blue made the statements at issue in the fifth counterclaim, and that even if it were an issue of public interest, Woffinden can satisfy the second step of the Anti-SLAPP test.

As to the threshold step, the parties appear to agree that Blue's online statements about Woffinden were written statements that were "made in a place open to the public or a public forum." The Court agrees that Blue's website is a public forum for purposes of the Anti-SLAPP statute. *See*, *e.g.*, *Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 950 (Cal. Ct. App. 2007). Thus, the only dispute in the first step is whether Blue's statements were made "in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3). Blue first argued that the "twat" statement was made in connection with an issue of public interest because the trademark dispute between Blue and Woffinden is a public dispute that has been reported in many news articles directed to the adult film industry and the technology sector. In response, Woffinden argues that the media interest cited by Blue did not occur until after Blue filed her lawsuit against Woffinden, triggering any public interest in their dispute that might exist. The Court agrees.

California Courts applying the Anti-SLAPP statute have been careful to look at the time period in which the statements were made to determine whether they were connected to an issue of public interest. *See*, *e.g.*, *Du Charme*, 110 Cal. App. 4th at 118 (employee's termination was no longer a current debate or controversy at the time statements were posted on the Internet); *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants*, 86 Cal. App. 4th 280, 285 (Cal. Ct. App. 2000) (statements were not made in connection with a judicial proceeding for purposes of § 425.16(e)(2) because at the time they were made there was no "issue under consideration" by any official proceeding). According to Woffinden, Blue made the statements that form the basis of the fifth counterclaim on October 27, 2006, and did not file suit against Woffinden until one year later, in October 2007. All of the articles and blogs cited by Blue were not published until October 2007 or later, and many of them reference the lawsuit itself. Although this later media attention indicates that the

5

trademark and name dispute between Blue and Woffinden may be a matter of public interest at this time, it in no way indicates that it was a matter of public interest in October 2006.

In response to this argument, Blue contends that the trademark and name dispute was a matter of public interest in the years leading up to Blue's October 2006 statements about Woffinden. Blue contends that (1) both she and Woffinden are public figures; (2) Woffinden had invited Blue to appear on Woffinden's radio talk show at some point "years ago"; (3) Woffinden won an adult video award for "Best New Starlet" in 2002 under the name "Violet Blue"; (4) prior to October 2006, Woffinden agreed to appear at San Francisco's Exotic Erotic Ball under the name "Violet Blue," and asked that she be identified as "porn star Violet Blue" to avoid confusion; and (5) Woffinden had recognized that there was confusion about the two of them prior to the filing of the lawsuit in 2007. *See* Plaintiff's Reply at 2, 4-5. Although these arguments establish that Blue and Woffinden both may be public figures, that both used the name "Violet Blue," and that both were aware of each other's use of the name "Violet Blue" prior to October 2006, they provide no evidence that the dispute between Blue and Woffinden over the use of the name was of interest to more than a handful of members of the public. *See Rivero v. Am. Fed'n of State, County, and Mun. Employees, AFL-CIO*, 105 Cal. App. 4th. 913, 924, 926 (Cal. Ct. App. 2003) (court denied motion to strike where the only people involved in the dispute were a supervisor and eight employees, and noted that publication on the Internet does not turn private information into a matter of public interest); *cf. Seelig*, 97 Cal. App. 4th at 807 (public interest requirement met where plaintiff appeared on a television show that "generated considerable debate within the media"). To the contrary, all these arguments suggest is that Blue and Woffinden had contacted each other privately in an effort to address any confusion of their names. Even assuming some members of the populace paid attention to both Blue's writings and the pornography industry, and that a subset of these afficionados mistakenly believed that plaintiff Blue had starred in adult films or would appear at the Exotic Erotic Ball, such belief does not by itself demonstrate that the confusion, or the dispute surrounding the confusion, was a matter of public interest. Indeed, the mistaken members of the public may not have even been aware that Blue and Woffinden were two different people. The California courts have made clear that "judges and attorneys will, or should, know a public concern when they see it," *Du Charme*, 110 Cal. App. 4th at 117, and this Court simply does not see how this

6

1  dispute – if it even amounted to a dispute at that time – was a public concern in October 2006.
2  Additional evidence would surely be required, such as the evidence Blue put forth regarding the interest
3  of the public from October 2007 onward.

