Robert S. Apgood
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117
Telephone   206-624-2379
Facsimile:   206-784-6305
rob@carpelaw.com

John Jeffrey Carter
329 Flume Street
Chico, CA 95927-3606
Telephone:  530-342-9196
Facsimile:   530-342-6195

Attorneys for Defendant Ada Mae Woffinden *nee* Johnson

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

VIOLET BLUE, an individual,

              Plaintiff/Counter-Defendant,

   vs.

ADA MAE JOHNSON, et al.,

              Defendant/Counter-Plaintiff.

**Case No.:  C 07-5370 SI**

**DEFENDANT WOFFINDEN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Hon. Susan Illston
Courtroom 10, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Hearing Date:  May 9, 2008**
**Hearing Time:  9:00 AM**

## I.      INTRODUCTION

Nearly five months after Plaintiff Violet Blue ("Plaintiff Blue") filed the instant lawsuit against Defendant Ada Mae Woffinden *nee* Johnson ("Defendant Woffinden"), Plaintiff Blue now comes to this Honorable Court seeking a preliminary injunction to bar Defendant Woffinden's use of Defendant Woffinden's stage name, Violet Blue.  This motion has come approximately one and a half years after Plaintiff Blue allegedly became aware of Defendant Woffinden's use of the Violet Blue name.  Moreover, this motion comes at least *seven years* after Defendant Woffinden adopted her stage name, Violet Blue.

What is important about the time frame involved here is that Plaintiff Blue has come to this Honorable Court at this late hour without offering *any* evidence that Plaintiff had developed the secondary meaning necessary to establish *her personal name* as a trademark in either 1999 as she alleges or in December 200 when Defendant Woffindent first utilized the name Violet Blue.  This is significant because, without this evidence, Plaintiff Blue is unable to establish priority in her use of the name Violet Blue over Woffinden's use of the name Violet Blue.  And because Plaintiff Blue has failed to establish priority of use over Defendant Woffinden, Plaintiff Blue is simply unable to establish any likelihood of success on the merits for any of the trademark infringement, dilution or unfair competition claims Plaintiff Blue has alleged in her lawsuit.  This Honorable Court must therefore deny the Plaintiff Blue's motion for preliminary injunction on this basis and may do so on this basis alone.

Should this Honorable Court determine that Plaintiff Blue has somehow made a showing that, as of December 20, 2000, Plaintiff Blue was able to establish sufficient secondary meaning in her personal name to establish priority in the use of the name Violet Blue, this Honorable Court may, and indeed must, deny the Plaintiff's motion on the basis of another reason.  While it is true that the determination of whether a preliminary injunction may issue in this matter requires this Honorable Court to engage in a balancing of several factors to determine the existence of a likelihood of confusion, what defies credulity is the Plaintiff Blue's assertion that every factor this Honorable Court must consider weighs in favor of the Plaintiff.  The Plaintiff's claim that every single factor weighs in favor of this Honorable Court finding a likelihood of confusion in this case departs the metaphysical and enters the realm of the mystic.  As this Honorable Court is likely well aware, the vast majority of cases are not nearly as clear-cut.  Moreover, many of the factors that this Honorable Court must consider do not, in fact, weigh in the Plaintiff's favor.  Even were her claims found to be credulous, the evidence itself does not bear out Plaintiff's claims.  The Plaintiff has failed to demonstrate a probability of success on the merits in proving that, on balance, the factors this Honorable Court must consider substantially weigh in favor of finding a likelihood of confusion.

With respect to Plaintiff Blue's dilution claim, Plaintiff Blue has not made a showing sufficient to demonstrate success on the merits in proving either that her mark is "famous," and therefore protectable under the Trademark Dilution Act, or that Defendant Woffinden began using the stage name Violet Blue

1    after Plaintiff Blue's mark had already become famous.

2         Plaintiff Blue's claim that Woffinden has engaged in the unauthorized use of Blue's name and

3    likeness is similarly unlikely to be successful because Plaintiff Blue has overlooked a crucial requirement

4    for success on such a claim – Blue must prove that Woffinden *knowingly* used Blue's name and likeness.

5    What the Plaintiff has failed to address or evidence, however, is whether, when Woffinden adopted the

6    stage name Violet Blue, Woffinden had knowledge of the Plaintiff's existence such that Woffinden *could*

7    knowingly use her name or that the Plaintiff's name was *so well-known* as of December 20, 2000 that

8    such knowledge on the part of Woffinden could be imputed.  The reason for Plaintiff Blue's failure to

9    address or to evidence this point is simple – Defendant Woffinden had *absolutely no knowledge* of the

10   Plaintiff Blue's existence when Defendant Woffinden adopted the stage name, Violet Blue.  To claim

11   otherwise now is not only untrue, but unsustainable based on the facts.  The Plaintiff is unable to

12   demonstrate a likelihood of success on the merits for this claim.

13        Given the amount of time that has elapsed since both Plaintiff Blue's institution of the suit at bar

14   and Plaintiff Blue allegedly becoming aware of Defendant Woffinden's use of the name Violet Blue,

15   serious doubt exists concerning the Plaintiff Blue's allegation that she will suffer irreparable harm should

16   the status quo be maintained.  Plaintiff Blue has offered nothing more than supposition in support of this

17   claim, and the evidence available does not bear it out.

18        Finally, a balance of the hardships by this Honorable Court in considering Plaintiff Blue's Motion

19   for Preliminary Injunction does not favor Plaintiff Blue.  Defendant Woffinden has utilized her stage

20   name in association with her adult entertainment performances since at least as far back as December 20,

21   2000, and significant secondary meaning in that mark has developed over the course of the past seven

22   years.  To take Defendant Woffinden's use of her stage name away now would deprive Defendant

23   Woffinden not only of the use of her valuable mark, but would require her to find another mark and

24   cultivate the same degree of secondary meaning in it.  Because both Defendant Woffinden and Plaintiff

25   Blue have been utilizing the name Violet Blue continuously and concurrently for at least seven years, it is

26   unlikely that the public would receive any benefit from a preliminary injunction being issued in this case

27   either.

28   //

## II.    FACTS AND PROCEDURAL HISTORY

The Defendant has no knowledge of the Plaintiff's occupation or the subject of her work outside of what has been stated in pleadings in this case or from what may have been gleaned from conversations with the Plaintiff concerning the subject of this suit.  The Defendant is therefore in no position at this juncture to contravene the Defendant's biography.

Defendant Woffinden does, of course, object to the Plaintiff's characterization of Woffinden's use of the name Violet Blue as unauthorized.  Woffinden did in fact utilized the name "Violet" for a period of time during the year 2000, prior to her adoption of the stage name Violet Blue, and that name was in fact affixed to work she did at that time that was released to the public at some time in 2001.  *Declaration of Ada Mae Woffinden in Support of Defendant Woffinden's Response in Opposition to Plaintiff's Motion for Preliminary Injunction* ("Woffinden Decl."), ¶ 5.  Moreover, Defendant Woffinden utilized the name "Violet Lust" as her stage name in only a single film released in 2001 prior to her adoption of the stage name Violet Blue.  *Woffinden Decl.* at ¶ 6.  However, as far back as December 20, 2000, Woffinden began to utilize the stage name Violet Blue in association with her acting and promotional appearances. *Woffinden Decl.* at ¶ 1.  Defendant Woffinden adopted Violet Blue as her stage name because it was her "favorite colored crayon by Crayola."  *Woffinden Decl.* at ¶ 7; *Costa Decl.*, Exh. P at p. 2.  Defendant Woffinden had no awareness of Plaintiff Blue's existence, nor knowledge of any mark utilized by Plaintiff Blue, when Defendant Woffinden adopted the stage name Violet Blue.  *Woffinden Decl.* at ¶ 10. Defendant Woffinden has used her Violet Blue stage name continually and consistently since she adopted it in 2000.  *Woffinden Decl.* at ¶ 14.

