IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLET BLUE, an individual, | No. C 07-05370 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| ADA MAE JOHNSON a/k/a ADA WOFFINDEN, an individual, et al., | |
| Defendants. | |

Plaintiff has filed a motion for a preliminary injunction. The motion is scheduled for hearing on May 9, 2008. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiff's motion for a preliminary injunction.

**BACKGROUND**

This case involves, among other things, a trademark infringement claim brought by an author against an adult film actress who has acted under the same name. Plaintiff and counterclaim defendant Violet Blue is a "well-known and respected personality in the field of human sexuality, sexual health, and relationship education" who has worked as a "writer, lecturer, blogger, podcaster, editor, and newspaper columnist." Amended Complaint at ¶ 17. Beginning in 1996, plaintiff began using her own name to advance her career as a machine and robotics artist, Blue Decl. at ¶¶ 4-6; Blue Decl. exs. A-D, and since 1999, plaintiff has regularly published articles on the Internet about human sexuality, erotica,

and pornography. Blue Decl. at ¶¶ 11-14; Blue Decl. ex. E; McKeeman Decl. at ¶¶ 5, 6; Roche Decl. at ¶ 8; Queen Decl. at ¶ 5. Plaintiff's reputation in the field of human sexuality was such that she signed a book deal on January 17, 2001, to write a book called *The Sweet Life: Stories of Sexual Fantasies and Adventures for Couples*. Blue Decl. at ¶¶ 16; Blue Decl. ex. G. More recently, plaintiff has written about sex for publications such as the *San Francisco Chronicle*, *Forbes*, and *O: Oprah Magazine*. Blue Decl. at ¶ 2. On March 4, 2008, the U.S. Patent and Trademark Office registered "Violet Blue" as a trademark and recognized that plaintiff first used her name in commerce on May 1, 1999. Costa Decl. ex. V.

Defendant and counterclaim plaintiff Aida Mae Woffinden is an actress who has appeared in dozens of pornographic films.[1] Amended Complaint at ¶ 28. Defendant claims that she first used the name "Violet Blue" as a stage name at least as early as December 20, 2000. Woffinden Decl. at ¶ 3. She has since appeared in over one hundred adult films under the name "Violet Blue." *See* Costa Decl. ex. D.

Sometime in late October 2006, plaintiff Blue received several communications from other journalists and acquaintances indicating that they believed she would be appearing at the Exotic Erotic Ball the weekend of October 28, 2006, in South San Francisco. Amended Complaint at ¶ 54. Plaintiff soon learned that defendant was scheduled to appear at the Exotic Erotic Ball under the name "Violet Blue." *Id.* Plaintiff alleges other instances of confusion as well, such as when pornographic actor "Dave Pounder" emailed plaintiff at the *San Francisco Chronicle* thinking she was defendant. *Id.* at ¶ 56. On October 22, 2007, plaintiff filed a complaint for trademark infringement, trademark dilution, violation of California Civil Code § 3344, and unfair competition. Plaintiff filed an amended complaint on February 4, 2008, and on the same day defendant filed her second answer. The answer included five counterclaims, including claims for declaratory relief, cancellation of plaintiff's trademark application,

---

[1] Other defendants include businesses and people involved in operating defendant Woffinden's website, www.violetblue.org. None of these other defendants has responded to plaintiff's motion. At oral argument, plaintiff's attorney informed the Court that plaintiff had settled her claims against these other defendants. This order therefore will apply only to defendant Woffinden.

trademark infringement, and outrage. Currently before the Court is plaintiff's motion for a preliminary injunction pending the outcome of this litigation.

## LEGAL STANDARD

The Court has the authority to grant a preliminary injunction in the exercise of its equitable powers. *See* Fed. R. Civ. P. 65. As the Court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion. *See Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 868 F.2d 1085, 1087 (9th Cir. 1989).

Requests for preliminary injunctive relief may be satisfied by either of two sets of criteria. The "traditional" test requires the movant to: (1) establish a strong likelihood of success on the merits; (2) show the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) show a balance of hardships favoring the movant; and (4) show that granting the injunction favors the public interest. *See Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). The "alternative" test requires that the movant demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in her favor. *See Earth Island Inst.*, 442 F.3d at 1158; *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003). The two formulations of the alternate test "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006). Under either test, the movant must demonstrate that there exists a significant threat of irreparable injury. *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

The primary purpose of a preliminary injunction is to preserve the status quo until the action can be determined on its merits. *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988). If the moving party requests injunctive relief that would alter the status quo, the request is subject to higher scrutiny and carries a heavy burden of persuasion. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27,

32-33 (2d Cir. 1995). However, the "status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). Thus, in a trademark infringement case, the status quo ante litem is the situation that existed before the allegedly infringing conduct began. *Id.* ("In this case, the status quo ante litem existed before Disney began using its allegedly infringing logo.").