4  The Court also finds it necessary to address an argument raised by Blue for the first time at the
5  hearing. Blue suggested that a statement made "in connection with an issue of public interest," Cal. Civ.
6  Proc. Code § 425.16(e)(3), can be any statement that pertains to a public figure. In support of this
7  contention, Blue cited *Du Charme*, which notes, without citation or support, that "the majority of cases
8  . . . involve statements made in connection with a topic, *person* or entity of *widespread* public interest."
9  *Du Charme*, 110 Cal. App. 4th at 117 (first emphasis added). The Court notes that this dicta is not
10 supported by the plain language of the statute, which specifies that it applies to "matters of public
11 interest," Cal. Civ. Proc. Code § 425.16(a), a "public issue," *id.* § 425.16(b)(1), and "an issue of public
12 interest," *id.* § 425.16(e)(3). Missing from the statute is any indication that it applies to people of public
13 interest or public figures absent an issue of public interest. That said, the *Du Charme* court's statement
14 that the public interest requirement may be satisfied merely through some connection to a person of
15 public interest appears to have some support in the caselaw. In *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal.
16 App. 4th 1027 (Cal. Ct. App. 2008), the California Court of Appeal explained that the definition of
17 public interest is to be construed broadly, and thus that "the issue need not be 'significant' to be
18 protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest,"
19 *id.* at 1042. The court went on to hold that a magazine article about a Finnish businessman and celebrity
20 concerned an issue of public interest because there was "'extensive interest' in Nygård . . . among the
21 Finnish public" and because there was "particular interest among the magazine's readership in
22 'information having to do with Mr. Nygård's famous Bahamas residence which has been the subject of
23 much publicity in Finland.'" *Id.*; *see also Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226
24 (Cal. Ct. App. 1999). With all due respect to the parties before the Court, that level of "extensive
25 interest," *Nygård*, 159 Cal. App. 4th at 1042, or "widespread" interest, *Du Charme*, 110 Cal. App. 4th
26 at 117, in Blue or Woffinden has not been shown.

27 For these reasons, the Court finds that counterclaim defendant Blue has not satisfied the first
28 prong of the Anti-SLAPP statute, and thus the Court need not determine Woffinden's likelihood of

7

success under the second prong. Blue's motion to strike the fifth counterclaim is DENIED. However, the Court does have concerns about Woffinden's fifth counterclaim. First, the counterclaim is, by its plain language, a claim for outrage, so to the extent Woffinden wishes to bring a claim for defamation instead, she must amend her complaint to make that clear. Because the Court can foresee no prejudice to Blue, the Court grants Woffinden leave to do so. Second, if Woffinden chooses to amend her counterclaim to state a claim for defamation, she should consider how the First Amendment might affect her claim. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 772-75 (1986); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1196-97 (9th Cir. 1989).

## II.    Blue's motion to dismiss Woffinden's third counterclaim

Woffinden's third counterclaim asks the Court to cancel Blue's federal trademark registration. Blue initially moved to dismiss this counterclaim for failure to state a claim, because at the time the counterclaim was filed, Blue's trademark application was pending and was not a registered trademark that was capable of being cancelled under the statute. *See* 15 U.S.C. §§ 1119, 1127. Since the filing of Blue's motion to dismiss, however, the United States Patent and Trademark Office issued the registration for Blue's trademark. Woffinden argues that this development moots Blue's motion to dismiss, and Blue agrees. The Court therefore DENIES AS MOOT Blue's motion to dismiss Woffinden's third counterclaim.