In January 2002, the adult industry news publication AVN recognized Woffinden's work as the adult entertainment actress known as Violet Blue during the year 2001 by awarding "Violet Blue" the Best New Starlet Award for the year 2001.  *Woffinden Decl.* at ¶ 12.  As an aid to understanding the import of this award in the adult entertainment industry, in 1996, five years prior to Woffinden's receipt of this award, the AVN Best New Starlet Award was given to Jenna Jameson, who is arguably one of the most famous adult entertainers in the world.  *Woffinden Decl.* at ¶ 13.  As discussed by the Plaintiff, it was nearly five years later that the Plaintiff allegedly discovered "journalists and other members of the public were confused by her [Plaintiff's] purported appearance at the "Exotic Erotic Ball".  *Plaintiff*

*Blue's Motion for Preliminary Injunction* (Dkt. #. 66) ("Plaintiff's Motion"), 3:28-4:2. Woffinden asked the producers of the Exotic Erotic Ball to use the word "Pornstar" be presented next to the name "Violet Blue" on the advertisements for the Exotic Erotic Ball so the public *would not* confuse Woffinden with the Plaintiff. *Defendant Woffinden's First Answer* (Dkt. # 6), 6:11-14. Defendant Woffinden has not, however, admitted awareness of any actual confusion occurring at that time. *See id*.

The Defendant has also never "acquiesced and apologized for the *misuse* of [Plaintiff] Blue's name" as claimed by the Plaintiff. *Plaintiff's Motion* at 4:16-17. Rather, the electronic mail referenced by the Plaintiff in support of this proposition offers apology *only* for *accidentally* using the Plaintiff's name. *Costa Decl.*, Exh. P. While Defendant Woffinden has stated that she is "finished doing boy/girl scenes", *id.*, a statement which is true, *Woffinden Decl.* at ¶ 17, Defendant Woffinden did not state in that electronic mail messaged that she would cease utilizing her stage name Violet Blue. In fact, as pointed out by the Plaintiff, Defendant Woffinden has continued to utilize the name Violet Blue.

Defendant Woffinden attempted to change her stage name from Violet Blue to "Violetta Blue" after the institution of this lawsuit, and announced the change in her stage name in a letter to the editor of Adult Industry News published on November 3, 2007. *Costa Decl.*, Exh. M (Court Dkt. No. 68-8). Defendant Woffinden made this conciliatory gesture in attempt to resolve this lawsuit. *Woffinden Decl.* at ¶ 23. In attempting to resolve this lawsuit in this manner, Woffinden admitted no wrongdoing. *Costa Decl.*, Exh. M. Importantly, Woffinden attempted this resolution without the advice of counsel. *Woffinden Decl.* at ¶ 23, s*ee also First Answer* (Filed *pro se* on November 13, 2007). As detailed by the Plaintiff's description of videos that continue to be released naming Woffinden as Violet Blue, and by Plaintiff's observation that the promoters of the Exotic Erotic Ball continue to refer to Woffinden as Violet Blue, Defendant Woffinden's attempt to change her name has not been accepted by the industry. *Plaintiff's Motion* at 6:16-7:6.

The Plaintiff filed suit against the Defendant on October 22, 2007 alleging trademark infringement and dilution in violation of 15 U.S.C. § 1125, along with allegations of misappropriation of name and likeness in violation of Cal. Civ. Code §3344 and unfair competition. *See Complaint* (Court Dkt. No. 1) ("Complaint"). On November 13, 2007, Defendant filed her *pro se* answer to Plaintiff's Complaint under threat of default. *See First Answer*. Plaintiff filed an Amended Complaint on February 4, 2008 naming

1  additional defendants, but maintaining the same causes of action alleged against Defendant as were

2  alleged in the Complaint.  *See Amended Complaint* (Court Dkt. No. 28)("Amended Complaint").

3  Defendant filed her answer to the Amended Complaint that same day.  *See Defendant's Answer to*

4  *Amended Complaint* (Court Dkt. No. 29)("Second Answer").  On April 3, 2008, nearly five months

5  following the institution of this suit and approximately 1.5 years following "the events that culminated in

6  the present lawsuit," Plaintiff Blue filed this motion for preliminary injunction seeking to bar Defendant

7  Woffinden's use of the stage name, Violet Blue.  *See Plaintiff's Motion*.

8                          **III.     <u>RESPONSE IN OPPOSITION</u>**

9  **A.     LEGAL STANDARD FOR PRELIMINARY INJUNCTION.**

10        "A preliminary injunction may be granted in a trademark case where the moving party

11  demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable

12  injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips

13  sharply in its favor."  *Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (internal

14  citations omitted).  These two formulations represent two points on a sliding scale in which the required

15  degree of irreparable harm increases as the probability of success decreases.  *Id.*, citing *A&M Records,*

16  *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (quotation marks and citation omitted).  They

17  are not separate tests but are "the outer reaches of a single continuum."  *Grocery Outlet*, 497 F.3d at 951.

18  On the one end of the scale the moving party must show (1) probable success, and (2) the possibility of

19  irreparable injury.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

20  On the other end of the scale, the moving party is required to demonstrate (1) that serious questions are

21  raised by the facts, and (2) that the balance of hardships are tipped sharply in his favor.  *Id*.  The Ninth

22  Cirucit has characterized a "serious question" as one to which the moving party has "a fair chance of

23  success on the merits."  *Id*.

24  **B.     PLAINTIFF BLUE'S CLAIMS OF TRADEMARK INFRINGEMENT AND UNFAIR**
25  **       COMPETITION ARE UNLIKELY TO SUCCEED ON THE MERITS.**

26        Defendant Woffinden does not dispute that, to prevail on her trademark infringement claim,

27  Plaintiff Blue must show that:  (1) she has a valid, protectable trademark, and (2) that Woffinden's use of

28  the mark is likely to cause confusion.  *Applied Information Sciences Corp. v eBAY, Inc.*, 511 F.3d 966,

969 (9th Cir. 2007). Defendant Woffinden similarly does not dispute the notion that registration of a mark constitutes *prima facie* evidence of the validity of a mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. *Id.*

> **1.     Plaintiff Blue has not established priority of use sufficient to claim seniority of ownership of Defendant Woffinden.**

In the United States, trademark rights arise through use. As Professor Thomas McCarthy explains, "[i]t is not registration, but only actual use of a designation as a mark that creates rights and priority over others." 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 16.1 (4th ed. 2007), *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 979 (9th Cir. 2006) ("Registration does not create a mark or confer ownership; only use in the marketplace can establish a mark"). Thus, Defendant Woffinden automatically obtained common law trademark rights in her stage name Violet Blue when she started utilizing this stage name on or about December 20, 2000.

Plaintiff Blue's registration of her own personal name as a trademark does not eliminate these rights. "Neither application for nor registration of a mark at the federal level wipes out the prior non-registered, common law rights of others." McCarthy on Trademarks at § 26:31. Thus, assuming *arguendo* that Plaintiff Blue was the first to use VIOLET BLUE as a trademark, the non-registered rights of Defendant Blue in that mark are *expressly preserved* by the Lanham Act. *Id.* (emphasis added). This means that Plaintiff Blue's registration of her VIOLET BLUE trademark on March 4, 2008 did not turn Defendant Woffinden's longstanding use of VIOLET BLUE into "infringing" or "illegitimate" use, as Plaintiff Blue has alleged.