## DISCUSSION

Plaintiff asks the Court to issue a preliminary injunction enjoining defendant from using the name "Violet Blue." Plaintiff seeks the injunction on the basis of four different causes of action: trademark infringement, trademark dilution, violation of California Civil Code § 3344, and unfair competition. Plaintiff argues that a preliminary injunction should be granted under the alternative test discussed above because she can demonstrate probable success on the merits and irreparable injury. In addition, plaintiff argues that in the event she cannot establish probable success on the merits, the balance of hardships tips sharply in her favor. The Court will consider whether plaintiff has demonstrated probable success on the merits of each cause of action alleged, and will then consider whether plaintiff has demonstrated irreparable injury.

**I.    Likelihood of success on the merits**

    **A.    Trademark infringement and unfair competition**

Plaintiff's first cause of action alleges trademark infringement in violation of 15 U.S.C. § 1125; her fourth cause of action alleges unfair competition under California common law. Because common law claims of unfair competition are "'substantially congruent' to claims made under the Lanham Act," *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994), the Court will address plaintiff's fourth cause of action through its discussion of plaintiff's trademark infringement claim.

4

### 1.    Valid, protectable trademark

To prevail on a trademark infringement claim, a plaintiff must show that she (1) has a "valid, protectable trademark," and (2) that defendant's use of the mark "is likely to cause confusion." *Applied Info. Sciences, Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). There are three ways for a plaintiff to show that she has a protectable trademark: "(1) [she] has a federally registered mark in goods or services; (2) [her] mark is descriptive but has acquired a secondary meaning in the market; or (3) [she] has a suggestive mark, which is inherently distinctive and protectable." *Id.* at 970. Plaintiff argues that because she now has a federally-registered trademark, *see* Costa Decl. ex. V, she has put forth prima facie evidence that her trademark is valid and protectable, *see Applied Info. Sciences*, 511 F.3d at 970 ("Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." (internal quotation marks omitted)). This shifts the burden of production to defendant, who may attack the validity of plaintiff's registered trademark, "such as by showing that someone else first used the mark in commerce or that the registration was flawed." *Id.* at 970 n.2.

Defendant attempts to carry this burden by arguing that because "Violet Blue" is a personal name, it is not inherently distinctive and therefore must be shown to have acquired secondary meaning in the market in order to be protectable. *See* J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition, § 13.2 (4th ed. 2008). Defendant contends that although plaintiff's mark may by now have acquired secondary meaning, defendant was actually the first to achieve secondary meaning in the mark and therefore plaintiff's mark is not valid. 2 McCarthy on Trademarks, § 16:34 ("For secondary meaning marks, the issue of priority and ownership is not which party first used the mark, but which party first achieved secondary meaning in the mark."). Secondary meaning occurs when "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000). Although it is not entirely clear to the Court how this test would apply to a person writing articles and

5

books under her own name, it is helpful to note that prima facie evidence that a descriptive mark has become distinctive can include "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made." 15 U.S.C. § 1052(f).

Assuming defendant's personal name rule applies to the trademark "Violet Blue," the Court finds it unlikely that defendant will be able to meet her burden of proving that her use of the mark was the first to achieve secondary meaning. Defendant takes the position that she first used the stage name "Violet Blue" at the very latest in December 2000, and that she then appeared as "Violet Blue" in "no less than fifteen adult films during the following year 2001." Defendant's Opposition at 9. Plaintiff, however, has put forth substantial evidence that her mark acquired secondary meaning prior to December 2000. Plaintiff, for instance, has pointed to evidence showing that she began using her name as a "machine and robotics artist" as early as 1996 up through 1999, appearing in various events and productions in the United States and elsewhere. *See* Blue Decl. at ¶¶ 4-6; Blue Decl. exs. A-D. More importantly, plaintiff has put forth evidence demonstrating that her career as a writer in the fields of human sexuality, erotica, and pornography began in May 1999, when she published her first online article, and continued to May 2000, when she began writing bi-weekly online columns. Blue Decl. at ¶¶ 11-13; Blue Decl. ex. E; McKeeman Decl. at ¶¶ 5, 6. In December 2000, she published an article about sex in *Good Vibes Magazine*, and her reputation in the field of human sexuality was such that she signed a book deal on January 17, 2001, to write a book called *The Sweet Life: Stories of Sexual Fantasies and Adventures for Couples*. Blue Decl. at ¶¶ 14, 16; Blue Decl. exs. F, G; *see also* Queen Decl. at ¶ 5 (plaintiff began reviewing adult films for Good Vibrations in approximately early 1999); Roche Decl. at ¶ 8 (plaintiff was reviewing adult films online during the year 2000). Over the years, her career continued to expand, such that plaintiff was named one of the 25 most influential people online by Forbes.com in 2007, Blue Decl. at ¶ 21, and now writes a column for the *San Francisco Chronicle*. The Court finds this persuasive evidence that plaintiff can likely demonstrate continuous use of her mark for many years prior to defendant's first use of the stage name "Violet Blue," and that