## III.   Blue's motion to dismiss Woffinden's fourth counterclaim

Woffinden's fourth counterclaim appears to allege that Blue has infringed Woffinden's unregistered trademark. Blue argues that this counterclaim must be dismissed without leave to amend because Woffinden fails to allege that "Violet Blue" is a protectable unregistered trademark or that Woffinden has been damaged. More importantly, Blue argues the counterclaim must be dismissed because Woffinden has expressly denied that there is any likelihood of confusion between herself and Blue.

Woffinden's fourth counterclaim presumably arises under § 43(a) of the Lanham Act, which provides a cause of action for infringement of an unregistered trademark. *Two Pesos, Inc. v. Taco*

8

*Cabana, Inc.*, 505 U.S. 763, 768 (1992) (noting that "it is common ground that § 43(a) protects qualifying unregistered trademarks"). To state a claim under § 43(a), Woffinden must allege that her stage name "Violet Blue" is distinctive and that Blue's use of the name creates a likelihood of confusion.[1] *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). "Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.* at 1048 (internal quotation marks omitted).

Woffinden concedes that her fourth counterclaim requires amendment to include further allegations necessary to state a claim for infringement, and asks the Court to grant her leave to amend. Blue argues in response that no leave to amend should be granted because any amendment would be futile given the inconsistencies in Woffinden's pleadings. Blue argues, and the Court agrees, that Woffinden's pleadings unambiguously state that there has been no confusion between Blue and Woffinden. *See*, *e.g.*, Defendant's Answer at 23, ¶ 24 ("Plaintiffs [sic] cannot establish its [sic] claims of trademark infringement and unfair competition claims as the parties have co-existed with their respective uses of the name 'Violet Blue' for many years without confusion."). This is certainly inconsistent with the argument inherent in her counterclaim that there is a likelihood of confusion between the two.

The Federal Rules of Civil Procedure permit a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). The Seventh Circuit has clarified, however, that in light of Rule 11, "a pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996); *see also* 5 Wright and Miller, Federal Practice and Procedure § 1285 (3d ed. 2004). The Ninth Circuit has indicated its approval of this limitation on inconsistent pleadings, *Total Coverage, Inc. v. Cendant Settlement Servs. Group*, 252 Fed. Appx. 123, *3 (9th Cir. July 3, 2007), and this Court agrees. Therefore, Woffinden will be granted leave to amend her fourth counterclaim, but in doing so must adhere carefully to the requirements of Rule 11 and must conduct a reasonable inquiry

---

[1] An additional element is "nonfunctionality," *Kendall-Jackson Winery*, 150 F.3d at 1047, but functionality is not at issue here.

9

1 to determine whether she is legitimately in doubt about the likelihood of confusion. Absent legitimate
2 doubt, the Court will not look favorably upon such amendment.

### IV.    Blue's motion for sanctions

Finally, plaintiff Blue moves for sanctions against Woffinden because Woffinden first declined to consent to the filing of Blue's amended complaint and later filed a notice of non-opposition to Blue's motion for leave to file an amended complaint. Because there is no evidence that Woffinden's counsel acted in bad faith, the Court DENIES the motion for sanctions. That said, the Court acknowledge's Blue's concern about the potential for future gamesmanship by Woffinden's counsel, and notes that repeated instances of similar behavior should be avoided. The Court also DENIES Woffinden's motion for sanctions and motion to strike any suggestions in Blue's motion that Woffinden's counsel engaged in delay tactics.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Blue's motion to strike the fifth counterclaim, DENIES AS MOOT Blue's motion to dismiss the third counterclaim, and GRANTS WITH LEAVE TO AMEND Blue's motion to dismiss the fourth counterclaim [Docket No. 42]. The Court also DENIES Blue's motion for sanctions, and DENIES Woffinden's motion for sanctions and motion to strike [Docket Nos. 23, 41, 61].

**IT IS SO ORDERED.**

Dated: April 7, 2008

SUSAN ILLSTON
United States District Judge

10