The prima facie evidence provided by registration upon which Plaintiff Blue has heavily relied is not irrefutable. "A defendant may still attack the validity of a plaintiff's registered trademark, *such as by showing that someone else first used the mark in commerce or that the registration was flawed*." *Allied Information*, 511 F.3d 970 n.2 (emphasis added). "The plaintiff in an infringement action with a registered mark is merely given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise." *Id.* The precise issue in this case, which must in fact be proven by Plaintiff Blue, is that her use of the mark VIOLET BLUE to distinguish her goods and services from others predates Defendant Woffinden's use.

1    As Professor McCarthy states, "the rule of priority is that ownership and priority go to the party

2    who was first-to-use."  McCarthy on Trademarks at § 16.1.  This case presents an interesting question,

3    however.  VIOLET BLUE is not simply Plaintiff Blue's trademark, it has also been alleged to be her

4    given, personal name.  As stated by Professor McCarthy,

5        Personal names are placed by the common law into that category of noninherently
         distinctive terms which require proof of secondary meaning for protection.  Under the
6        traditional rule, personal names are regarded as in the same category as descriptive terms.
         This mans that they can be protected as trademarks only upon proof that through usage,
7        they have acquired distinctiveness and secondary meaning.

8    McCarthy on Trademarks at § 13.2.  Therefore, for all business symbols which are not inherently

9    distinctive, such as personal names, *the law requires that secondary meaning* (buyer association of

10   symbol with source) *be proven*.  *Id.* at § 13.34.  "Since rights by secondary meaning are gained solely by

11   public recognition and association, the test is not simply one of who used the mark first chronologically."

12   *Id.*  The touchstone is how the buying public has come to interpret *plaintiff's* mark.  *Id.* (emphasis in

13   original).  Therefore, "[f]or secondary meaning marks, the issue of priority and ownership is *not which

14   party first used the mark*, but which party *first achieved secondary meaning in the mark*."  *Id.*, *see also* 1-

15   2 Jerome Gilson, Gilson on Trademarks, § 3.03 (Matthew Bender, 2008) ("the issue of priority in most

16   cases where the plaintiff's mark is a descriptive term, surname or geographical term, is not whether

17   plaintiff began using the mark first but whether it attained secondary meaning before the latecomer began

18   using his mark").

19       As a descriptive term, establishing a personal name as a trademark is not nearly as easy as

20   establishing a trademark a mark that is inherently arbitrary and fanciful or suggestive.  In her discussion

21   of likelihood of confusion, Plaintiff Blue acknowledges that her mark is considered descriptive under

22   ordinary trademark rules, but argues that, because she enjoys a presumption that the purchasing public

23   perceives her mark to be inherently distinctive, she does not need to prove secondary meaning of her

24   mark.  *Plaintiff's Motion* at 18:4-8.  Plaintiff Blue offers also that her VIOLET BLUE mark has obtained

25   a presumption of secondary meaning through the near decade of its continuous and substantially exclusive

26   use (discussed more fully, *infra*).   But assuming for the sake of argument that Plaintiff Blue enjoys

27   *actual* secondary meaning *today*, without benefit of presumption, because her mark is acknowledged to be

28

1   descriptive as her given name, Plaintiff Blue must establish that her personal name had attained secondary

2   meaning *prior* to Defendant Woffinden commencing use of Violet Blue as her stage name.

3         Aside from her brief discussion with respect to the *current* alleged strength of her mark, Plaintiff

4   Blue has provided *absolutely no proof* that, as of December 20, 2000, her personal name had attained a

5   level of secondary meaning sufficient to provide Plaintiff Blue priority of use over Defendant Woffinden.

6   Rather, Plaintiff Blue has apparently relied *solely* upon a presumption that, due to her March 4, 2008

7   registration, her date of first use is May 1, 1999.  *See Costa Decl.*, Exh. V (Court Dkt. No. 68-17) (copy of

8   Plaintiff Blue's trademark application listing date of first use as May 1, 1999).  Neither the law of

9   trademarks nor the evidence in this case provides support for this presumption.

10        As has been noted, Defendant Woffinden began using her stage name "Violet Blue" at least as far

11  back as December 20, 2000, if not sooner.  *Woffinden Decl.* at ¶¶ 3-4.  Woffinden performed as Violet

12  Blue in no less than fifteen adult films during the following year 2001.  *Woffinden Decl.* at ¶ 11.  During

13  the year 2001, identification of Woffinden by the public as the adult entertainment actress Violet Blue had

14  achieved such notoriety that Woffinden was awarded AVN's Best New Starlet Award in 2002 for her

15  work in 2002.  *Woffinden Decl.* at ¶ 12.  This award is considered by adult performers to be the most

16  coveted award, and is given to the actress whom the industry believes has displayed the greatest amount

17  of potential and quality in her debut year.  *Woffinden Decl.* at ¶ 13.  Thus the evidence suggests that, by as

18  far back as 2002, Defendant Woffinden had established at least *some degree* of secondary meaning in her

19  stage name.

20        Plaintiff Blue claims that, "since at least as early as 1999, [Plaintiff Blue] has been *developing* her

21  reputation as a writer, lecturer, prolific blogger, podcaster, editor, newspaper columnist, and reporter

22  among other forms of media and education."  *Plaintiff's Motion* at 13-15 (emphasis added).  Plaintiff Blue

23  also claims a number of achievements in her career such as being featured in the July 22, 2005 issue of

24  the *Wall Street Journal*, the August 21, 2007 issue of *Forbes* magazine, and the July 2007 issue of *O: The

25  Oprah Magazine*.  *Plaintiff's Motion* at 2:21, 3:9-14.  Plaintiff Blue avers that she "has become widely

26  recognized as a premier sexual health commentator in California, throughout the country, and throughout

27  the world."  *Id.* at 2:15-16.  For the purposes of answering the question of priority, however, Plaintiff

28  Blue's assertions beg more questions than they answer.  Chief among these questions is *when* all of this

1    purported notoriety began, and how long following her alleged adoption of *her own name* as a mark in

2    1999 it took for the public to recognize *her* as a *distinct source* of the goods and services she claims to

3    provide.

4         In actuality, much of the evidence provided by Plaintiff Blue seems to suggest that her notoriety

5    was gained only after approximately six or seven years following her first use of her name as a mark.  For

6    instance, Plaintiff Blue alleges that the events that ultimately culminated in the instant lawsuit began in

7    October, 2006.  *Plaintiff's Motion* at 3:28-4:3.  Thus, by Plaintiff Blue's own admission, the events which

8    allegedly form the basis of this lawsuit began to occur *more than five years after* Defendant Woffinden

9    began using her Violet Blue stage name.  Therefore, had Plaintiff Blue's mark developed as much

10   notoriety as Plaintiff Blue has alleged *before* October 2006, the "events" that precipitated the instant

11   lawsuit would have presumably occurred much sooner.  Moreover, had Plaintiff Blue developed

12   secondary meaning in her mark as an author and Internet persona, one would reasonably conclude that,

13   when Defendant Woffinden *did* adopt the stage name Violet Blue in December 2000, "confusion" would

14   have occurred almost immediately.  Ssuch recognition of Plaintiff Blue's mark in mainstream and Internet

15   authorship likely would have resulted in at least *some* indication of her existence in an Internet search.  As

16   it happened, Defendant Woffinden, as demonstrated by evidence submitted by the Plaintiff, conducted a

17   search of the Internet for "violet blue," and "nothing came up but flowers."  *Woffinden Decl.* at ¶ 8; *Costa*

18   *Decl.*, Exh. P at p. 2.