6

1 plaintiff can probably prove that prior to December 2000, consumers and readers of online pornography
2 reviews and other writings about human sexuality would likely have associated plaintiff's name with
3 plaintiff's brand. *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 988 (7th Cir. 2004) (noting that
4 a mark acquires secondary meaning when "there is proof that consumers associate the name with the
5 plaintiff's brand"). Plaintiff is therefore likely to be successful at trial on the question of whether she
6 has a valid trademark.[2]

### 2. Likelihood of confusion

9 Next, plaintiff must demonstrate that defendant's use of the mark is likely to cause confusion.
10 *Applied Info. Sciences*, 511 F.3d at 969. "Likelihood of confusion exists when customers viewing the
11 mark would probably assume that the product or service it represents *is associated with the source* of
12 a different product or service identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others,
13 Inc.*, 826 F. 2d 837, 845 (9th Cir. 1987) (internal quotation marks omitted). "The test for likelihood of
14 confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to
15 the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group v. SKG Studio*,
16 142 F.3d 1127, 1129 (9th Cir. 1998). The Ninth Circuit has identified eight factors to facilitate the
17 inquiry into likelihood of confusion. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.
18 1979). They are: (i) strength of the mark; (ii) proximity or relatedness of the goods; (iii) similarity of
19 sight, sound and meaning; (iv) evidence of actual confusion; (v) marketing channels; (vi) type of goods
20 and purchaser care; (vii) intent; and (viii) likelihood of expansion. *Id.* The factors are not rigidly

---

[2] The Court also notes that it is not entirely clear whether plaintiff must prove that her mark has acquired secondary meaning. Federal law provides that a trademark cannot be registered if it consists of a mark which "is primarily merely a surname," 15 U.S.C. § 1052(e)(4), unless it acquires secondary meaning, *id.* § 1052(f). "Violet Blue" consists of both a given name and a surname, and neither name may be "primarily merely a surname" because both are names of colors and have dictionary definitions. *See generally Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760-61 (9th Cir. 2006). Moreover, Judge Posner's exegesis of the rationale for requiring proof of secondary meaning of personal names may demonstrate that the rule is not appropriately applied in this instance. *See Peaceable Planet*, 362 F.3d at 988-93. Further briefing on this issue is certainly required, though based on the briefing and evidence submitted thus far, the Court finds that plaintiff has demonstrated probable success on the merits.

weighed; "[r]ather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion." *Dreamwerks*, 142 F.3d at 1129 (internal quotation marks omitted); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) ("A word of caution: this eight-factor test for likelihood of confusion is pliant. Some factors are much more important than others, and the relative importance of each individual factor will be case-specific."). The list of *Sleekcraft* factors is not necessarily exhaustive; in other words, "non-listed variables may often be quite important." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054.

Having examined the *Sleekcraft* factors, the Court finds that plaintiff is likely to succeed in demonstrating a likelihood of confusion. In making this finding, the Court relies primarily on the second, third, and fourth factors. The second factor looks to the proximity or relatedness of the goods. It is undisputed that plaintiff writes about human sexuality and reviews pornography. It is also undisputed that defendant acts in pornographic films. Both parties therefore use the name "Violet Blue" in relationship to goods and services that are extremely similar and, at times, overlapping. Defendant argues that the parties' goods and services are not proximate because while plaintiff promotes safe sex, defendant appears in hard-core pornography, and thus their respective fields are antithetical. The problem with defendant's argument is that it assumes a very sophisticated consumer, not a "reasonably prudent consumer" as established by the Ninth Circuit. *Dreamwerks Prod. Group*, 142 F.3d at 1129.