19        By virtue of the registration of the mark VIOLET BLUE, Plaintiff Blue enjoys only a rebuttable

20   presumption of priority in her favor.  Regardless of Plaintiff Blue's registration of this mark, however,

21   Defendant Woffinden, though at least seven years of continuous use, has developed ample common law

22   rights in the mark VIOLET BLUE as well.  Moreover, Defendant Woffinden is able to point with

23   particularity to the time at which she both began using her stage name and mark, and can also point to a

24   time at which her stage name and mark gained recognition as associated with the services Woffinden

25   provides.  *Woffinden Decl.* at ¶¶ 3, 11-16.  Plaintiff Blue has made no such showing, and has instead

26   relied upon a presumption created by a registration applied for in March 2007 and issued in March 2008.

27   Trademark law is not so odd as to allow the unusual result Plaintiff Blue desires, especially when, at best,

28   the Plaintiff has shown only many years of legitimate concurrent use.  Because Plaintiff Blue has not

1  established the most basic requirement for an infringement action – priority of use over Defendant

2  Woffinden – Plaintiff Blue is simply unable to demonstrate a likelihood of success on the merits for her

3  trademark infringement, trademark dilution, and unfair competition claims.

**2.    Even if Plaintiff Blue is able to establish priority of use, Plaintiff has presented no credible or admissible evidence of a likelihood of confusion resulting from Plaintiff's and Defendant's concurrent use.**

6  Plaintiff Blue has alleged the existence of a likelihood of confusion between Plaintiff Blue's use of

7  her mark VIOLET BLUE and Defendant Woffinden's use of her stage name, Violet Blue.  In the Ninth

8  Circuit, courts are charged with employing the multi-factor *Sleekcraft* analysis to determine likelihood of

9  confusion.  *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  In determining

10  whether confusion between related goods is likely, the following factors are relevant:  (1) strength of the

11  mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5)

12  marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser;

13  (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  *Id*.  This

14  list is not exhaustive – other variables may be relevant depending upon the particular circumstances of a

15  given case.  *Id.* at 348 n.11.

A.    Strength of the Mark.

17  The strength of a given mark rests on its distinctiveness.  *Miss World (UK), Ltd. v. Mrs. America

18  Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988).  The scope of protection afforded a strong mark is

19  greater than that afforded a weak one.  *Id*.  In determining the distinctiveness of a mark, one looks to the

20  degree to which the public associates the mark with a particular source.  *Id*.  Plaintiff Blue has correctly

21  asserted that the strength of any given mark is judged upon a sliding scale and, as discussed *supra*,

22  Plaintiff Blue's mark is considered descriptive because it is a personal name.  McCarthy on Trademarks at

23  § 13.2.  What is missing from Plaintiff Blue's analysis, however, is acknowledgment of the extensive

24  secondary meaning that *Defendant Woffinden* has cultivated in the stage name "Violet Blue."

25  This is not to say that Woffinden's use of Violet Blue as a stage name detracts from whatever

26  strength may be ascribed to Plaintiff Blue's VIOLET BLUE mark *per se*.  However, assuming, *arguendo*,

27  that Plaintiff Blue's mark does have some degree of strength, any such strength in her mark at

28  distinguishing her goods or services from those of others would apparently be in the arena of authorship

of educational materials in print and on the Internet. *Plaintiff's Motion* at 2:12-3:19 (describing Plaintiff Blue's career as a "Sex-Positive Writer, Blogger, and Educator"). Defendant Woffinden, however, utilizes her mark in the areas of adult entertainment acting, modeling and burlesque, as well as in autograph signings and public appearances to promote herself and her work. *Woffinden Decl.* at ¶ 16; *First Answer* at ¶ 9, 3:16-4:1. The respective arenas in which Plaintiff Blue and Defendant Woffinden utilize their respective marks therefore do not coalesce. In legal parlance, Defendant Woffinden's goods and services are noncompetitive with those of Plaintiff Blue.

"Strong" marks are given "strong" protection – protection over *a wide range of related products and services* and variations on visual and aural format. McCarthy on Trademarks §11:73 (emphasis added). Plaintiff Blue's mark must therefore be strong indeed to cross from the areas in which she utilizes her mark and into the area in which Defendant Woffinden utilizes her Violet Blue mark. Plaintiff Blue's assertion is that the strength of her mark is presumed to be inherently distinctive based upon her registration of the mark is accurate, but this does not end the inquiry, nor does registration establish that her mark is a particularly strong mark. *See Miss World*, 856 F.2d at 1448-49 (While Plaintiff's mark was registered and incontestable under the Lanham act, this did not establish that Plaintiff's mark was particularly strong). It is *a consumer's mental association* of the mark with the source of the product that determines the strength of a mark. *Id*. at 1448 n.4.

While Plaintiff Blue may have, for the sake of argument, described many potential reasons for the possibility of *current* recognition by the public of Plaintiff Blue as an author, etc., she has provided very little to establish that her use of her personal name has cultivated such mental association in the general public that it is strong enough to cross from her sphere of goods and services and into that of Defendant Woffinden. Plaintiff Blue has provided *no* evidence that *anyone* associates her or her mark with acting, burlesque or modeling. With respect to these uses, Plaintiff Blue's mark is not particularly strong, either directly or by virtue of its strength in any other area. As such, this factor does not weigh strogly in Plaintiff Blue's favor.

B.    Proximity of the Goods.

For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. *Sleekcraft*, 599

F.2d at 350. The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion. *Id*. Plaintiff Blue has expressed the precise reason why the goods and services of Plaintiff Blue and Defendant Woffinden are *not* proximate. Plaintiff Blue is an author whose "goods and services are designed to educate individuals with information about sexual health, sexual pleasures, pornography and technology." *Plaintiff's Motion* at 13:15-16. While Plaintiff Blue has provided no evidence that she "educates individuals" with respect to "pornography," assuming *arguendo* the purpose of Plaintiff Blue's goods and services to be such, these purposes are quite far afield from Defendant Woffinden's use of Violet Blue as a stage name for adult entertainment performances.

Plaintiff Blue also provides the best argument for *why* Plaintiff Blue's goods and services are not proximate to those of Defendant Woffinden. According to Plaintiff Blue's own admission, the "goods and services offered by the hard-core porn industry and [Defendant] Woffinden are *antithetical* to the safe-sex messages and healthy-information [*sic*] provided by Blue under her VIOLET BLUE trademark." *Plaintiff's Motion* at 14:4-7 (emphasis added). To again quote Professor McCarthy, "[t]o decide whether trademark infringement exists in use of marks on noncompeting goods or services, one cannot go wrong by always phrasing the problem in terms of the ultimate question: Is the reasonably prudent purchaser likely to be confused not only as to source, but also as to sponsorship, affiliation or connection?" McCarthy on Trademarks at § 24:1. Even assuming that Plaintiff Blue's goods and services and those of Defendant Woffinden are "sex related," consumers are presumably bright enough to understand the "antithesis" suggested by Plaintiff Blue that exists between their respective goods and services. Plaintiff Blue's own argument thus belies the proximity of the goods and services that Plaintiff Blue's argument is designed to suggest. There can be no "high degree of association" between two antithetical products. As such, this factor does not weigh in Plaintiff Blue's favor.

C.    Similarity of the Marks.

Defendant Woffinden concedes that her stage name, Violet Blue, and Plaintiff Blue's VIOLET BLUE mark are identical.

D.    Evidence of Actual Confusion.

Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely. *Sleekcraft*, 599 F.2d at 352. Proving actual confusion is difficult, however, and the

1  courts have often discounted such evidence because it was unclear or insubstantial. "Evidence of only a

2  small number of instances of actual confusion can be dismissed as inconsequential or *de minimis*."