The fourth factor examines the similarity of the marks. Here, defendant concedes that her mark is identical to plaintiff's mark. The fifth factor, which examines whether there is evidence of actual confusion, also weighs strongly in favor of plaintiff. Plaintiff has put forth significant evidence of actual confusion. For example, when reviewing plaintiff's book *The Ultimate Guide to Sexual Fantasy*, the adult industry news publication AVN described the author of the book as a "porn star," evidently confusing plaintiff with defendant. Blue Decl. ex. I. Plaintiff cites other examples as well: an adult video actor named "Dave Pounder" emailed plaintiff at her *San Francisco Chronicle* email address thinking she was defendant, Blue Decl. ex. L ("I'll never forget you because you were my first scene ever . . . ."); a web commentator confused plaintiff with defendant after plaintiff was named to the

Forbes.com list of 25 most influential people online, Costa Decl. ex. I; and a San Francisco journalist mistakenly believed that plaintiff, not defendant, would be appearing at the 2006 Exotic Erotic Ball near San Francisco, Juul Decl. at ¶ 4.[3] As the Ninth Circuit has explained, evidence of actual confusion "constitutes 'persuasive proof that future confusion is likely.'" *Clicks Billiards, Inc., v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) (quoting *Fuddruckers, Inc.*, 826 F.2d at 845); *see also Thane Int'l, Inc. v Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002) ("This rule makes good sense. If enough people have been *actually* confused, then a *likelihood* that people are confused is established."). Accordingly, based on these factors alone, plaintiff has established a high probability of confusion.

Turning briefly to the other factors, the Court finds the first factor, the strength of the mark, weighs somewhat in favor of plaintiff because her trademark is registered and received no objection on the basis that the mark was descriptive. *Quicksilver, Inc.*, 466 F.3d at 760 ("Where, as here, the PTO issues a mark registration without requiring proof of secondary meaning, the registrant . . . enjoys a presumption that the purchasing public perceives the . . . mark to be inherently distinctive." (internal quotation marks omitted)). In addition, as discussed above, plaintiff can likely demonstrate that her mark has acquired secondary meaning, a circumstance that would strengthen her mark. The fifth factor weighs heavily in plaintiff's favor because it is undisputed that both parties use the same marketing channel – the Internet – to market, sell, and distribute their goods. *GoTo.com, Inc.*, 202 F.3d at 1207 (explaining that "the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since, as it did in this case, it allows for competing marks to be encountered at the same time, on the same screen"). On this record, the Court does not find the three remaining factors to be particularly helpful, and notes that in any case they do not outweigh the balance of the other factors discussed above.

For all of these reasons, the Court finds that plaintiff has demonstrated that she will likely succeed on the merits of her trademark infringement and unfair competition claims.

---

[3] Many of these instances of confusion also reinforce the second factor, i.e. the proximity of the goods, as consumers may have been more likely to be confused given the work of both plaintiff and defendant in fields related to human sexuality.

9

### B.     Trademark dilution

Plaintiff also argues that a preliminary injunction should be granted because she is likely to succeed on the merits of her trademark dilution claim. Under the Federal Trademark Dilution Act,

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). The Ninth Circuit has explained that injunctive relief is available under the Act if a plaintiff "can establish that (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1180 (9th Cir. 2007) (internal quotation marks omitted). The Court need not reach each of the four elements, because the third element is dispositive. The third element examines whether defendant's use began after plaintiff's mark became famous. This element necessarily invokes the first element, whether the mark is famous. The Act explains that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Moreover, "to meet the 'famousness' element of protection under the dilution statutes, a mark [must] be truly prominent and renowned." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (internal quotation marks omitted) (alteration in original).

Although the Court agrees with plaintiff that her trademark may well be famous now – given her widespread media recognition and prolific production of written works in both new and traditional mediums – plaintiff has not put forth sufficient evidence to demonstrate that she will probably succeed in proving that her trademark was famous prior to the time defendant began using the name Violet Blue. All of the evidence plaintiff cites in support of the famousness of her mark, such as her weekly newspaper column on the website of the *San Francisco Chronicle* and her recognition by *Forbes*

10

magazine and the *Wall Street Journal*, relates to events occurring well after both December 20, 2000, the date at which defendant claims she first used the stage name "Violet Blue," and 2001, when many adult videos were released describing defendant as "Violet Blue." While plaintiff may have already been recognized in certain circles as a sex-positive writer and machine artist in 1999 and 2000, nothing in the record suggests that plaintiff's trademark was "widely recognized by the *general* consuming public," 15 U.S.C. § 1125(c)(2)(A) (emphasis added), or was "truly prominent and renowned," *Avery Dennison Corp.*, 189 F.3d at 875, during those early years of her career. Accordingly, at this juncture, plaintiff is unable to demonstrate that she is likely to succeed on the merits of her trademark dilution claim.