3  McCarthy on Trademarks at § 23:14, *citing McGraw-Hill Pub. Co. v. American Aviation Associates*, 117

4  F.2d 293, 295 (App. D.C. 1940). "Evidence of actual confusion of a very limited scope may be dismissed

5  as *de minimis*:  'Probable confusion cannot be shown by pointing out that at someplace, at some time,

6  someone made a false identification.'"  *Id.*, quoting *DeCosta v. Columbia Broadcasting System, Inc.*, 520

7  F.2d 499 (1st Cir. 1975).  The likelihood of confusion must be demonstrated by more than merely an

8  occasional misdirected letter. *Everest & Jennings, Inc. v. E & J Mfg. Co.*, 263 F.2d 254, 260 (9th Cir.

9  1958).

10       Plaintiff Blue claims to have discovered, in *October 2006*, that "journalists and other members of

11  the public were confused by her purported appearance at the 'Exotic Erotic Ball.'"  *Plaintiff's Motion* at

12  4:1-3.  Yet Plaintiff Blue provides no credible evidence of this assertion.  Plaintiff Blue did discuss on her

13  Web site what she claims are purported communications between her and three others who were,

14  according to Plaintiff Blue's account, asking if Plaintiff Blue was appearing at the Exotic Erotic Ball.

15  *Costa Decl.*, Exh F (Court Dkt. No. 67-6) at pp. 1-2.  However, this purported evidence amounts to at

16  *least* double hearsay.  Plaintiff Blue's statement concerns the statements of three others concerning those

17  others' states of mind of being confused by Defendant Woffinden's Violet Blue stage name, and these

18  statements are being offered for the truth of the matter asserted.  This purported evidence is therefore in

19  no way admissible or strong enough to demonstrate that these individuals, whoever they may be, were in

20  fact suffering from actual confusion.

21       Additionally, Plaintiff Blue has offered a vignette concerning a host of an "on-line tech program,"

22  Leo LaPorte, who stated that he had mistakenly "mocked" Plaintiff Blue under the belief that Plaintiff

23  Blue was Defendant Woffinden.  This purported "confusion," however, is evidenced by what amounts to

24  *triple* hearsay.  In this case, the evidence offered is a newspaper article from sfgate.com reporting on an

25  email received by an individual named Patrick from Mr. LaPorte that Patrick has apparently claimed to be

26  from Mr. LaPorte.  *Costa Decl.*, Exh. I (Court Dkt. No. 68-1) at p. 3.  Hence, it is a statement by the

27  author of the article concerning Patrick's statement of validity of the email message containing the

28  statement of Mr. LaPorte.  Strangely enough, even if this large evidentiary issue did not exist, this

purported statement of Mr. LaPorte suggests that Mr. LaPorte, an individual apparently astute enough in the arena of technology to host an Internet program on the topic, was *unaware* of Plaintiff Blue's existence, and was instead more familiar with Defendant Woffinden and her stage name as used in adult entertainment. *Plaintiff's Motion* at 5:10-11. Regardless, this evidence is inadmissible and wholly fails to support Plaintiff Blue's claim that the evidence shows actual confusion.

Plaintiff Blue has also offered as evidence of actual confusion an electronic mail message from an individual named Dave Pounder dated October 6, 2007. *Plaintiff's Motion* at 5:13-23. As with her other purported evidence, not only is this electronic mail message hearsay, it suggests that Mr. Pounder was unaware that Plaintiff Blue is a writer for the San Francisco Chronicle and knew only of Defendant Woffinden's existence. This evidence suffers the same malady as Plaintiff Blue's purported evidence of the incident involving Mr. LaPorte, and, if true, suggests more that Mr. Pounder was not confused, but was only aware of Defendant Woffinden.

Finally, Plaintiff Blue has attempted to offer Defendant Woffinden's statements made in her First Answer as evidence of actual confusion.[1] *Plaintiff's Motion* at 14:28-15:8. This alleged evidence amounts to no evidence at all. Preventing confusion by adding "Pornstar" next to her stage name to *prevent possible confusion* is not evidence of actual confusion. Defendant Woffinden's unsuccessful attempt to change her stage name to Violetta Blue also provides no evidence of actual confusion, and represents another preventative measure taken by Defendant Woffinden after the institution of this lawsuit.[2] The only evidence of actual confusion that Defendant Woffinden *may* have offered is that she has received electronic mail in the past that was for Plaintiff Blue. *Plaintiff's Motion* at 21:4-5. However,

---

[1] Plaintiff Blue's continued discussion of the First Answer is improper. As stated in prior pleading, pleadings filed by *pro se* litigants are liberally construed, and are held to less stringent standards than are applied to pleadings prepared by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Moreover, as Defendant has also previously stated, "[i]t is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent." *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956). As such, by amending her Complaint, Defendant's Second Answer was necessitated because the First Answer would, at that point, be an answer to a non-existent document.

[2] Moreover, Plaintiff Blue's introduction of evidence of Defendant Woffinden's attempted stage name change runs afoul Fed. R. Evid. 408 (Evidence of furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim is inadmissible.)

while Defendant Woffinden provided no precise number of such messages she had received, she also stated in her First Answer that people *very rarely* confuse Defendant Woffinden and Plaintiff Blue and only *very recently*. *First Answer* at 12:1-2. By inference, Defendant Woffinden has therefore evidently received very few emails for Plaintiff Blue.

The actual confusion Plaintiff Blue alleges, if believed, amounts to only five instances of actual confusion over the course of *more than six and one-half years of concurrent use* of the name Violet Blue by both Plaintiff Blue and Defendant Woffinden. Even if Defendant Woffinden had experienced a similar number of instances of actual confusion during that period, this amount of actual confusion is increased insubstantially. For a mark that Plaintiff Blue has alleged to be "famous," this degree of "actual confusion" is so negligible as to be *de minimis*. Plaintiff Blue has simply not demonstrated any evidence sufficient to tip this factor in her favor.

E.    Marketing Channels Used.

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. While Plaintiff Blue and Defendant Woffinden admittedly market, sell and distribute their goods though one similar channel, the Internet, just as television advertising is directed toward particular demographic groups, Plaintiff Blue and Defendant Woffinden do not utilize the Internet to reach the same consumers. As discussed already, Plaintiff Blue targets those interested in educating themselves. Defendant Woffinden, on the other hand, markets material to those individuals seeking adult entertainment. Moreover, just as there are different channels on a television, there are different Web pages on the Internet. To utilize the same "marketing channel" on the Internet, then, Plaintiff Blue's marketing material would necessarily need to appear in the results of a search as Defendant Woffinden's marketing material, and would have to do so in such a way as to be indistinguishable. Plaintiff Blue has provided no evidence that this occurrence has ever actually occurred. While individual consumers will have access to the works of both Plaintiff Blue and Defendant Woffinden as Plaintiff Blue has suggested, *Plaintiff's Motion* at 15:21-23, presuming that such a consumer would be aware of both is nothing more than a presumption. This factor therefore does not favor Plaintiff Blue nearly as heavily as Plaintiff Blue has alleged.