### C. California law claim for right of publicity

Plaintiff's remaining cause of action falls under California Civil Code § 3344, which provides that "[a]ny person who knowingly uses another's name . . . in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344(a). To succeed on a § 3344 claim, a plaintiff must prove the elements of the common law cause of action for commercial misappropriation, in addition to proving that the defendant knowingly used the plaintiff's name and that there is a direct connection between the use of the name and the commercial purpose. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

The only disagreement by the parties regarding this cause of action is whether plaintiff can prove that defendant knowingly used plaintiff's name. Defendant argues that plaintiff is not likely to succeed on the merits of this claim because plaintiff cannot "show that Defendant Woffinden adopted the name Violet Blue *knowingly*." Defendant's Opposition at 22. The plain language of the statute is not concerned, however, with when defendant *adopted* the stage name "Violet Blue"; rather, the statute addresses the *use* of another's name for a commercial purpose. While it is true that plaintiff has not put

1 forth any evidence suggesting that defendant knowingly used plaintiff's name in 2000 or 2001, plaintiff
2 can establish that defendant knowingly used plaintiff's name without plaintiff's consent at least
3 beginning in December 2006, when the parties were in communication regarding defendant's use of the
4 name "Violet Blue." *See* Blue Decl. ex. M (emails between plaintiff and defendant).  For these reasons,
5 the Court finds that plaintiff will probably succeed on the merits of her § 3344 claim.

## II.     Possibility of irreparable injury

Plaintiff argues that she is entitled to a presumption of irreparable harm because she has demonstrated that there is a high probability of confusion, primarily based on various instances of actual confusion. The Court agrees. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."); *see also LGS Architects, Inc.*, 434 F.3d at 1155 ("In a copyright infringement action . . . a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm." (internal quotation marks omitted)). Defendant's only argument in rebuttal is that plaintiff and defendant peacefully coexisted for a number of years, both using the name "Violet Blue," before any problems or confusion arose, and that because there was no damage to plaintiff's reputation during those years, there is no possibility of harm now. What defendant does not mention, however, is that it was only recently that defendant appeared at the Exotic Erotic Ball near San Francisco, plaintiff's hometown, and only recently that the instances of actual confusion began to occur. In addition, advertisements for the October 2008 Exotic Erotic Ball already state that defendant will be appearing as "Violet Blue," Costa Decl. ex. L, and the adult video industry continues to release videos featuring defendant as "Violet Blue," *see*, *e.g.*, Costa Decl. ex. T (video release date of March 11, 2008). There is also evidence that defendant has in recent years branched out into adult sex education by making a video about sexual intercourse during pregnancy, under the name "Violet Blue." *See* Vogele Decl. ex. E. Such an expansion beyond traditional pornography obviously impedes more directly on

plaintiff's areas of expertise. For these reasons, the Court finds that defendant has not overcome the presumption that plaintiff will face irreparable harm if injunctive relief is not granted.

### III.  Balance of hardships

Although, under the alternative test for a preliminary injunction, the Court need not address whether the balance of hardships tips in plaintiff's favor, the Court does so briefly because the parties have addressed the question. The parties dispute the ease with which defendant could change her stage name from "Violet Blue" to another name. This concern may be somewhat moot, as defendant has claimed that she does not make adult movies any longer. Woffinden Decl. at ¶ 17. The Court recognizes, however, that if defendant were to resume her adult film career, she might face some degree of economic hardship were she required to appear under a different name from the name primarily associated with her prior work. But that concern does not outweigh the hardships plaintiff faces, particularly given the actual confusion she has demonstrated and the fact that "Violet Blue" is her real name. Plaintiff's Motion at 2 n.2. The Court finds nothing in the balance of hardships analysis to suggest that a preliminary injunction should not be issued. The Court therefore GRANTS plaintiff's motion for a preliminary injunction.

### CONCLUSION

For all of the foregoing reasons, the Court GRANTS plaintiff's motion for a preliminary injunction [Docket No. 66].

**IT IS SO ORDERED.**

Dated: May 9, 2008

SUSAN ILLSTON
United States District Judge

13