1

        F.      Type of Goods and Degree of Care.

2

     Plaintiff Blue has alleged that, because Plaintiff Blue distributes many of her goods and services

3

for free or at a relatively low cost, a typical consumer will exercise a low degree of care when considering

4

her goods and services *vis-a-vis* those of Defendant Woffinden.  Plaintiff Blue cites *Sleekcraft* in support

5

of this proposition.  In that case, however, *both parties* produced high quality, expensive boats for sale to

6

consumers – the same goods.  *Sleekcraft*, 599 F.2d at 353.  In this case, Plaintiff Blue and Defendant

7

Woffinden produce two totally different goods and services – writings and educational materials for the

8

former, adult entertainment for the latter.  Even assuming both Plaintiff Blue and Defendant Woffinden

9

provide their goods and services very cheaply, simply because these goods or services are cheap does not

10

mean that an average consumer will be so careless as to confuse written works with adult entertainment

11

performances.  The goods and services remain different, regardless of the price.  As such, this factor does

12

not heavily favor Plaintiff Blue either.

13

        G.      Defendant's Intent in selecting the mark.

14

     Plaintiff Blue alleges, without providing any evidence in support of the assertion, that Defendant

15

Woffinden knowingly adopted a mark similar to Plaintiff Blue's mark.  This assertion is simply untrue.

16

As demonstrated by evidence offered and uncontroverted by Plaintiff Blue, Defendant Woffinden had *no*

17

*knowledge of Plaintiff Blue's existence* when Defendant Woffinden adopted "Violet Blue" as Woffinden's

18

stage name.  *Woffinden Decl.* at ¶¶ 8-10; *see also Costa Decl*., Exh. P, p.2.  Defendant Woffinden adopted

19

Violet Blue as her stage name because it was her favorite colored crayon by Crayola.  *Woffinden Decl.* at

20

¶ 7; *Id.* at Exh. P, p. 2.  While Defendant Woffinden did utilize the names "Violet" and "Violet Lust"

21

prior to her adoption of Violet Blue as her stage name, Defendant Woffinden has utilized Violet Blue as

22

her stage name continually and consistently since she adopted it.  *Woffinden Decl.* at ¶ 14.  Additionally,

23

though Defendant Woffinden did tell Plaintiff Blue that she was finished doing "Boy/Girl porn scenes,"

24

which is in fact true, Defendant Woffinden in no way stated that she would cease using the stage name

25

Violet Blue.  *Woffinden Decl.* at ¶ 17; *Costa Decl.*, Exh. P at p. 2.  This evidence of offered by Plaintiff

26

Blue simply does not substantiate her claims.

27

     Plaintiff Blue also alleges "Defendant [Woffinden] was clearly aware of the use being made by

28

Plaintiff Blue when she re-adopted the name 'Violet Blue.'"  This argument assumes, without offering

any proof, that Defendant Woffinden *abandoned* her long-standing rights in and to the name Violet Blue in favor of "Violetta Blue." Moreover, Plaintiff Blue's argument suggests that Defendant Woffinden effectuated this abandonment in such a way as to destroy the years of secondary meaning she has cultivated in the name Violet Blue amongst the general public such that she would have to *re-adopt* the name Violet Blue. The evidence does not support this assertion because, when Defendant Woffinden attempted to change her name *only slightly* to "Violetta Blue," her attempt failed. Rather, the evidence suggests that Defendant Woffinden's "new name" simply did not "take" in the industry, as Plaintiff Blue has so aptly demonstrated, and *the public* continues to recognize Defendant Woffinden as Violet Blue. Thus, no "re-adoption" occurred because it did not need to occur. Defendant Woffinden's "re-adoption" is better characterized as *continued* use.

Plaintiff Blue provides no evidence that this factor weighs in her favor, and consideration of all the evidence available in fact suggests the opposite. The weight of this factor does not favor Plaintiff Blue.

### H.     Likelihood of expansion of product lines.

For Plaintiff Blue to demonstrate a balance of this factor in her favor, Plaintiff Blue must demonstrate a *strong possibility* that either she or Defendant Woffinden will expand their respective uses of the Violet Blue name to compete with the other. *Sleekcraft*, 599 F.2d at 354. In Plaintiff Blue's assertion that this factor *should* be balanced in her favor, Plaintiff Blue does not aver such a strong possibility of expansion. Instead, Plaintiff Blue has averred only that because Defendant Woffinden's stage name is utilized on goods "closely in the market to [Plaintiff] Blue's work," such an expansion "would cause immediate and further harm to [Plaintiff] Blue." In support of this assertion, Defendant alleges that Defendant Woffinden has "already begun to expand her use of the stage name 'Violet Blue' into the fields of sexual information and education and technology and geek culture." But the only evidence that Plaintiff Blue has offered is of *two adult entertainment videos*. Woffinden has not performed in any traditional form of boy/girl adult entertainment since April 7, 2007. *Woffinden Decl.* at ¶ 17. Defendant Woffinden does not and has no plans to enter the arenas of sexual information and education, technology, or geek culture utilizing the name Violet Blue. *Woffinden Decl.* at ¶ 18. Moreover, Defendant Woffinden has not herself released or authorized any others to release any DVD and VHS videos in which Defendant Woffinden is featured since this lawsuit began. *Woffinden Decl.* at ¶ 19.

1    Defendant Woffinden does not own the copyrights to many of the films in which she was performed, and

2    signed model releases allowing for the copyright holder's use of her name and likeness. *Woffinden Decl.*

3    at ¶¶ 20-21. Defendant Woffinden therefore has no control over how the copyright holder uses works in

4    which she has performed. *Woffinden Decl.* at ¶ 22. The "latest moves" allegedly made by Defendant

5    Woffinden have therefore not been made by Defendant Woffinden at all. Because Plaintiff Blue has not

6    and cannot produce any evidence to the contrary, this factor does not weigh in her favor.

7         **3.    Plaintiff Blue has failed to establish a likelihood of success on the merits for her
               trademark infringement or dilution claims.**

8

9         Plaintiff Blue is unable to establish priority of ownership over Defendant Woffinden, and is unable

10   to demonstrate that a balance of the *Sleekcraft* factors weighs in Plaintiff Blue's favor. Plaintiff is

11   therefore unlikely to succeed in her trademark infringement or dilution claims on the merits.

12        **C.    PLAINTIFF BLUE IS UNLIKELY TO SUCCEED ON HER DILUTION CLAIM.**

13        The Trademark Dilution Act provides, in its entirety, the following:

14        Subject to the principles of equity, the owner of a *famous mark* that is distinctive,
          inherently or through acquired distinctiveness, shall be entitled to an injunction against
15        another person who, *at any time after the owner's mark has become famous, commences
          use of a mark* or trade name in commerce that is likely to cause dilution by blurring or
16        dilution by tarnishment of the famous mark, regardless of the presence or absence of
          actual or likely confusion, of competition, or of actual economic injury.
17

18        28 U.S.C. § 1125(c)(1) (emphasis added). "Dilution is a cause of action invented and reserved for

19   a select class of marks -- those marks with such powerful consumer associations that even non-competing

20   uses can impinge their value." *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1179-80 (9th Cir.

21   2007). "Injunctive relief is available under the Federal Trademark Dilution Act if a plaintiff can establish

22   that (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the

23   defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a

24   likelihood of dilution of the distinctive value of the mark." Id. at 1180. Even a plain language reading of

25   § 1125(c) demonstrates quite quickly that this statute does not apply in this case.

26        With respect to the fame element, Plaintiff Blue's mark simply does not have the "powerful

27   consumer association" such that her mark should be considered famous.

28

1
2
3
4
5
6

First and foremost, there can be no violation of the Act if the plaintiff's mark is not famous. It can be strong or weak, infamous or beloved, but if it is not famous there is simply no hope under federal law. By its terms, Section 43(c) [15 U.S.C. § 1125(c)] simply does not apply. Under the statute, federal dilution protection is reserved for a small number of truly renowned marks, the Supermarks. These marks must be truly well-known and distinctive and in substantially exclusive use, and will typically be recognized by their powerful consumer product brand name association. To be famous, a mark must be "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."

7
8
9
10
11
12
13

2-5A Gilson on Trademarks at § 5A.01; *See also* 15 U.S.C. § 1125(c)(2)(A). The statute does provide non-exclusive factors to consider when determining fame, including (1) the duration, extent, and geographic reach of advertising a publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods and services offered under the mark; (3) the extent of actual recognition of the mark, and (4) whether the mark has been registered on the Principal Register. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). Consideration of these factors does not establish that Plaintiff Blue's VIOLET BLUE trademark is, in fact, famous.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Blue claims that her mark is famous because she "has been recognized as a premier sexual health commentator and writer throughout California, throughout the country, and throughout the world." *Plaintiff's Motion* at 19:9-11. As evidence of this claim, Plaintiff Blue cites to the fact that she writes a weekly column for the Web site of *The San Francisco Chronicle*, which attracts 4 million unique visitors a month. This fact is unimpressive, however, considering that the population of the San Francisco Bay Area is reportedly 7.2 million according to the Wikipedia entry for San Francisco, California available online at <http://en.wikipedia.org/wiki/San_Francisco%2C_California> (last viewed April 18, 2008). It is also unimpressive simply because Plaintiff Blue has provided no proof whatsoever that the alleged viewership is attributable to *her column* in *The San Francisco Chronicle*, that any of those alleged 4 million unique visitors have *any knowledge* of Plaintiff Blue, or that any of those 4 million alleged viewers *actually exist*. Plaintiff Blue also claims fame stemming from "recognition" by *The Wall Street Journal* and *Forbes Magazine*. *Plaintiff's Motion* at 19:14-17. Recognition on limited occasions by the press is simply not enough to establish that Plaintiff Blue's mark is so widely recognized by the general consuming public that the name Violet Blue has become synonymous with her goods and services (see incidents reported by Plaintiff Blue concerning Mr. LaPorte and Mr. Pounder, *supra*). Plaintiff Blue also

cites her authorship of seventeen books, without any proof of advertising expenditures for these books, where these books are sold, the number of said books in circulation or purchased, or gross revenue achieved for the sales of these books. There are literally hundreds of thousands, if not *millions*, of people in the world that have written books. Very few become as famous as Stephen King, John Grisham, or J.K. Rowling.

Moreover, if Plaintiff Blue's mark were as famous as she claims, presumably Plaintiff Blue would have been able to provide *ample* evidence of *actual confusion* in the marketplace. As it happened, even if the purported evidence were admissible and accepted as evidence of actual confusion, as discussed *supra*, she has provided only five alleged instances of "actual confusion" over the *seven years* of Plaintiff Blue and Defendant Woffinden's concurrent use of the Violet Blue name.

Plaintiff Blue also claims that Defendant Woffinden began using Violet Blue as her stage name *after* Plaintiff Blue's mark became famous. As discussed *supra*, Plaintiff Blue will likely be unable to establish that her mark had achieved *secondary meaning* in the marketplace prior to Defendant Woffinden's use of the VIOLET BLUE mark. If Plaintiff Blue has the degree of difficulty in establishing *priority* over Defendant Woffinden, her likelihood of proving "fame" as of December 2000 when Defendant Woffinden began using the name Violet Blue is next to impossible. Plaintiff Blue claims, without any substantiation, that Plaintiff Blue was already well-established as a writer and commentator as of December 20, 2000. This does not prove fame.

Even if this Court does accept that Plaintiff Blue has established *priority*, Plaintiff Blue still must overcome the argument that her mark *has not, even now, achieved fame*. The truth of the matter is that, even if Plaintiff Blue can establish fame, every piece of evidence in this case demonstrates that Defendant Woffinden began to utilize her mark long before Plaintiff Blue's mark achieved any alleged fame. While famous authors such as Stephen King, John Grisham, and J.K. Rowling may be able to maintain a dilution claim against another author utilizing those names, Plaintiff Blue cannot. Plaintiff Blue cannot succeed on her claim of dilution.

### D. PLAINTIFF BLUE IS UNLIKELY TO SUCCEED ON HER CLAIM OF UNAUTHORIZED USE OF PLAINTIFF BLUE'S NAME AND LIKENESS.

The California Right of Publicity statute states as follows:

1
2
3
4

> Any person who *knowingly* uses another's name, voice, signature, photograph, or likeness, in any manner or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent, ... shall be liable for any damages sustained by the person or persons injured as a result thereof.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Cal. Civ. Code § 3344(a) (emphasis added).  By the plain language of the statute, to prevail on this claim, Plaintiff Blue must show that Defendant Woffinden adopted the name Violet Blue *knowingly*.  Plaintiff Blue alleges that Defendant Woffinden did in fact adopt the name Violet Blue with knowledge of Plaintiff Blue's use of the name.  Not only is this conclusory argument wholly unsubstantiated by *any* evidence, it is in fact *contradicted* by Plaintiff Blue's *own evidence*.  Defendant Woffinden conducted a search of the Internet for "violet blue," and "nothing came up but flowers."  *Costa Decl.*, Exh. P at p. 2; *Woffinden Decl.* at ¶ 9.  Defendant Woffinden adopted Violet Blue as her stage name because it was her "favorite colored crayon by Crayola."  *Woffinden Decl.* at ¶ 7; *Costa Decl.*, Exh. P at p. 2.  Morover, Defendant Woffinden had no awareness of Plaintiff Blue's existence, nor knowledge of any mark utilized by Plaintiff Blue, when Defendant Woffinden adopted the stage name Violet Blue.  *Woffinden Decl.* at ¶ 10.  Plaintiff Blue also again attempts to argue that Defendant Woffinden's "re-adoption" of the stage name Violet Blue after the initiation of this suit is evidence that Defendant Woffinden adopted Plaintiff Blue's name "knowingly."  As discussed *supra*, Defendant Woffinden's choice to continue using her Violet Blue mark after her offer to resolve this suit by attempting to change her name does not have the evidentiary weight that Plaintiff Blue ascribes to it.

20
21
22
23
24

The only evidence in this case is that Defendant Woffinden, without any knowledge of Plaintiff Blue's existence, used and continued to legitimately use a mark for a period of *at least six years*, as has been *admitted* by Plaintiff Blue, before the "events" that precipitated this suit allegedly began to occur. The evidence in this case shows that Plaintiff Blue is unlikely to prevail on her claim of unauthorized use of Plaintiff Blue's name and likeness by Defendant Woffinden.

25
26

### E.   PLAINTIFF BLUE WILL NOT SUFFER IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS NOT ISSUED.

27
28

Plaintiff Blue alleges that, because a likelihood of confusion "is at the highest level possible" in this case, this Honorable Court should recognize irreparable harm will occur should a preliminary

1    injunction not issue.  Furthermore, Plaintiff Blue claims that she is entitled to a presumption of irreparable

2    harm as a result of her "demonstration" of a "high likelihood of confusion."  Defendant Woffinden will

3    not again discuss the myriad reasons why a likelihood of confusion does not exist in this case or again

4    contest the evidence Plaintiff Blue has presented to support her likelihood of confusion claim.  Suffice it

5    to say that, for *all* of the reasons discussed above, Plaintiff Blue has made an insufficient showing of

6    likelihood of confusion, and therefore is not entitled to any presumption of irreparable harm.

7           Plaintiff Blue also avers that she will lose control of her reputation as a result of Defendant

8    Woffinden's use of the Violet Blue name.  What Plaintiff Blue fails to recognize or acknowledge is that

9    Defendant Woffinden and Plaintiff Blue were peacefully coexisting for at least *six years*, each utilizing

10   the name Violet Blue in her respective sphere, before any "confusion" alleged by Plaintiff Blue began to

11   occur.  During that period, Defendant Woffinden openly and notoriously utilized her stage name, "Violet

12   Blue."  *Woffinden Decl.* at ¶ 14.  Presumably, "damage" to Plaintiff Blue's reputation would have

13   occurred during that period, as well, but Plaintiff Blue offers no evidence of this.  More importantly,

14   Defendant Woffinden has no plans to enter into Plaintiff Blue's arena of education or authorship utilizing

15   the name Violet Blue.  *Woffinden Decl.* at ¶ 18.  Because their respective spheres of commerce do not

16   coincide, it is unlikely that Plaintiff Blue will suffer "irreparable harm" should the *status quo* be

17   maintained.

18          Plaintiff Blue offers *no evidence* of any irreparable harm that may occur should a preliminary

19   injunction not be granted in this case.  Therefore, even if this court were to find that Plaintiff Blue's

20   likelihood of success on the merits *is high*, Plaintiff Blue has failed to demonstrate *any* irreparable harm

21   from Defendant Woffinden *continuing* to utilize her mark, as she has for the past seven years, until this

22   suit is resolved on the merits.

23          **F.    A BALANCE OF HARDSHIPS DOES NOT FAVOR PLAINTIFF BLUE OR THE
               PUBLIC INTEREST IN THIS CASE.**

24

25          Plaintiff Blue argues "the balance of hardships in this case tips in favor of Plaintiff."  Plaintiff

26   Blue asserts this to be the case because there is little hardship in Defendant Blue changing her stage name.

27   Defendant Woffinden has been using her stage name for at least seven years and has developed

28   substantial secondary meaning in that name.  When she *did* attempt to change her name during the

1   pendency of this suit, the change simply did not work.  Defendant Woffinden, as Violet Blue, won the

2   Best New Starlet Award in January of 2002.  Defendant Woffinden has performed as Violet Blue in over

3   150 adult entertainment films since she adopted that name.  *Woffinden Decl.* at ¶ 15.  Consumers of adult

4   entertainment, and apparently also technology commentators such as Mr. LaPorte who are well-known in

5   that area, associate "Violet Blue" with the goods and services of Defendant Woffinden.  Defendant

6   Woffinden would suffer *substantial* hardship in changing her stage name at this point in the game.

7   Plaintiff Blue's underestimation of the strength of Defendant Woffinden's mark aside, Plaintiff Blue can,

8   in no way, prove the contrary.

9          Plaintiff Blue claims "harm" by "the growing false-association between [Plaintiff Blue] and

10  Defendant [Woffinden] in an increasing segment of the population" has already occurred.  Plaintiff Blue

11  provides no proof of this claim.  After seven years of coextensive use, it is surprising that the false

12  association alleged by Plaintiff Blue is still growing and has not already matured, especially in light of her

13  averment that her mark is and has been famous for all of that time.

14         With respect to hardship suffered by the public, for at least seven years the public has been

15  exposed to Defendant Woffinden's mark and Plaintiff Blue's mark in continuous and concurrent use in

16  relation to their respective goods and services.  To claim that the public interest in preventing confusion as

17  to the sources of Plaintiff Blue's or Defendant Woffinden's respective goods and would be served *now* by

18  a preliminary injunction is wholly specious.  Because the only "confusion" alleged by Plaintiff Blue has

19  been very recent, entirely sporadic, and *de minimus*, the public has already adapted to and accepted that

20  there is an author named Violet Blue and an adult entertainer named Violet Blue.

21         The balance of hardships in this case does not provide one iota of favoritism toward Plaintiff Blue.

22                              **IV.    CONCLUSION**

23         Plaintiff Blue is simply unable to establish a likelihood of success on the merits of any of her

24  claims.  With respect to her trademark claims, not only is Plaintiff Blue unable to demonstrate priority in

25  ownership of her personal name as a mark *vis-a-vis* Defendant Woffinden, Plaintiff Blue's own evidence

26  belies the existence of a likelihood of confusion between Plaintiff Blue and Defendant Woffinden's mark.

27  Similarly, Plaintiff Blue is unable to establish that her VIOLET BLUE mark is famous or that Defendant

28  Woffinden adopted the stage name Violet Blue after Plaintiff Blue's mark allegedly became famous.

1   Further, Plaintiff Blue has provided no admissible evidence of knowledge, and, in fact, has provided

2   contradictory evidence to her claim that Defendant Woffinden adopted Violet Blue as her stage name

3   knowing that it was the name of Plaintiff Blue.  Plaintiff Blue is, and will be, unable to succeed on any of

4   her claims.  Furthermore, even if she were somehow able to do so, due to Defendant Woffinden's and

5   Plaintiff Blue's continuous and concurrent use of the name Violet Blue since at least December 20, 2000,

6   Plaintiff Blue cannot say that she will suffer *any* irreparable harm by allowing the *status quo* to continue

7   pending the outcome of this case when the *status quo* has existed for over seven years.  Finally, on

8   balance, Plaintiff Blue can show no hardship to either herself or the public that would outweigh the

9   hardship Defendant Woffinden would experience with respect to a name and mark she has been utilizing

10  with great success since *at least* late 2000.  Plaintiff Blue has not made any showing that a preliminary

11  injunction should issue in this case.  In all fairness, a preliminary injunction should *not* issue.  Therefore,

12  Defendant Woffinden respectfully requests that this Honorable Court deny Plaintiff Blue's Motion for

13  Preliminary Injunction.

## V.    PRAYER FOR RELIEF

14

15      Wherefore, the Defendant respectfully PRAYS THIS HONORABLE COURT:

16  (1)    to enter an order DENYING Plaintiff's Motion for Preliminary Injunction; and

17  (2)    to award the Defendant its fees and costs incurred in responding to Plaintiff's Motions.

18

19      DATED THIS 18th day of April 2008.

20                          Respectfully submitted,

21                          CARPELAW PLLC

22                          */s/ Robert S. Apgood*
23                          Robert S. Apgood, *Pro Hac Vice*
                            WSBA # 31023
24                          CARPELAW PLLC
                            2400 NW 80th Street #130
25                          Seattle, WA 98117-4449
                            Telephone:  (206) 624-2379
26                          Facsimile:  (206) 784-6305
                            E-mail: rob@carpelaw.com
27

28

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S          Case No.:  C 07-5370 SI
MOTION FOR PRELIMINARY INJUNCTION - 25

**DECLARATION OF SERVICE**

I, Robert S. Apgood, hereby make the following Declaration from personal knowledge that on April 18, 2008, I served the foregoing

1.    Defendant Woffinden's Response In Opposition To Plaintiff's Motion for Preliminary Injunction;

2.    Declaration Of Ada Mae Woffinden In Support Of Defendant Woffinden's Response In Opposition To Plaintiff's Motion for Preliminary Injunction; and

3.    this Declaration of Service;

by filing a copy thereof with Clerk of the Court via the Court's CM-ECF system.  As a result of their agreement and the court's rule, the following will be notified of this filing and copies of the documents will be made available to them:

Colette Vogele
Benjamin Costa
Vogele & Associates
12 Geary Street, Suite 701
San Francisco, CA 94108

I herby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 18th of April 2008 at Seattle, Washington.

CARPELAW PLLC

*s/ Robert S. Apgood*
Robert S. Apgood, *Pro Hac Vice*
WSBA # 31023
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: (206) 624-2379
Facsimile: (206) 784-6305
E-mail: rob@carpelaw.com

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S                    Case No.:  C 07-5370 SI
MOTION FOR PRELIMINARY INJUNCTION - 26